ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11 16:40:04
16JCV-19-345
C02D02 : 9 Pages

Two Inch Margin Per Ark. Sup. Ct. Admin. Order No 2(g)

## IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS
## CIVIL DIVISION

| | |
|---|---|
| DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION FOR GLOBAL UNDERSTANDING, INC. | **PLAINTIFF** |
| **Vs.** | |
| DAVID B. HUNT and MELISSA B. HUNT dba HUNT PROPERTIES and HUNT SERVICES, INC. | **DEFENDANTS** |

### COMPLAINT FOR FORECLOSURE AND REPLEVIN

Drs. Kiran & Pallavi Patel 2017 Foundation For Global Understanding, Inc., a Florida not-for-profit corporation ("Plaintiff"), through its undersigned counsel, David B. Vandergriff and Christoph Keller, Quattlebaum, Grooms & Tull PLLC, for its complaint against David B. Hunt and Melissa B. Hunt dba Hunt Properties and Hunt Services, Inc., states as follows:

### INTRODUCTORY STATEMENT, JURISDICTION AND VENUE

1. Plaintiff is a Florida not-for-profit corporation and holder of the promissory note described herein and mortgage on real estate located in this county and state. Its principal office is in 5600 Mariner Street, Suite 200, Tampa, Hillsborough County, Florida 33609. Kiran Reef, LLC (the "Original Lender/Mortgagee") was the original holder of the note, mortgage and other security instruments described herein (the "Kiran Reef Loan Documents"). On or about April 3, 2019, ownership of the Kiran Reef Loan Documents

was assigned and transferred to Plaintiff.  When used herein "Plaintiff" shall be deemed to include Kiran Reef, LLC.

2.     Defendant David B. Hunt is a citizen and resident of the state of Tennessee.

3.     Defendant Melissa D. Hunt is a citizen and resident of the state of Tennessee.

4.     Defendant Hunt Properties is a Tennessee General Partnership whose address is 34 Finnwick Cv, Jackson, TN 38305.  David B. and Melissa D. Hunt are the general partners.

5.     Defendant Hunt Services, Inc. is an Arkansas corporation.  Its registered agent is Richard L. Cisne, One Financial Centre, Suite 210, Little Rock, AR 72211.

6.     On or about June 28, 2018 the Defendants executed a mortgage, security agreement, assignment of rents and fixture filing conveying to Plaintiff a security interest in certain real and personal property located in the Jonesboro District of Craighead County, Arkansas.

7.     This is a suit for collection of a promissory note and realization upon collateral security therefore, including, inter alia, foreclosure of a mortgage on real estate located in the Jonesboro District of Craighead County, Arkansas. At all times herein material the Defendants, acting by themselves or through another entity or entities controlled by Defendants, have owned and operated the Courtyard by Marriott that is located on said real estate.  A substantial number of the events giving rise to Plaintiff's causes of action against Defendants occurred in in the Jonesboro District of Craighead County.

8.      This Court has personal jurisdiction over the Defendants pursuant to Ark. Code Ann. § 16-4-101, subject matter jurisdiction pursuant to Ark. Code Ann. §16-13-201, and venue is proper in this Court pursuant to Ark. Code Ann. §16-60-101.

## FACTS and CAUSES OF ACTION FOR
## FORECLOSURE, REPLEVIN AND JUDGMENT

9.      On or about July 23, 2018, for value received, the Original Lender/Mortgagee extended a loan to David B. Hunt and Melissa B. Hunt dba Hunt Properties (collectively, the "Borrower Defendants") evidenced by a Renewal, Amended and Restated Loan Agreement (the "Loan Agreement") and a Renewal, Amended and Restated Promissory Note in the principal sum of $9,165,000.00 (the "Renewal Note"). True and correct copies of the Loan Agreement and the Renewal Note are attached hereto as **Exhibit A** and **B,** respectively.

10.     The Renewal Note was given by the Borrower Defendants in renewal and amendment of the outstanding principal indebtedness previously evidenced by a promissory note dated June 28, 2018, executed by Borrower and payable to the order of Lender in the original principal amount of $2,500,000.00 (the "Prior Note").

11.     The Renewal Note is in default and, despite demand, Borrower Defendants have failed to cure the default.  As of April 12, 2019, there was a balance due and owing to Plaintiff, as follows:

| | |
|---|---|
| Principal | $9,165,000.00 |
| Default Interest (01/27 - 04/12) @ 17% | $328,921.67 |
| Late Charges @ 5% | $9,572.36 |
| Exit Fee | $91,650.00 |
| Other Fees | $10,000.00 |
| **Gross Amount Due** | **$9,605,144.03** |
| Credit (2/26/19) | $-68,737.00 |

| | |
|---|---|
| Credit (3/29/19) | $-68,737.50 |
| **Net Amount Due** | **$9,467,669.53** |

12.    On or about June 28, 2018, the Borrower Defendants executed and delivered to Original Lender/Mortgagee a mortgage conveying real property more fully described below. Said mortgage was given to secure the obligations evidenced by the Prior Note. The real property is more fully described as follows:

> Lot 1 of The Avenue at Craighead County to the City of Jonesboro, Craighead County, Arkansas, as shown by Plat recorded in Plat Cabinet "C" page 261 at Jonesboro, Arkansas, and subject to easements as shown on recorded Plat.

The mortgage was recorded in the office of the Circuit Clerk and Ex-Officio Recorder for the Jonesboro District of Craighead County, Arkansas on June 29, 2018 as Electronic Recording No. 2018R-012873 and is incorporated herein by this reference (the "Original Mortgage").  A true and correct copy of the Original Mortgage is attached hereto as **Exhibit C**.  The Original Mortgage also granted to Plaintiff a security interest in certain personal property described therein (the "Courtyard by Marriott Collateral").

13.    On or about June 28, 2018, the Borrower Defendants executed and delivered to Original Lender/Mortgagee an assignment of rents, leases, contracts, accounts and deposits.  The assignment was recorded in the office of the Circuit Clerk and Ex-Officio Recorder for the Jonesboro District of Craighead County, Arkansas on June 29, 2018 as Electronic Recording No. 2018R-012874 and is incorporated herein by this reference (the "Assignment of Rents").  A true and correct copy of the Assignment of Rents is attached hereto as **Exhibit D**.

14.    On or about June 28, 2018, the Borrower Defendants executed and delivered to Original Lender/Mortgagee a UCC financing statement.   The financing

statement was recorded as a fixture filing in the office of the Circuit Clerk and Ex-Officio Recorder for the Jonesboro District of Craighead County, Arkansas on June 29, 2018 as Electronic Recording No. 2018R-012875 and is incorporated herein by this reference (the "Fixture Filing Statement").

15. In order to perfect their security interest in the Courtyard by Marriott Collateral, Plaintiff caused a UCC financing statement to be filed in the office of the Arkansas Secretary of State. A true and correct copy of the foregoing is attached as **Exhibit E**.

16. On or about July 26, 2018, the Borrower Defendants executed and delivered to Original Lender/Mortgagee a mortgage modification agreement modifying the Original Mortgage, Assignment and Fixture Filing Statement to secure the Borrower Defendants' obligations set forth in the Loan Agreement and Renewal Note. The mortgage modification agreement was recorded in the office of the Circuit Clerk and Ex-Officio Recorder for the Jonesboro District of Craighead County, Arkansas on July 27, 2018 as Electronic Recording No. 2018R-014792 and is incorporated herein by this reference (the "Mortgage Modification Agreement"). A true and correct copy of the Mortgage Modification Agreement is attached hereto as **Exhibit F**.

17. To further secure the original indebtedness evidenced by the Renewal Note, on July 26, 2018 David B. Hunt and Melissa B. Hunt each executed a guaranty agreement (collectively the "Guaranty Agreement") by which they each guaranteed the prompt and timely payment to Original Lender/Mortgagee of the indebtedness represented by the Renewal Note. True and correct copies of each Guaranty Agreement are attached hereto as **Exhibits G and H**.

18.    The Defendants are in possession of the Courtyard by Marriott Collateral. The Borrower Defendants are in default of their obligations to make timely payments when due as required by the mortgage note loan documents of Plaintiff and have transferred operational control of Courtyard by Marriott Collateral to Hunt Services, Inc. As a result of the foregoing, Plaintiff is entitled to foreclose the mortgage, repossess the Courtyard by Marriott Collateral, sell the same and apply the net proceeds from said sale to the indebtedness owed to Plaintiff by all the Borrower Defendants.

19.    Plaintiff is entitled to an order of delivery pursuant to the terms of the pledge and security agreements and the Uniform Commercial Code as enacted in Arkansas, directing the Sheriff of Craighead County, Arkansas to replevy the Courtyard by Marriott Collateral and to give possession thereof to Plaintiffs or any receiver appointed pursuant to any receiver appointed herein.  Plaintiff's affidavit for replevin will be filed herein.

20.    On or about April 3, 2019, Kiran Reef, LLC executed and delivered to Plaintiff an assignment of mortgage modification agreement.  The assignment was recorded in the office of the Circuit Clerk and Ex-Officio Recorder for the Jonesboro District of Craighead County, Arkansas on April 5, 2019 as Electronic Recording No. 2019R-006554 and is incorporated herein by this reference (the "Assignment of Mortgage Modification Agreement").  A true and correct copy of the Assignment of Mortgage Modification Agreement is attached hereto as **Exhibit I.**

21.    On or about April 3, 2019, Kiran Reef, LLC executed and delivered to Plaintiff an allonge by which it assigned its rights under the Renewal Note to Plaintiff (the "Allonge").  A true and correct copy of the Allonge is attached hereto as **Exhibit J.**

22.     Hunt Services, Inc. may claim some interest in the real estate made the basis of this action as a tenant and the operator/franchisee of the Courtyard By Marriott located on said real estate.  The lien of Plaintiff's Mortgage against said real estate is superior, prior and paramount to any interest that may be asserted by Hunt Services, Inc. and should be so declared by the court.

**COUNT II**
**REQUEST FOR APPOINTMENT OF RECEIVER**

23.     Plaintiff adopts and realleges each averment contained in Paragraphs 1-22, above.

24.     Section 10(c) of the Original Mortgage provides:

> Should Mortgagor be in default hereunder, Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of all and singular the Premises, and all of the rents, incomes, profits, issues and revenues thereof, from whatsoever source derived.

Borrower Defendants are in default of their obligations under said security documents and a receiver should be appointed to manage the mortgaged property, collect the rents and deposit them with a financial institution approved by the Court; pay the operating expenses in accordance with the Court's instructions; and retain the remaining funds pending further order of the Court relative to the claims of Plaintiff and such other claims, if any, as may be hereinafter asserted by any other party.

25.     Plaintiff nominates Richard L. Ramsay ("Mr. Ramsay") for appointment by the Court as receiver. Mr. Ramsay, a lifetime resident of Arkansas, has previously been appointed as a receiver in similar cases in Arkansas, is a duly licensed lawyer, and is otherwise well qualified to perform the duties of receiver for the benefit of all parties. Mr.

Ramsay is ready, willing, able and available to commit the time to serve as a receiver to take possession and control of the operations of the Courtyard by Marriott, and to address issues concerning protection, operation and preservation of the real estate and the Courtyard by Marriott Collateral, all upon terms authorized by this Court.

26.    Pursuant to Rule 66 of the Arkansas Rules of Civil Procedure, the receiver should be required to account to the Court on a regular basis and post bond acceptable to the Court.  Plaintiff requests this Court waive the required bond because Mr. Ramsay is insured under his professional liability insurance policy.

27.    Plaintiff requests that the Court set an emergency hearing on its request for immediate appointment of receiver at its earliest possible convenience. Counsel for Plaintiff is willing to provide notice of hearing to the parties regarding the date and time of such hearing, as fixed by the Court.  Time is of the essence.

WHEREFORE, Plaintiffs prays:

A.    For a judgment *in personam* against the Borrower Defendants, both jointly and severally, and *in rem* judgment against the real property described above in amount equal to all sums due owed to Plaintiff pursuant to the terms of the Renewal Note as set forth above, plus without implied limitation interest, late charges, abstracting charges, legal fees, insurance premiums, the expenses of the receivership, all other expenses of collection and court costs;

B.    That the judgment be declared to be a lien upon said real property; that if the judgment is not paid in full within three (3) days following entry of the judgment, said real property be sold under foreclosure sale, as provided by law (subject to the rights of Plaintiff), to satisfy the judgment and costs herein; that the proceeds of each sale be

applied first to the cost of this proceeding and next to the satisfaction of the judgment, with the remainder, if any, to be held to be distributed pursuant to further orders of the Court; that in the event of such foreclosure all the right, title, interest, equity, estate and legal or equitable right to redeem of the Defendants and of any and all other persons claiming through or under them since the execution of the Mortgage described above be foreclosed and forever barred; that the purchaser at the sale of said real property be decreed to have a right to immediate possession thereof and be given a Writ of Assistance to be executed by the Clerk of this Court to enforce delivery of possession;

C.      For a Writ of Replevin or Order of Delivery authorizing Plaintiff to repossess and sell the Courtyard by Marriott Collateral;

D.      That a receiver be appointed as set forth above; and

E.      For all costs, expenses, legal fees and all other relief to which Plaintiff may be entitled.

*DRS. KIRAN & PALLAVI PATEL 2017*
*FOUNDATION FOR GLOBAL*
*UNDERSTANDING, INC.*


By:_____
David B. Vandergriff, Ark. Bar No. 77137
Christoph Keller Ark. Bar No. 2015145
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201
Phone: 501-379-1780
Fax: 501-379-3880
Email: dbv@qgtlaw.com

*Attorneys for Plaintiff*

*DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION FOR GLOBAL UNDERSTANDING, INC.*

David B Vandergriff

Digitally signed by David B Vandergriff
DN: cn=David B Vandergriff, o=Quattlebaum Grooms and Tull PLLC, ou, email=dbv@qgtlaw.com, c=US
Date: 2019.04.12 10:29:58 -05'00'

By:_____
David B. Vandergriff, Ark. Bar No. 77137
Christoph Keller Ark. Bar No. 2015145
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201
Phone: 501-379-1780
Fax: 501-379-3880
Email: dbv@qgtlaw.com
Email: ckeller@qgtlaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 29 Pages

# UNIFORM COVER PAGE
[To be used when required by Administrative Order No. 2 (g)★]

COURT:    CIRCUIT COURT OF CRAIGHEAD COUNTY

Docket/Case Number:  16JCV-19-_____

CASE NAME:
PLAINTIFF/
PETITIONER:          DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
                     FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:          DAVID B. HUNT AND MELISSA B. HUNT, ET AL.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):          EXHIBIT A

★Administrative Order No 2.

   (g) *File Mark*. (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

   (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

## RENEWAL, AMENDED AND RESTATED LOAN AGREEMENT

This Renewal, Amended and Restated Loan Agreement (the "Agreement"), dated as of July ____, 2018, is by and between **KIRAN REIF, LLC**, a Florida limited liability company, its successors and/or assigns, as their interests may appear, whose address is 5600 Mariner Street, Suite 200, Tampa, Florida 33609 ("Lender"), and **DAVID B. HUNT and MELISSA D. HUNT**, d/b/a Hunt Properties, a Tennessee General Partnership whose address is 34 Finnwick CV, Jackson, TN 38305 ("Borrower").

### RECITALS

A.      On June 28, 2018, Borrower and Lender entered into that certain Loan Agreement (the "Prior Loan Agreement") where Lender made a loan to Borrower in the principal amount of $2,500,000.00, which was evidenced by that certain Promissory Note of the same date.

B.      Borrower has requested that Lender increase the principal amount of the loan to $9,165,000.00 (the "Loan"), and Lender has agreed to accommodate such request upon the terms and conditions set forth herein and in a certain Renewal, Amended and Restated Promissory Note (the "Amended Note") between Borrower and Lender, which has been executed contemporaneously herewith.

C.      The Prior Loan Agreement shall be renewed, amended, restated, replaced and superseded entirely by this Renewal, Amended and Restated Loan Agreement entered into by Borrower and Lender.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

### AGREEMENT

1.      **DEFINITIONS**

Unless otherwise defined in this Agreement, each of the following terms shall have the following respective meanings:

1.1      "Business Day" means a day other than a Saturday, Sunday or other day on which commercial banks are authorized to close, or are in fact closed, in the state where Lender's lending office is located.

1.2      "Change in Control" means that David B. Hunt and Melissa D. Hunt cease to own and control, directly or indirectly, one hundred percent (100%) of the percentage equity interests of Borrower.

1.3      "Closing" means the closing of the transactions contemplated by this Agreement.

1

**EXHIBIT A**

1.4     "Closing Date" means the date of the Closing, being the date of this Agreement.

1.5     "Collateral" means the collateral for the Loan described in Section 3 of this Agreement.

1.6     "Contingent Obligation" means any agreement, undertaking or arrangement by which a Person assumes, guarantees, endorses, contingently agrees to purchase or provide funds for the payment of, or otherwise becomes or is contingently liable upon, the obligation or liability of any other Person; agrees to maintain the net worth, working capital or other financial condition of any other Person; or otherwise assures any creditor of such other Person against loss, including any comfort letter, operating agreement, take-or-pay contract or the obligations of any such Person as a general partner of a partnership with respect to the liabilities of the partnership.

1.7     "GAAP" means generally accepted accounting principles in the United States as of the date hereof. If there are changes to GAAP during the term of this Agreement, then the parties shall continue to determine compliance with the financial covenants and make all other financial determinations under this Agreement, without giving effect to any such change, until such time that the parties agree to amend the financial covenants and other provisions relating to financial determinations to account for the effect of such changes to GAAP in a mutually acceptable manner.

1.8     "Governmental Authority" means any government (foreign or domestic) or any state or other political subdivision thereof or any governmental body, agency, authority, department or commission (including any taxing authority or political subdivision) or any instrumentality or officer thereof (including any court or tribunal) exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government and any corporation, partnership or other Person directly or indirectly owned or controlled by or subject to the control of any of the foregoing.

1.9     "Guarantors" collectively or each a "Guarantor" mean David B. Hunt, an individual, and Melissa D. Hunt, an individual.

1.10    "Guaranty" means the guaranty agreements delivered by each Guarantor, in favor of Lender pursuant to this Agreement.

1.11    "Hazardous Substance(s)" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant" or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including, without limitation, petroleum or natural gas.

1.12    "Indebtedness" means such Person's (a) obligations for borrowed money; (b) obligations representing the deferred purchase price of property or services (other than accounts payable arising in the ordinary course of such Person's business payable on terms customary in the trade); (c) obligations, whether or not assumed, secured by Liens or payable out of the

2

EXHIBIT A

proceeds or production from property now or hereafter owned or acquired by such Person; (d) obligations which are evidenced by Amended Notes, acceptances or other instruments; (e) any lease which would, in accordance with GAAP and generally accepted auditing standards, either be required to be accounted for and reflected as a capital lease on a balance sheet or otherwise be disclosed as such in a note to such balance sheet; (f) Contingent Obligations; (g) obligations for which such Person is obligated pursuant to or in respect of a letter of credit; and (h) any other obligation for borrowed money which in accordance with GAAP would be shown as a liability on the consolidated balance sheet of such Person.

1.13    "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and analogous provisions of future law.

1.14    "Lien" means any lien, statutory or otherwise, charge or encumbrance, and includes: (a) any mortgage, pledge, hypothecation, security interest, collateral assignment or deed of trust; (b) any conditional sale, title retention, consignment, bailment, deposit, escrow or custodial arrangement; (c) any financing statement under the Florida Uniform Commercial Code or comparable law of any jurisdiction; (d) any assessment, garnishment, attachment, levy, execution or receivership; (e) any charge, recoupment, rebate, right of set-off, right of reduction or equity of redemption; and (f) any lease which would, in accordance with GAAP and generally accepted auditing standards, either be required to be accounted for and reflected as a capital lease on a balance sheet or otherwise be disclosed as such in a Amended Note to such balance sheet.

1.15    "Loan Documents" means this Agreement and all documents already existing or required to be executed and delivered by Borrower and Guarantors to Lender, whether separately or together, in connection with this Agreement, including, without limitation, the Amended Note, Guaranty, Mortgage and any and all other documents, instruments, guarantees, certificates and agreements executed and delivered by Borrower, Guarantors or any third-party in connection with the Loan. Any reference contained in this Agreement to a specific document that is included in the Loan Documents means that document as modified, amended and/or restated and in legal force and effect at the time.

1.16    "Material Adverse Effect" means any change in or effect on the business of Borrower or on Borrower's assets or properties that, individually or in the aggregate (taking into account all other such changes or effects), is, or is reasonably likely to be, materially adverse to the business, assets, liabilities, financial condition or results of operations of Borrower.

1.17    "Mortgage" means that certain Mortgage, Security Agreement, Assignment of Rents and Fixture of Filing dated June 28, 2018, as modified by that certain Mortgage Modification Agreement of even date herewith which increases the amount of the Loan to a principal amount of NINE MILLION ONE HUNDRED SIXTY FIVE THOUSAND DOLLARS ($9,165,000.00), executed by Borrower in favor of Lender as security for the Amended Note, which shall be recorded in the public records of Craighead County, Arkansas, as the same may be modified, amended and/or restated.

1.18    "Amended Note" means the Renewal, Amended and Restated Promissory Amended Note of even date herewith in the original principal amount of NINE MILLION ONE

3

EXHIBIT A

HUNDRED SIXTY FIVE THOUSAND DOLLARS ($9,165,000.00) executed by Borrower in favor of Lender, as the same may be amended, modified, restated, supplemented, renewed, extended, or as the indebtedness evidenced thereby may be consolidated with other indebtedness, split, rearranged, or recharacterized at any time or from time to time.

1.19    "Permitted Indebtedness" means: (a) the Loan and other Indebtedness to Lender; and (b) other Indebtedness to which Lender consents in writing from time to time (which consent may be withheld by Lender in its sole and absolute discretion).

1.20    "Permitted Lien(s)" means, as to the Property, only those Liens and other title limitations approved by Lender in writing (which approval may be withheld by Lender in its sole and absolute discretion).

1.21    "Person" means and includes a natural person including a child; any corporation, general or limited partnership, limited liability company, limited liability partnership, firm, company, trust, syndicate, unincorporated association, joint venture, group or association; the estate of an incompetent or deceased individual; an executor, administrator, guardian, conservator or other legal representative; a custodian, nominee or other individual or entity serving in a representative capacity; two (2) or more individuals having a joint or common economic interest, and all other groups and combinations; and any nation, group of nations, government or governmental department, agency or subdivision including authority, county, district, and municipality.

1.22    "Proceeding" means any threatened, pending or completed action, suit, audit or other type of proceeding, whether civil, criminal, administrative or investigative, formal or informal, and any appeal thereof, and whether at law, in equity or before any governmental agency, including actions in contract, strict liability, tort or otherwise; any hearing, inquiry or investigation; any mediation, arbitration or other alternative dispute resolution mechanism; any bankruptcy proceeding or creditor's reorganization or similar proceedings; and any appellate proceeding in connection with any of the foregoing.

1.23    "Property" means that certain real property and all improvements thereon located in Craighead County, Arkansas and more particularly described on **Exhibit "A"** hereto.

1.24    "Requirements of Law," "required by law," "in compliance with law," "in accordance with the requirements of law," and analogous expressions includes any statute, law, ordinance, rule or regulation, whether foreign or domestic; court orders and court ordered warrants; or subpoenas or summons issued by a court, grand jury, a governmental or tribal inspector general or an administrative body authorized by law to require the production of information or the taking of testimony.

1.25    "Responsible Officer" means the Chief Executive Officer or Chief Financial Officer or equivalent.

1.26    "Solvent" as used in relation to a Person as of a particular date means that on that date (a) that Person is able to pay its debts and other liabilities, Contingent Obligations and other

4

EXHIBIT A

commitments as they mature in the normal course of business; (b) that Person does not intend to, and does not believe that it will, incur debts or liabilities beyond that Person's ability to pay as those debts and liabilities mature in their ordinary course; (c) that Person is not engaged in a business or a transaction, and is not about to engage in a business or a transaction, for which that Person's assets would constitute unreasonably small capital after giving due consideration to the prevailing practice in the industry in which that Person is engaged or is to engage; (d) the fair value of the assets of that Person is greater than the total amount of liabilities, including contingent liabilities, of that Person; and (e) the present fair saleable value of the assets of that Person is not less than the amount that will be required to pay the probable liability of that Person on its debts as they become absolute and matured. In computing the amount of contingent liabilities at any time, it is intended that liabilities will be computed at the amount which, in light of all the facts and circumstances existing at that time, represents the amount that can reasonably be expected to become an actual or matured liability.

1.27    Tax" means all taxes, assessments and contributions imposed by a Governmental Authority, including (a) federal, state and local income, sales, privilege, excise, use, charter, capital, documentary stamp and franchise taxes; (b) ad valorem real property taxes, tangible and intangible personal property taxes and general and special property assessments; (c) amounts required to be withheld from wages and other payments under federal, state and local Jaw; (d) contributions required to be made under the Federal Insurance Contributions Act; (e) amounts required to be withheld and matching employer contributions for Medicare related payroll taxes; (f) Federal Unemployment Tax Act taxes and analogous state taxes; and (g) interest, late charges or penalties payable in respect of any of the foregoing.

## 2.    LOAN

2.1    Loan Agreement.  The Prior Loan Agreement is renewed, amended, restated, replaced and superseded entirely by this Renewal, Amended and Restated Loan Agreement entered into by Borrower and Lender.

2.2    Loan. Subject to the terms, provisions and conditions contained in this Agreement, and in reliance upon the representations and warranties set forth herein, Lender agrees to make the Loan to Borrower for the purposes described in this Agreement.  Borrower agrees to accept the Loan and to use the proceeds thereof only as provided herein.  The Loan shall be evidenced by the Amended Note, which Borrower shall execute and deliver to Lender at Closing.

2.2    Interest Rate. Interest on the Loan shall accrue at the rate per year set forth in the Amended Note.

2.3    Repayment Terms. Payments of principal and interest due under the Loan, if not sooner declared to be due in accordance with the provisions of this Agreement, shall be due and payable in accordance with the terms specified in the Amended Note.

2.4    Use of Proceeds. The proceeds of the Loan shall be used to acquire the Property.

5

**EXHIBIT A**

### 3.    COLLATERAL

Repayment of the Loan and all obligations of Borrower to Lender under this Agreement, the Amended Note and the other Loan Documents shall be secured and collateralized by the following:

3.1    Real Property.  All of the obligations of Borrower under this Agreement, the Amended Note and the other Loan Documents, whether presently existing or hereafter arising, shall be secured by (i) the Mortgage, which Mortgage shall constitute a first priority lien on the Property, subject only to Permitted Liens, and (ii) the Assignment of Rents, Leases, Contracts, Accounts and Deposits, which shall constitute a first priority lien on all of Borrower's right, title and interest in and to all present and future rents, income, issues, profits, revenues, royalties, rights and benefits arising now and hereafter from the Property.

3.2    Personal Property. All of the obligations of Borrower under this Agreement, the Amended Note and the other Loan Documents, whether presently existing or hereafter arising, shall be secured by a first priority perfected security interest in all of the personal property and assets of Borrower now existing or hereinafter acquired, subject only to Permitted Liens.

3.3    Guaranty. All of the obligations of Borrower under this Agreement, the Amended Note and the other Loan Documents, whether presently existing or hereafter arising, shall be guaranteed by the Guarantors by delivery of the Guaranty from each Guarantor to Lender.

3.4    Other Collateral.  All of the obligations of Borrower under this Agreement, the Amended Note and the other Loan Documents, whether presently existing or hereafter arising, such other collateral and security described in this Agreement, the Mortgage and as Lender and Borrower may otherwise agree upon.

The rights of Lender with respect to each item of collateral referred to above shall be evidenced by documentation acceptable in form and substance to Lender.

### 4.    REPRESENTATIONS AND WARRANTIES

When Borrower executes this Agreement, and until Lender is repaid in full, Borrower hereby represents and warrants to Lender that the following representations and warranties are true and accurate as to Borrower:

4.1    Organization; Requisite Power. Borrowers are individuals and have all requisite power and authority: (a) to own and lease its properties and assets and to carry on its business as now conducted and as presently proposed to be conducted; (b) to execute and deliver this Agreement, the Amended Note and any other Loan Documents to which it is a party; and (c) to carry out the provisions of this Agreement and any other Loan Documents to which it is a party.

4.2    Authorization; Binding Obligation. This Agreement, the Amended Note and the other Loan Documents, when executed and delivered, will be legal, valid and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms,

6

**EXHIBIT A**

subject to bankruptcy, insolvency, fraudulent conveyance or other similar statutes, rules, regulations or other laws affecting the enforcement of creditor rights and remedies generally.

4.3     Compliance with Law. Borrower is not in violation of or default under (a) any term of its articles of organization, operating agreement or other organizational governing documents; (b) any provision of any mortgage, indenture, agreement, instrument or contract to which Borrower is party or by which it is bound; or (c) to Borrower's knowledge, any judgment, decree, order, writ, injunction, law, statute, rule, regulation or restriction of any Governmental Authority applicable to Borrower, which violation or default could have a Material Adverse Effect.

4.4     Permits and Consents. Borrower has, to Borrower's knowledge, all franchises, permits, licenses, authorizations and approvals necessary for the conduct of Borrower's business as is now conducted or as proposed to be conducted, the lack of which could have a Material Adverse Effect, and reasonably believes that it can obtain, without undue burden or expense, any other franchises, permits, licenses, authorizations and approvals for the conduct of Borrower's business as presently conducted or as proposed to be conducted. No orders, permissions, consents, approvals or authorizations of any Governmental Authority are required to be obtained, and no registrations or declarations with any Governmental Authority are required to be filed, in connection with the execution and delivery of this Agreement and the other Loan Documents.

4.5     Validity of Loan Documents. The execution, delivery and performance by Borrower of this Agreement, the Amended Note and all other Loan Documents (a) does not require the approval of any Governmental Authority; (b) will not violate any provisions of law (including, without limitation, any applicable usury law or similar law), any order or regulation of any court or other Governmental Authority, or any indenture, agreement or other instrument to which Borrower is a party or by which it or any of its property is bound or be in conflict with, result in a breach of or constitute (with due notice and/or lapse of time) a default under such an indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Borrower's property or assets, except as contemplated by the provisions of this Agreement; and (c) will, upon execution, constitute the legal, valid and binding obligation of Borrower enforceable against Borrower in accordance with its terms.

4.6     Financial Information. All financial and other information that has been or will be supplied to Lender is sufficiently complete to give Lender accurate knowledge of the financial condition of Borrower and Guarantors, including, without limitation, all material contingent liabilities. Any financial statement(s) provided to Lender have been prepared in accordance with GAAP or in accordance with such other principles or methods as are reasonably acceptable to Lender, consistently applied, during the periods involved (except (a) as may be otherwise indicated in such financial statements or the Amended Notes thereto or (b) in the case of unaudited interim statements, to the extent they may exclude footnote or may be condensed or summary statements) and fairly present in all material respects the financial position of Borrower and Guarantors as of the dates thereof and the results of Borrower's and Guarantors' operations and cash flows for the periods then ended (subject, in the case of unaudited

7

EXHIBIT A

statements, to normal year-end audit adjustments). Since the date of the most recent financial statement(s) provided to Lender, there has been no change having a Material Adverse Effect in the business condition (financial or otherwise), operations, properties or prospects of Borrower and/or Guarantors.

4.7     Other Information.   All other information, reports, papers and data given to Lender with respect to Borrower and Guarantors are accurate and correct in all material respects and complete insofar as completeness may be necessary to give Lender a true and accurate knowledge of the subject matter.

4.8     Indebtedness. Borrower does not have any Indebtedness, except (a) as set forth on the financial statement(s) of Borrower provided to Lender and (b) trade payables and normal accruals incurred in the ordinary course of business none of which are more than thirty (30) days past due.

4.9     Title to Property and Assets. Borrower has good and marketable title to the Property and its assets, free and clear of all Liens, except for Permitted Liens.

4.10    Insurance. Borrower has obtained, and shall maintain in effect, the insurance coverage required under Section 8.3 of this Agreement.

4.11    Litigation. There is no claim, action, suit, Proceeding or investigation pending or, to Borrower's knowledge, currently threatened against Borrower that is reasonably expected to have a Material Adverse Effect.  Borrower is not a party or subject to the provisions of any judgment, decree, order, writ or injunction of any court or Governmental Authority. There is no material action, suit, Proceeding or investigation by Borrower currently pending or that Borrower intends to initiate.

4.12    Taxes. Borrower has timely filed all tax returns, reports, declarations, statements and other information required by law to be filed with or supplied to any taxing authority with respect to the Taxes owed by Borrower (the "Tax Returns"). All Taxes due and payable on or before the Closing Date have been paid or will be paid prior to the time they become delinquent. All Taxes that Borrower is or was required by law to withhold or collect have been duly withheld or collected and, to the extent required, have been paid to the proper Governmental Authority. Borrower has not been advised (a) that any of the Tax Returns have been or are being examined or audited as of the date hereof; (b) that any such examination or audit is currently threatened or contemplated; or (c) of any deficiency in assessment or proposed judgment to Borrower's Taxes. Borrower has no knowledge of any liability for any Taxes to be imposed upon the properties or assets of Borrower as of the date of this Agreement that are not adequately provided for on Borrower's financial statements.

4.13    Government Regulations. No director, executive officer, member, manager, principal or owner of Borrower is a director, executive officer or principal shareholder of Lender.

8

EXHIBIT A

4.14    Solvency. Borrower is, and after consummation of the transactions contemplated by this Agreement, will be Solvent. None of the transactions contemplated by this Agreement will be or have been made with an actual intent to hinder, delay or defraud any present or future creditor of Borrower, and Borrower has received fair and reasonably equivalent value in good faith for the grant of the security interests and other Liens effected by the Loan Documents.

4.15    Commercial Purposes. The Loan is not a "consumer transaction" as defined in the Uniform Commercial Code, and none of the Collateral for the Loan was or will be purchased or held primarily for personal, family or household purposes.   The Loan is solely for business or commercial purposes, and not for personal, family or household purposes.  In reliance upon the statements herein contained, Borrower acknowledges that Lender is making the Loan to Borrower without giving to Borrower any disclosures that may be otherwise required under various residential, consumer protection and truth in lending laws, or other similar regulations.

4.16    Patriot Act; Restricted Persons. Neither Borrower nor any Guarantor is listed on the United States Department of Commerce Denied Persons List or Entity List, and neither Borrower nor any Guarantor, in relation to this Agreement, is acting, directly or indirectly, alone or in conjunction with others, for, on behalf of or as a facilitator for any Person listed on the United States Treasury Department's lists of Specially Designated Nationals, Specially Designated Narcotics Traffickers, Specially Designated Terrorists, or Blocked Persons or for, on behalf of or as a facilitator for any Person designated in United States Presidential Executive Order 13224 as a Person who commits, threatens to commit or supports terrorism.

4.17    Disclosure. Neither this Agreement (including disclosure schedules) nor any financial statements delivered to Lender by or on behalf of Borrower in connection with the Loan contemplated by this Agreement contains or will contain any untrue statement of a material fact or omits or will fail to state a material fact necessary in order to make the statements contained therein or herein not materially misleading.

## 5.    CONDITIONS PRECEDENT TO CLOSING

Lender shall not be obligated to consummate this transaction and extend the credit referenced hereunder unless and until the following conditions precedent shall be completely satisfied, which conditions precedent inure solely to the benefit of and may be waived only in writing by Lender:

5.1    Intentionally Deleted.

5.2    Loan Documents. All Loan Documents, including, without limitation, this Agreement, the Amended Note, the Mortgage and the Guaranty, as amended, shall have been duly executed and delivered to Lender.

5.3    Liens. The Liens in favor of Lender created by the Mortgage and any other Loan Documents shall have been duly perfected and the Collateral which is the subject of such Liens shall be free and clear of all Liens, other than Liens in favor of Lender and Permitted Liens consented to by Lender.

9

EXHIBIT A

5.4     No Default. No event of default under this Agreement, the Amended Note or the other Loan Documents on the part of Borrower or Guarantors, whether separately or together, shall exist or be continuing.

5.5     No Material Adverse Change. No material adverse change in the business condition (financial or otherwise), operations, properties or prospects of Borrower has occurred since the date of the most recent financial statement(s) provided to Lender.

5.6     Proceeding. There shall be no pending or, to the knowledge of Borrower, threatened Proceeding (a) seeking an injunction or other restraining order, damages or other relief with respect to the transactions contemplated by this Agreement or the other Loan Documents or (b) which affects or could affect the business, prospects, operations, assets, liabilities or condition, financial or otherwise, of Borrower, except, in the case of clause (b), where such Proceeding could not reasonably be expected to have a Material Adverse Effect.

5.7     Appraisal. Prior to the Closing Date, Lender shall have obtained an appraisal of the Property which appraisal shall be satisfactory to Lender in all respects.

5.8     Title Insurance. Borrower shall have furnished to Lender a final, marked-up mortgagee title insurance commitment issued by the title insurer in an amount equal to the amount of the Loan and otherwise in form and content acceptable to Lender, fully paid, and insuring Lender and its successors and assigns that the Loan Documents constitute a valid first lien and a first security interest in the Property and that the title to the Property is good and marketable and free and clear of all defects and encumbrances except for the Permitted Liens, and each containing: (a) full coverage against liens of mechanics, materialmen, laborers and any other parties who might claim statutory or common law lien rights; (b) no survey exceptions other than those theretofore approved by Lender and Lender's counsel; and (c) either the following endorsements or assurance that title insurer is prepared to issue the following endorsements with the issuance of the final title insurance policy if requested by Lender: (i) (i) Environmental Lien Endorsement; (ii) Variable Rate Mortgage; and (iii) Survey Endorsement.

5.9     Flood Hazard. Lender shall have received evidence that the Property is not located in an area designated by the Secretary of Housing and Urban Development as a special flood hazard area or flood hazard insurance acceptable to Lender in its sole discretion.

5.10    Environmental Due Diligence. Lender shall have received evidence that the Property complies with all applicable laws and regulations pertaining to the protection and preservation of the environment. Such evidence may include (without limitation) Lender's environmental checklist, environmental assessment, or a Phase I Environmental Assessment of the Property and any improvements which has been prepared by an environmental engineer satisfactory to Lender, in its sole and absolute discretion, who shall conduct soil and chemical testing, addressing the probability of toxic or hazardous wastes on, at or adjacent to the Property (in soil or water), taking into consideration the history of the Property and any improvements and its uses, adjacent land uses and the results of a site inspection by such engineer, and certifying that there are no hazardous or toxic wastes on or at the Property. Such Phase I Environmental

10

EXHIBIT A

Assessment shall be performed in accordance with the most recent promulgated standards of the American Society for Testing and Materials ("ASTM's") for Environmental Site Assessments for Commercial Real Estate (ASTM Designation E 1527 and 1528). If any such evidence discloses the existence or probable existence of any toxic or hazardous wastes or asbestos of any quantity on or at the Property and any improvements, then Lender may, in its sole and absolute discretion, require additional soil, water or asbestos sampling and analysis (also referred to as a Phase II Environmental Assessment).

5.11    Insurance. Borrower shall have delivered to Lender evidence of insurance coverage, as required in Section 8.3 of this Agreement.

5.12    Survey. Borrower shall have furnished an ALTA plat survey of the Property prepared and certified by a surveyor licensed in the state in which the Property is located and otherwise satisfactory to Lender.

5.13    Payment of Fees. Payment of all fees, expenses and other amounts due and owing to Lender.

5.14    Other Requirements. Borrower shall have satisfied all other requirements and conditions, if any, to Lender's obligation to disburse such proceeds specified in this Agreement and as otherwise commercially reasonably requested by Lender.

## 6.    FEES AND EXPENSES

6.1    Loan Commitment Fee. Borrower agrees to pay to Lender a non-refundable loan commitment fee equal to one and 75/100 percent (1.75%) of the original amount of the Amended Note, minus any sums paid under the Prior Loan Agreement, or One Hundred Seventeen Thousand Dollars ($117,000.00) (the "Loan Commitment Fee"), on or before the Closing Date. The parties recognize and agree that the Loan Commitment Fee (i) was not and is not a charge for the use of money, but rather a purchase of the right to secure a loan of money on the part of Borrower; and (ii) was a material inducement for Lender to make the Loan and for having Lender ready, willing and able to fund the Loan in accordance with the terms of this Agreement. Borrower's payment of the Loan Commitment Fee to Lender is and shall be in addition to all other payments (including without limitation principal and interest) now or hereafter payable to Lender pursuant to the terms and conditions of the Amended Note and the other Loan Documents.

6.2    Extension Fee. Borrower shall be afforded one (1) extension option for an additional six (6) month term. In order to exercise the Extension Option, Borrower shall (i) provide Lender with thirty (30) days written notice of its intent to exercise such extension and (ii) pay to Lender an Extension Fee equal to one percent (1%) of the original amount of the Amended Note, or $90,250.00.

6.3    Loan Exit Fee. Borrower agrees to pay to Lender a non-refundable loan exit fee equal to one percent (1%) of the original amount of the Amended Note, or $90,250.00 (the "Loan Exit Fee") on the Maturity Date as defined in the Amended Note. The parties recognize

11

**EXHIBIT A**

and agree that the Loan Exit Fee (i) was not and is not a charge for the use of money, but rather a purchase of the right to secure a loan of money on the part of Borrower; and (ii) was a material inducement for Lender to make the Loan and for having Lender ready, willing and able to fund the Loan in accordance with the terms of this Agreement. Borrower's payment of the Loan Exit Fee to Lender is and shall be in addition to all other payments (including without limitation principal and interest) now or hereafter payable to Lender pursuant to the terms and conditions of the Amended Note and the other Loan Documents.

6.4     Late Fee. To the extent permitted by law, Borrower agrees to pay a late fee in an amount not to exceed five percent (5%) of any payment (other than a principal reduction payment or final balloon payment) that is more than ten (10) days late. The imposition and payment of a late fee shall not constitute a waiver of Lender's rights with respect to the default.

6.5     Expenses.

(a)     Borrower agrees to pay all reasonable out of pocket costs and expenses incurred by Lender in connection with making the Loan. Such costs and expenses include, but are not limited to, a documentation review fee payable to Lender on the Closing Date, as well as the reasonable fees, charges and disbursements of Lender's counsel (including in-house counsel) in connection with the preparation, administration and enforcement of the Loan Documents executed in connection with the Loan.

(b)     Borrower agrees to reimburse Lender for the out of pocket costs of periodic field examinations of Borrower's books and records and of the Collateral, and appraisals of the Collateral, at such intervals as Lender may reasonably require, but not more than once per twelve (12) month period in the absence of an Event of Default (as hereinafter defined). The actions described in this paragraph may be performed by employees of Lender or by independent appraisers.

## 7.     DISBURSEMENTS AND PAYMENTS

7.1     Disbursements and Payments.

(a)     Each payment by Borrower will be made in U.S. dollars and immediately available funds by debit to a deposit account, as described in this Agreement or otherwise authorized by Borrower. For payments not made by direct debit, payments will be made by mail to the address shown on Borrower's statement or at one of Lender's banking centers in the United States or by such other method as may be permitted by Lender.

(b)     For any payment under this Agreement made by debit to a deposit account, Borrower will maintain sufficient immediately available funds in the deposit account to cover each debit. If there are insufficient immediately available funds in the deposit account on the date Lender enters any such debit authorized by this Agreement, then Lender may reverse the debit.

12

EXHIBIT A

(c) Each disbursement by Lender and each payment by Borrower will be evidenced by records kept by Lender.

7.2 Banking Days. Unless otherwise provided in this Agreement, a banking day is a day other than a Saturday, Sunday or other day on which commercial banks are authorized to close, or are in fact closed, in the state where Lender's lending office is located, and, if such day relates to amounts bearing interest at an offshore rate (if any), means any such day on which dealings in dollar deposits are conducted among banks in the offshore dollar interbank market. All payments and disbursements which would be due on a day which is not a banking day will be due on the next banking day. All payments received on a day which is not a banking day will be applied to the credit on the next banking day.

7.3 Interest Calculation. Except as otherwise stated in this Agreement, all interest and fees, if any, will be computed on the basis of a three hundred sixty (360) day year for the actual number of days elapsed.

## 8. COVENANTS

Borrower covenants and agrees, so long as any amount is owed to Lender under this Agreement, the Amended Note or any other Loan Documents, and until such time as Lender is repaid in full:

8.1 Financial Information. At all times that any debt, liability or obligation is owed to Lender by Borrower under this Agreement or any of the other Loan Documents, unless Lender otherwise consents in writing, Borrower will maintain for itself a system of accounting established and administered in accordance with GAAP or in accordance with such other principles or methods as are reasonably acceptable to Lender, consistently applied, and will furnish to Lender:

(a) Within thirty (30) days of December 31st of each fiscal year, the annual financial statements of Borrower, certified and dated by a Responsible Officer of Borrower. The annual financial statements shall be in a form and detail acceptable to Lender, may be internally prepared and shall be reviewed and audited by a certified public accountant acceptable to Lender, upon Lender's request. These financial statements shall include, at a minimum, a balance sheet, a profit and loss statement for the applicable period, operating statements and rent rolls.

(b) Within thirty (30) days of December 31st of each fiscal year, and, in any event, no later than twelve (12) months from the last submission of a personal financial statement from each Guarantor, a personal financial statement to Lender, in a form and detail acceptable to Lender, for each Guarantor. Each personal financial statement provided to Lender shall be accompanied by a certification of each Guarantor certifying that, to his knowledge, no Event of Default has occurred under this Agreement or, if an Event of Default has occurred, specifying such default with detail.

13

**EXHIBIT A**

(c)     Within thirty (30) days of filing, a copy of the federal income tax return (including all schedules) of Borrower and, if requested by Lender, copies of any extensions of the filing date.

(d)     Within thirty (30) days of filing, a copy of the federal income tax returns (including all schedules) of each Guarantor and, if requested by Lender, copies of any extensions of the filing date.

(e)     Each financial statement of Borrower provided to Lender pursuant to this Section 8.1 shall be accompanied by a certification by a Responsible Officer certifying that, to his or her knowledge, no Event of Default has occurred under this Agreement or, if an Event of Default has occurred, specifying such default with detail.

(f)     Borrower shall furnish such other information, including non-financial information, as Lender may from time to time reasonably request within five (5) Business Days of such request.

8.2     Financial Covenant.  On December 31 of the current year and on December 31 of each year thereafter while the Loan evidenced hereby remains outstanding (each a "Calculation Date"), Borrower shall be obligated to maintain a Global Debt Service Coverage Ratio (as defined below) acceptable to Lender.  For the purposes hereof, the term "Global Debt Service Coverage Ratio" shall mean the ratio of (i) the Net Operating Income (as defined below) resulting from the rents and other charges payable with respect to the Property, before distributions, plus the net personal income of the Guarantors, to (ii) the aggregate amount of principal and interest paid by Borrower under the Loan for the preceding twelve (12) months. "Net Operating Income" shall mean all of the earnings derived from the operation of the Property for the preceding twelve (12) months before interest, income taxes, depreciation and amortization, and rent expenses, more commonly referred to as "EBITDA" and prepared in accordance with Generally Accepted Accounting Principles.  In the event that at any time and from time to time the Global Debt Service Coverage Ratio is less than as specified above, Borrower shall make a mandatory principal prepayment against the Loan within thirty (30) days of receipt of written notice from Lender that this covenant has not been met.  The amount of the mandatory principal prepayment shall be determined by Lender and shall be sufficient, at a minimum, to reduce the outstanding principal balance of the Loan to an amount which results in the above Global Debt Service Coverage Ratio being met or achieved.

8.3     Insurance.

(a)     Borrower shall maintain insurance satisfactory to Lender as to amount, nature and carrier covering property damage (including loss of use and occupancy) to any of Borrower's properties, business interruption insurance, public liability insurance including coverage for contractual liability, product liability and workers' compensation, flood insurance and any other insurance which is usual for Borrower's business.

(b)     Borrower shall maintain all risk property damage insurance policies (including, without limitation, windstorm coverage and hurricane coverage as applicable)

14

**EXHIBIT A**

covering the property comprising the Collateral. Each insurance policy must be for the full replacement cost of the Collateral and include a replacement cost endorsement.

(c)    All policies of insurance required by Lender must be issued by companies approved by Lender and otherwise be acceptable to Lender as to amounts, forms, risk coverages and deductibles. Each policy shall provide for at least thirty (30) days prior notice to Lender of any cancellation thereof. The insurance must name Lender as an additional insured party and/or include a lender's loss payable endorsement in favor of Lender in a form and with detail acceptable to Lender, as applicable. Upon the request of Lender, Borrower will deliver or cause to be delivered to the Lender a copy of each insurance policy, or, if permitted by Lender, certificates of insurance on an ACORD 28 form (in the case of property insurance) and an ACORD 25 form (n the case of liability insurance) listing all insurance in force.

(d)    If Borrower fails to keep any such coverage in effect while the Loan is outstanding, then Lender may procure the coverage at Borrower's expense. Borrower will reimburse Lender, on demand, for all premiums paid by Lender, which amounts may be added to the principal balance of the Loan and shall bear interest at the Default Rate (as hereinafter defined) provided in this Agreement.

8.4    Lender as Principal Depository.  Borrower shall maintain Lender as its principal depository bank during the term of the Loan, including for the deposit of rent receipts and security deposits and the maintenance of business, cash management, operating and administrative accounts.

8.5    Compliance with Law. Borrower shall comply in all material respects with all Requirements of Law.

8.6    Preservation of Rights, Permits. Borrower shall (a) preserve and maintain its corporate existence, rights, franchise and privileges in the jurisdiction of its formation; and (b) maintain all registrations, licenses, consents, approvals and authorizations from and with any Governmental Authority necessary or material to the conduct of its business.

8.7    Other Debts. Borrower shall not have outstanding or incur any Indebtedness or become liable for Indebtedness other than Indebtedness owed to Lender, without Lender's written consent, except for Permitted Indebtedness.

8.8    Other Liens. Borrower shall not create, assume or allow any Lien on the Collateral or on any other real or personal property Borrower now or later owns, except: (a) Liens and security interests in favor of Lender and (b) Permitted Liens.

8.9    Change in Control. Borrower shall not cause, permit or suffer any Change in Control of Borrower.

8.10    Additional Negative Covenants. Borrower shall not, without Lender's prior written consent: (a) enter into any consolidation, merger or other combination or become a partner in a partnership, a member of a joint venture or a member of a limited liability company;

15

**EXHIBIT A**

(b) sell, assign, lease, transfer or otherwise dispose of all or any portion of the Property; or (c) liquidate Borrower's business or dissolve itself.

8.11    Notices to Lender. Borrower shall promptly notify Lender in writing of (a) any Event of Default under this Agreement or any event which, with notice or lapse of time or both, would constitute an Event of Default; (b) any change in Borrower's or any Guarantor's name, legal structure, state of organization, place of business or chief executive office if the applicable Person has more than one place of business; (c) the commencement of any action, suit or Proceeding or any other matter that could reasonably be expected to have a Material Adverse Effect; (d) any event or development that could reasonably be expected to have a Material Adverse Effect; or (e) any change in the senior management of Borrower.

8.12    Books and Records. Borrower shall maintain adequate books and records and allow Lender and its agents, at Lender's expense and after reasonable advance notice to Borrower, to examine, audit and make copies of books and records at any reasonable time. If any of Borrower's books or records are in the possession of a third party, then Borrower authorizes that third party to permit Lender or its agents to have access to perform examinations or audits and to respond to Lender's requests for information concerning such books and records.

8.13    Performance of Acts. Upon request by Lender, Borrower shall perform all acts which may be necessary or advisable to perfect any lien or security interest provided for in this Agreement or to carry out the intent of this Agreement.

8.14    No Distributions or Redemptions Upon Event of Default. Borrower will not (a) declare or pay any dividend, distribution or similar type payment on any class of Borrower's equity interests if an Event of Default shall exist or be continuing; or (b) redeem any equity interest of any partner of Borrower if an Event of Default shall exist or be continuing.

8.15    Insider Transactions. Borrower shall not, directly or indirectly, purchase, acquire or lease any property or services from, or sell, provide, or lease any property or services to, or otherwise deal with, in the ordinary course of business or otherwise (a) any member of Borrower or (b) any business entity, corporation, partnership or association in which a member of Borrower owns a controlling interest, except upon terms and conditions not less favorable to such Borrower than if no such relationship existed.

8.16    Loans to Members, Managers, Employees, etc. Borrower will not, directly or indirectly, lend or advance or permit to be outstanding any loans or advances of money, credit or property to officers, directors, stockholders, members, managers, employees, agents or consultants of such Borrower.

8.17    Rent Roll; Leases. Within thirty (30) days of December 31st of each fiscal year, Borrower shall deliver to Lender a detailed rent roll for the Property in a form and detail acceptable to Lender. In addition, upon request, Borrower shall furnish to Lender copies of any and all leases for the Property.

8.18    Intentionally Deleted

16

EXHIBIT A

8.19    Assessments.    Borrower shall timely pay when due any and all assessments pertaining to the Property imposed by any homeowner's association, property owner's association, community development district or the like.

8.19    Performance of Obligations.    Borrower will duly pay, perform and discharge all of its obligations under this Agreement, the Amended Note, any of the other Loan Documents or any other agreement between Borrower and Lender.

## 9.    HAZARDOUS SUBSTANCES

9.1    Indemnity Regarding Hazardous Substances. Borrower agrees to indemnify and hold Lender harmless from and against all liabilities, claims, actions, foreseeable and unforeseeable, consequential damages, costs and expenses (including sums paid in settlement of claims and all consultant, expert and legal fees and expenses of Lender's counsel) or loss directly or indirectly arising out of or resulting from any of the following:

(a)    Any Hazardous Substance being present at any time, whether before, during or after any construction, in or around any part of the Property, or in the soil, groundwater or soil vapor on or under the Property, including those incurred in connection with any investigation of site conditions or any clean-up, remedial, removal or restoration work, or any resulting damages or injuries to the person or property of any third parties or to any natural resources.

(b)    Any use, generation, manufacture, production, storage, release, threatened release, discharge, disposal or presence of a Hazardous Substance. This indemnity will apply whether the Hazardous Substance is on, under or about any of Borrower's property or operations or property leased to Borrower, whether or not the property has been taken by Lender as collateral.

Upon demand by Lender, Borrower will defend any investigation, action or Proceeding alleging the presence of any Hazardous Substance in any such location, which affects the Property or which is brought or commenced against Lender, whether alone or together with Borrower or any other Person, all at Borrower's own cost and by counsel to be approved by Lender in the exercise of its reasonable judgment. In the alternative, Lender may elect to conduct its own defense at the expense of Borrower. Borrower's obligations to Lender under this Section 9.1 shall survive termination of this Agreement and repayment of the Loan.

9.2    Representation and Warranty Regarding Hazardous Substances. Before executing this Agreement, Borrower researched and inquired into the previous uses and ownership of the Property. Based on that due diligence, Borrower represents and warrants that to the best of its knowledge, no Hazardous Substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Borrower has disclosed to Lender in writing.

17

EXHIBIT A

9.3     Compliance Regarding Hazardous Substances. Borrower has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any Governmental Authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or Hazardous Substances ("Environmental Laws"). Borrower shall promptly, at Borrower's sole cost and expense, take all reasonable actions with respect to any Hazardous Substances or other environmental condition at, on, or under the Property necessary to (a) comply with all applicable Environmental Laws; (b) allow continued use, occupation or operation of the Property; or (c) maintain the fair market value of the Property. Borrower acknowledges that Hazardous Substances may permanently and materially impair the value and use of the Property.

9.4     Notices Regarding Hazardous Substances. Until full repayment of the Loan, Borrower will promptly notify Lender in writing if it knows, suspects or believes there may be any Hazardous Substance in or around the Property, or in the soil, groundwater or soil vapor on or under the Property, or that Borrower or the Property may be subject to any threatened or pending investigation by any Governmental Authority under any current or future law, regulation or ordinance pertaining to any Hazardous Substance.

9.5     Site Visits, Observations and Testing. Lender and its agents and representatives will have the right at any reasonable time, after giving reasonable notice to Borrower, to enter and visit the Property, and any other locations where any personal property collateral securing this Agreement is located, for the purposes of observing the Property and the personal property collateral, taking and removing environmental samples and conducting tests on any part of the Property. Borrower shall reimburse Lender on demand for the costs of any such environmental investigation and testing, for up to one (1) time during each twelve (12) month period of the Loan. Lender will make reasonable efforts during any site visit, observation or testing conducted pursuant this Section 9.5 to avoid interfering with Borrower's use of the Property and the personal property collateral. Lender is under no duty, however, to visit or observe the Property or the personal property collateral or to conduct tests, and any such acts by Lender will be solely for the purposes of protecting Lender's security and preserving Lender's rights under this Agreement. No site visit, observation or testing or any report or findings made as a result thereof ("Environmental Report") (a) will result in a waiver of any default of Borrower; (b) impose any liability on Lender; or (c) be a representation or warranty of any kind regarding the Property or the personal property collateral (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness). In the event Lender has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to Borrower or any other party, Borrower authorizes Lender to make such a disclosure. Lender may also disclose an Environmental Report to any regulatory authority and to any other parties as necessary or appropriate in Lender's judgment. Borrower further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Borrower by Lender or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Borrower) by Borrower without advice or assistance from Lender.

**10.     DEFAULT**

18

EXHIBIT A

The occurrence of any one or more of the following events shall constitute an event of default (an "Event of Default") under this Agreement:

10.1    Failure to Pay.  Borrower fails to make a payment under this Agreement or the Amended Note within five (5) days of the date due.

10.2    Other Default. Borrower or Guarantors default in the performance or observance of any covenant, condition, requirement, provision or agreement contained in this Agreement or any of the other Loan Documents, and such default continues beyond the expiration of any applicable grace or cure period.

10.3    Cross Default. A default or event of default occurs under any present or future Indebtedness of Borrower or Guarantors to Lender not evidenced by this Agreement or any of the other Loan Documents or a default occurs under any guaranty or security document executed by any Person in connection therewith, and any such default or event of default continues beyond the expiration of any applicable grace or cure period.  An Event of Default under this Agreement shall also constitute a default under any other Indebtedness, guaranty or agreement that Borrower or Guarantors have entered into with Lender.

10.4    Representation or Warranties.  Any (a) representation or warranty made or deemed made by or on behalf of Borrower or Guarantors to Lender under or in connection with this Agreement or any of the Loan Documents, or (b) any certificate or information delivered by or on behalf of Borrower or Guarantors to Lender in connection with this Agreement or any of the Loan Documents is false in any material respect on the date as of which made or deemed to be made.

10.5    Other Indebtedness. Failure of Borrower to pay when due any Indebtedness, subject to any permitted grace or cure period; or the default by Borrower in the performance of any term, provision or condition contained in any agreement or agreements under which any such Indebtedness was created or is governed (or the occurrence of any other event or existence of any other condition) the effect of which is to cause, or permit the holder or holders of such Indebtedness to cause, such Indebtedness to become due prior to its stated maturity, subject to any permitted grace or cure period; or any such Indebtedness of Borrower is declared to be due and payable, or required to be prepaid, or repurchased (other than by a regularly scheduled payment) prior to the stated maturity thereof; or Borrower fails to pay, or admits in writing Borrower's inability to pay, its debts generally as they become due.

10.6    Insolvency; Voluntary Proceedings. Borrower (a) has an order for relief entered with respect to Borrower under the federal bankruptcy laws as now or hereafter in effect; (b) makes an assignment for the benefit of creditors; (c) applies for, seeks, consents to, or acquiesces in the appointment of a receiver, custodian, trustee, examiner, liquidator, or similar official for Borrower, or any substantial portion of Borrower's property; (d) institutes any Proceeding seeking an order for relief under the federal bankruptcy laws as now or hereafter in effect, or seeking to adjudicate Borrower as bankrupt, or insolvent, or seeking dissolution, winding up, liquidation, reorganization, arrangement, adjustment, or composition of Borrower, or its debts under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, or fails to

19

EXHIBIT A

file an answer, or other pleading denying the material allegations of any such Proceeding filed against it; (e) takes any corporate or entity action to authorize or effect any of the foregoing provisions of this Section 10.6; or (f) fails to contest in good faith any appointment or Proceeding described in this Section 10.6.

10.7    Insolvency; Involuntary Proceedings. Without the application, approval or consent of Lender, a receiver, trustee, examiner, liquidator or similar official is appointed for Borrower or any substantial portion of Borrower's property, or a Proceeding described in Section 10.6 is instituted against Borrower, and such appointment continues undischarged or such Proceeding continues undismissed or unstayed for a period of thirty (30) consecutive days.

10.8    Mortgage. If the Mortgage ceases to be in full legal force and effect and/or an event of default under the Mortgage shall occur and be continuing.

10.9    Guaranty. If (a) any Guarantor denies or disaffirms such Guarantor's obligations under the Guaranty or terminates the Guaranty without Lender's prior written consent; or (b) any Guarantor dies or is declared incompetent (unless within ninety (90) days of such death or incapacity a substitute guarantor acceptable to Lender shall guaranty the Loan in a manner and form acceptable to Lender, in its sole and absolute discretion).

10.10    Sale of Property. Borrower sells, transfers or otherwise conveys all or any part of the Collateral or any of its interest therein without the prior written consent of Lender.

10.11    Lien Priority. Lender fails to have a valid and enforceable perfected security interest in or lien on the Collateral securing Borrower's obligations under this Agreement or such security interest or lien fails to be prior to the rights and interest of all other Liens except for any Liens in favor of Lender and Permitted Liens consented to by Lender.

10.12    Deterioration of Collateral. There is an impairment or a deterioration of the value of the Collateral, as determined in Lender's reasonable discretion, or there is any act or circumstance that, in Lender's reasonable determination, makes it insecure.

10.13    Judgments. Borrower fails, subject to any applicable grace period, (a) to pay, bond or otherwise discharge one or more monetary judgments entered against Borrower or orders for the payment of money, or (b) to pay, bond or otherwise discharge one or more non-monetary judgments entered against Borrower or orders which, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect, which judgment(s), in any such case, is/are not stayed on appeal or otherwise being contested in good faith by an appropriate Proceeding.

10.14    Attachment. There is any attachment, sequestration or similar proceedings against the Property.

10.15    Material Adverse Change. A material adverse change occurs, or is reasonably likely to occur, in the business condition (financial or otherwise), operations, properties, prospects or ability to repay the Loan of Borrower.

20

**EXHIBIT A**

10.16   Change in Control. The occurrence of a Change in Control of Borrower.

10.17   Government Action. Any Governmental Authority takes action that Lender reasonably believes materially adversely affects Borrower's financial condition or ability to repay the Loan.

## 11.   REMEDIES

11.1    Remedies upon Event of Default. If an Event of Default occurs and is continuing, Lender may declare all amounts previously advanced to Borrower under this Agreement and any or all other Indebtedness owed by Borrower to Lender, whether direct or indirect, contingent or certain, and all interest accrued and unpaid thereon, to be immediately due and payable without presentment, demand, protest or further notice of any kind (all of which hereby are expressly waived), which, unless otherwise provided in the applicable Loan Documents, shall thereupon bear interest at a rate equivalent to eighteen percent or the highest rate allowed by law (the "Default Rate"), and Lender may thereupon institute Proceedings to collect the same.

11.2    Enforcement of Security. Lender may exercise its rights and remedies under the Amended Note, the Mortgage and any other Loan Document in accordance with the respective terms hereof, including but not limited to foreclosure of the Mortgage.

11.3    Receiver. Lender may appoint a receiver as a matter of strict right, for the purpose of preserving the Property, preventing waste and protecting all rights accruing to Lender by virtue of this Agreement. All expenses incurred in connection with the appointment of a receiver, or in protecting, preserving or improving the Property, shall be chargeable against Borrower and shall be enforced as a lien against the Property.

11.4    Remedies Cumulative. Lender shall have, in addition to the rights and remedies contained in this Agreement and the other Loan Documents, all of the rights and remedies of a creditor and, to the extent applicable, of a secured party, now or hereafter available at law or in equity. Lender may, at its option, exercise any one or more of such rights and remediate individually, partially, or in any combination from time to time, including, to the extent applicable, before the occurrence of an Event of Default. No right, power or remedy conferred upon Lender by the Loan Documents shall be exclusive of any other right, power or remedy referred to therein or now or hereafter available at law or in equity.

## 12.   ENFORCING THIS AGREEMENT; MISCELLANEOUS

12.1    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of Florida. To the extent that Lender has greater rights or remedies under federal law or the law where the Property is located, whether as a national bank or otherwise, this paragraph shall not be deemed to deprive Lender of such rights and remedies as may be available under federal law or the law where the Property is located.

**EXHIBIT A**

12.2    Successors and Assigns. This Agreement is binding on Borrower and Lender's successors and assigns. Borrower agrees that it may not assign this Agreement without Lender's prior written consent.

12.3    Cross Collateralization/Cross Default. Borrower hereby agrees (a) that the occurrence of an Event of Default(s) under this Agreement shall be deemed a default under all other loans and loan commitments between Borrower and Lender or an affiliated entity of Lender, (b) that the security for the Loan provided for in Section 3 hereof shall serve as collateral and security for all other loans and loan commitments between Borrower and Lender or an affiliated entity of Lender and (c) that the security for all other loans and loan commitments between Borrower and Lender or an affiliated entity of Lender shall serve as collateral and security for the Loan.

12.4    Attorneys' Fees. Borrower shall reimburse Lender for any reasonable costs and attorneys' fees incurred by Lender in connection with the enforcement or preservation of any rights or remedies under this Agreement, the Amended Note and the other Loan Documents and in connection with any amendment, waiver, "workout" or restructuring to any of the foregoing. In the event of a lawsuit or arbitration proceeding, the prevailing party is entitled to recover costs and reasonable attorneys' fees incurred in connection with the lawsuit or arbitration proceeding, as determined by the court or arbitrator. In the event that any case is commenced by or against Borrower under the Bankruptcy Code (Title 11, United States Code) or any similar or successor statute, Lender is entitled to recover costs and reasonable attorneys' fees incurred by Lender related to the preservation, protection or enforcement of any rights of Lender in such a case.

12.5    Set-Off. In addition to any rights and remedies of Lender provided by law, upon the occurrence and during the continuance of any Event of Default under this Agreement, Lender is authorized, at any time, to set-off and apply any and all deposits of Borrower held by Lender against any and all Indebtedness owing to Lender. The set-off may be made irrespective of whether or not Lender shall have made demand under this Agreement and may be made without prior notice to Borrower or any other party, any such notice being waived by Borrower (on its own behalf and on behalf of Guarantors) to the fullest extent permitted by law, except to the extent notice is required as a component of the Event of Default. Lender agrees promptly to notify Borrower after any such set-off and application; provided, however, that the failure to give such notice shall not affect the validity of such set-off and application.

12.6    Indemnification. Borrower agrees to indemnify Lender, its officers, directors, employees, representatives and agents from and hold each of them harmless against any and all losses, liabilities, claims, damages or expenses incurred by any of them as a result of, or arising out of, or in any way related to, or by reason of, any investigation, litigation or other Proceeding (whether or not Lender is a party thereto) related to the entering into and/or performance of any of the Loan Documents, or the use of proceeds of the Loan, or the consummation of any other transactions contemplated in any of the Loan Documents, including the reasonable fees and disbursements of counsel incurred in connection with any such investigation, litigation or other Proceeding (but excluding any such losses, liabilities, claims, damages or expenses to the extent incurred by reason of gross negligence or willful misconduct on the part of the Person to be indemnified). The provisions of this section survive the repayment of the Amended Note and the

22

EXHIBIT A

termination of this Agreement or any of the other Loan Documents for the applicable period of limitations imposed by law.

12.7     Documentary Stamp Tax. Borrower agrees to defend, indemnify and hold Lender harmless from and against any and all liability for documentary excise taxes and intangible taxes (together with all interest, penalties, costs and reasonable attorneys' fees incurred in connection therewith) that at any time may be levied, assessed or imposed by the State in which the property lies or any other Governmental Authority (a) upon the Amended Note or any of the other Loan Documents, (b) upon any amendment, extension or renewal of any of the foregoing, or (c) upon Lender by virtue of owning or holding any of the foregoing documents or instruments; all of which shall be secured by the security interest or other Lien granted by the Mortgage. The provisions of this section survive the repayment of the Amended Note and the termination of this Agreement or any of the other Loan Documents for so long as any claim may be asserted by the State in which the property lies or any other Governmental Authority.

12.8     Cumulative Remedies. Each and every right, remedy and power granted to Lender under this Agreement and the other Loan Documents is cumulative and in addition to any other right, remedy or power herein or therein specifically granted, now or hereafter existing in equity, at law, by virtue of statute, by agreement or otherwise, and may be exercised by Lender from time to time concurrently or independently and as often and in such order as Lender may deem expedient.

12.9     Notices. Unless otherwise provided in this Agreement or in another agreement between Lender and Borrower, all notices required under this Agreement shall be personally delivered or sent by first class mail, postage prepaid, or by overnight courier, to the following addresses (or to such other addresses as Lender and Borrower may specify from time to time in writing):

If to Borrower:          David B. Hunt and Melissa D. Hunt
                         34 Finnwick CV
                         Jackson, TN 38305

If to Lender:            Kiran Reif, LLC
                         5600 Mariner Street, Suite 30013315 U.S. Highway 301
                         Tampa, Florida 33609
                         Attn: Dr. Kiran C. Patel

Notices and other communications shall be effective (a) if mailed, upon the earlier of receipt or five (5) days after deposit in the U.S. mail, first class, postage prepaid, or (b) if hand-delivered, by courier or otherwise (including telegram, lettergram or mailgram), when delivered.

12.10   Waiver.

(a)      The failure of Lender (i) to insist upon or enforce strict performance of any provision of this Agreement or any of the other Loan Documents; or (ii) to exercise any right, power or authority under this Agreement, any of the other Loan Documents or any right,

23

**EXHIBIT A**

power or remedy available to Lender at law, shall not be construed as a waiver, renouncement or relinquishment of Lender's right to assert or rely upon that provision, right, power or authority, and that provision, right, power or authority shall continue in full legal force and effect without waiver, renouncement or relinquishment. No waiver by Lender of any provision of this Agreement or any of the other Loan Documents shall be binding unless in writing and signed by Lender. No waiver by Lender of any provision of this Agreement or any of the other Loan Documents constitutes a waiver of any other provision of this Agreement or such Loan Document, as the case may be, whether or not similar, nor shall any waiver constitute a continuing waiver, unless otherwise expressly provided. Any failure or delay on the part of Lender in exercising any such right, remedy or power, or abandonment or discontinuance of steps to enforce the same, does not operate as a waiver thereof or affect Lender's right thereafter to exercise the same, and any single or partial exercise of any such right, remedy or power does not preclude any other or further exercise thereof or the exercise of any other right, remedy or power.

(b)     The receipt by Lender of any sum of money under this Agreement with knowledge of the breach of any term, covenant or provision of this Agreement shall not be deemed a waiver of such breach. No payment by Borrower or receipt by Lender of a lesser amount than any sum of money herein stipulated shall be deemed to be other than on account of such stipulated sum, nor shall any endorsement or statement on any check, or any letter accompanying any check, be deemed an accord and satisfaction and Lender may accept such payment or check without prejudice to Lender's right to recover the balance of any payment or other monies under this Agreement or pursue any of the remedies under this Agreement and any of the other Loan Documents.

(c)     No advance by Lender to Borrower under this Agreement constitutes a waiver of any of Borrower's obligations under this Agreement and the Loan Documents.

12.11   Time. All references to time herein shall be references to Eastern Standard Time or Eastern Daylight Time, as the case may be, unless specified otherwise. Time is of the essence as to this Agreement, each of the other Loan Documents and all of their respective provisions and obligations.

12.12   Assignment.

(a)     Borrower acknowledges that Lender is relying solely on the financial and managerial ability of Borrower in granting and funding the Loan, and therefore, Borrower has no right to assign (any assignment by operation of law shall be deemed for the purposes of this Agreement an assignment by Borrower) any rights under this Agreement.

(b)     Lender may, from time to time, assign in whole or in part, or issue participation interests in and to, all of its rights and interests under this Agreement, the Amended Note and the other Loan Documents. In such event, this Agreement shall continue to apply to the Loan, the Amended Note and the other Loan Documents. Lender agrees to give Borrower notice of any such assignment, but the failure of Lender to give such notice shall not affect the validity of any such assignment or any obligations of Borrower or any other Person under this

24

EXHIBIT A

Agreement, the Amended Note and the other Loan Documents. Provided the participant or prospective participant agrees in writing to maintain the confidentiality of disclosed information, Lender may disclose to any participant or prospective participant any information, data or material in Lender's possession relating to Borrower, Guarantors and/or the Loan without the consent of or notice to Borrower, Guarantors or any other Person. In the event of such assignment, it shall be deemed to have been made pursuant to the provisions of this Agreement and not to be in modification of this Agreement and any advances made by any such assignee shall be evidenced and secured by the Amended Note and the other Loan Documents.

**12.13   WAIVER OF JURY TRIAL.   LENDER AND BORROWER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHTS SUCH PERSON MAY HAVE TO A TRIAL BY JURY, WITH RESPECT TO ANY PROCEEDING BASED ON OR ARISING OUT OF THIS AGREEMENT, THE AMENDED NOTE OR ANY OF THE LOAN DOCUMENTS, INCLUDING ANY COURSE OF CONDUCT, COURSE OF DEALING, VERBAL OR WRITTEN STATEMENTS, OR ACTIONS OR OMISSIONS OF ANY PARTY WHICH IN ANY WAY RELATE TO THE LOAN. THE PARTIES HERETO  HAVE SPECIFICALLY DISCUSSED AND NEGOTIATED THIS WAIVER AND  UNDERSTAND  THE  LEGAL  CONSEQUENCES  OF  SIGNING  THIS AGREEMENT. THIS WAIVER BY BORROWER IS A MATERIAL INDUCEMENT FOR LENDER'S ENTERING INTO THIS AGREEMENT, AND LENDER'S WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER'S ACCEPTANCE OF THE LOAN AND THE EXECUTION AND DELIVERY BY BORROWER OF THE LOAN DOCUMENTS TO WHICH BORROWER IS A PARTY. AT A PARTY'S REQUEST, THE OTHER PARTIES WILL JOIN IN ASKING THE COURT IN WHICH SUIT IS PENDING TO TRY THE CASE AND DECIDE ALL ISSUES, INCLUDING ISSUES OF FACT, WITHOUT A JURY.**

12.14   Jurisdiction; Venue. The validity, construction, enforcement and interpretation of this Agreement shall be governed by the substantive laws of the State of Florida or as prescribed in Section 12.1, without application of its conflicts of law principles, and the United States of America. Any action, suit or Proceeding arising out of this Agreement shall be brought as provided in Section 12.1, and each party irrevocably consents to and submits to the exclusive jurisdiction of those courts and irrevocably waives any objection which such party now or hereafter may have to the institution of any such suit, action or Proceeding in those courts and further irrevocably waives any defense or claim that such suit, action or Proceeding in any such court has been brought in an inconvenient forum or improper venue.

12.15   Headings. Section and paragraph headings are for reference only and shall not affect the interpretation or meaning of any provisions of this Agreement.

12.16   Counterparts. This Agreement may be executed in as many counterparts and by means of facsimile signatures, as necessary or convenient, and by the different parties on separate counterparts each of which, when so executed, shall be deemed an original but all such counterparts shall constitute but one and the same agreement.

25

**EXHIBIT A**

12.17 Limitation of Interest and Other Charges. Notwithstanding any other provision contained in this Agreement, Lender does not intend to charge, and Borrower shall not be required to pay, any amount of interest or other fees or charges that is in excess of the maximum permitted by applicable law. Any payment in excess of such maximum shall be refunded to Borrower or credited against principal, at the option of Lender. It is the express intent hereof that Borrower not pay and Lender not receive, directly or indirectly, interest in excess of that which may be lawfully paid under applicable law, including the usury laws in force at the time of the loan.

12.18 Further Assurances. At any time or from time to time after the Closing Date, the parties agree to cooperate with each other, and at the request of any other party, to execute and deliver any further instruments or documents and to take all such further action as the other party may reasonably request in order to evidence or effectuate the consummation of the transactions contemplated hereby and to otherwise carry out the intent of the parties hereunder.

EXHIBIT A

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the day and year first above written.

**WITNESSES:**

Print Name: *KAthy Dowd*

Print Name: *VALRIE Butler*

**BORROWER:**

DAVID B. HUNT

By: _____

**WITNESSES:**

Print Name: *KATHY DOWD*

Print Name: *VALRIE Butler*

MELISSA D. HUNT

By: _____

STATE OF *Tennessee*
COUNTY OF *Madison*

The foregoing instrument was acknowledged before me this 23day of July, 2018, by David B. Hunt and Melissa D. Hunt, who (check one) ☒ is personally known to me OR ☐ produced _____ as identification.

(NOTARY SEAL)

_____
Notary Signature
*Denise Norwalk*
(Type, Stamp or Print Name)

NOTARY PUBLIC
In and for the State of *Tennessee*
My Commission Expires: *4-21-21*

27

**EXHIBIT A**

## Exhibit "A"

### Legal Description

Lot 1 of The Avenue at Craighead County to the City of Jonesboro, Craighead County, Arkansas, as shown by Plat recorded in Plat Cabinet "C" page 261 at Jonesboro, Arkansas, and subject to easements as shown on recorded Plat.

28

EXHIBIT A

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 8 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)★]

COURT:    CIRCUIT COURT OF CRAIGHEAD COUNTY

    Docket/Case Number:  16JCV-19-_____

CASE NAME:
PLAINTIFF/
PETITIONER:          DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
          FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:       DAVID B. HUNT AND MELISSA B. HUNT, ET AL.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):        EXHIBIT B

★Administrative Order No 2.
    (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).
    (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

This Renewal, Amended and Restated Promissory Note (this "**Note**") in the amount of $9,165,000.00 is given in renewal and amendment of the outstanding principal indebtedness previously evidenced by a Promissory Note dated July 28, 2018, executed by Borrower and payable to the order of Lender in the original principal amount of $2,500,000.00 (the "**Prior Note**").

The Prior Note is renewed, amended, restated, replaced and superseded entirely by (i) this Note made by Borrower and payable to the order of Lender.

All documentary stamp taxes due in connection with this Note are being on the Mortgage (as herein after defined) when it is recorded. No additional taxes are due in connection with this Note.

## RENEWAL, AMENDED AND RESTATED PROMISSORY NOTE

**$9,165,000.00**                                     Effective Date:  July _____, 2018
                                                          Place of Execution:  Jonesboro, Arkansas

1.     **Promise to Pay**.

FOR VALUE RECEIVED, the undersigned, **DAVID B. HUNT and MELISSA D. HUNT**, d/b/a Hunt Properties, a Tennessee General Partnership whose address is 34 Finnwick CV, Jackson, TN 38305 (the "Borrower"), promises to pay to the order of **KIRAN REIF, LLC**, a Florida limited liability company, its successors and/or assigns, as their interests may appear, whose address is 5600 Mariner Street, Suite 200, Tampa, Florida 33609 (the "Lender"), in lawful money of the United States of America, in immediately available funds, at the office of Lender, or at such other location as Lender may designate from time to time, the principal amount of **NINE MILLION ONE HUNDRED SIXTY FIVE THOUSAND DOLLARS ($9,165,000.00)** (the "Loan"), together with interest thereon, as hereinafter described in this Renewal, Amended and Restated Promissory Note (the "Note").

2.     **Maturity Date**.

The entire principal amount of this Note together with all accrued, unpaid interest shall be payable in full six months from the date provided above (the "Maturity Date").

3.     **Loan Agreement.**

This Note and the Loan are made pursuant and subject to the terms of that certain Renewal, Amended and Restated Loan Agreement of even date entered into by and between Lender and Borrower (as amended, modified, and/or restated and in legal force and effect from time to time being referred to in this Note as the "Loan Agreement"), and payment and performance under this Note is secured by, among other things, the Mortgage, the Renewal, Amended and Restated Guaranty and any other security documents executed and delivered pursuant to the Loan Agreement. Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement (as hereinafter defined).

10360342v2

Page 1 of 7

**EXHIBIT B**

4.    **Interest Rate Prior to Default**.

    4.1    Computation of Interest.

        4.1.1    Commencing on the date of this Note and continuing through the Term, interest shall accrue on the outstanding principal balance of this Note at a fixed rate per year equal to Nine Percent (9%).

    4.2    Calculation of Interest. Interest shall be calculated on the basis of a three hundred sixty (360) day year for the actual number of days elapsed.

5.    **Default Rate of Interest**.

    Notwithstanding anything to the contrary herein, from and after the Maturity Date or upon the occurrence and during the continuance of an Event of Default, interest shall accrue on the balance of principal remaining unpaid during any such period at the default rate specified in the Loan Agreement.

6.    **Payment Terms**.

    Payments of principal and interest due under this Note, if not sooner declared to be due in accordance with the provisions of this Note, shall be due and payable as follows:

    6.1    Payments. Beginning on date of this Note and continuing on the same day of each and every calendar month through and including the Term of the Note, Borrower shall make consecutive monthly payments of interest in the amount of Sixty Eight Thousand Seven Hundred Thirty Seven and 50/100 Dollars ($68,737.50) each. On the Maturity Date, Borrower shall repay the remaining unpaid principal balance of this Note, together with all accrued and unpaid interest thereon, and any other amounts due and payable by Borrower under this Note or under any of the other Loan Documents.

    6.2    Payment Application. All payments received by the Lender under this Note shall be applied first to unpaid interest, second to the principal balance hereof, third to any late charges and other charges payable by Borrower hereunder, and fourth to any unpaid collection costs.

7.    **Late Payment Charge**.

    If any payment of interest or principal due under this Note prior to the Maturity Date is not made within ten (10) days after such payment is due in accordance with this Note, then, in addition to the payment of the amount due, Borrower shall pay to the Lender a "late charge" in an amount equal to five percent (5%) of the amount so overdue to defray part of the cost to the Lender of collection and handling such late payment. The imposition or collection of any late charge pursuant to this section does not constitute and shall not be deemed to constitute a waiver by the Lender of any of its rights and remedies under this Note, the Mortgage or any of the other Loan Documents.

8.    **Prepayment**.

10360342v2

**EXHIBIT B**

This Note may be prepaid in whole or in part at any time without penalty.

9. **Maximum Amount of Interest**.

Nothing herein, nor any transaction related hereto, shall be construed to operate so as to require Borrower to pay interest at a greater rate than shall be lawful. Should any interest or other charges paid by Borrower in connection with the Loan evidenced by this Note result in computation or earning of interest in excess of the maximum contract rate of interest which is legally permitted under applicable Florida law or federal preemption statute, then any and all such excess is hereby waived by the Lender and shall be automatically credited against and in reduction of the balance due hereunder, and any portion which exceeds such balance shall be paid by the Lender to Borrower. Anything contained herein to the contrary notwithstanding, if for any reason the effective rate of interest on this Note should exceed the maximum lawful rate, the effective rate shall be deemed reduced to and shall be such maximum lawful rate. To the extent permitted by the law, all sums paid or agreed to be paid to the Lender for the use, forbearance or detention of the indebtedness evidenced by this Note shall be amortized, prorated, allocated and spread throughout the full term of this Note. When determining the maximum legal contract rate of interest allowed to be contracted for by applicable law as changed from time to time, unless otherwise prescribed by law, interest shall be calculated on the basis of a three hundred sixty (360) day year consisting of twelve (12) months of thirty (30) days each.

10. **Waivers**.

Borrower, and all natural persons, entities, and other persons now or at any time liable, whether primarily or secondarily, for the payment of the indebtedness evidenced by this Note, without in any way modifying, altering, releasing, affecting or limiting their respective liability or the lien of any security instrument, for themselves, their respective heirs, legal, and personal representatives, successors and assigns, jointly and severally: (a) waive presentment, demand for payment, notice of dishonor, protest, notice of nonpayment or protest, and diligence in collection; (b) except as expressly provided in the Note, the Mortgage and the other Loan Documents, waive any and all notices in connection with the delivery and acceptance of this Note, and all notices in connection with the performance, default, or enforcement of the payment of this Note; (c) waive any and all lack of diligence and delays in the enforcement of this Note; (d) agree that the liability of Borrower, each guarantor, endorser or obligor shall be unconditional and without regard to the liability of any other person or entity for the payment of this Note and shall not in any manner be affected by any indulgence or forbearance granted or consented to by the Lender to any of them with respect to this Note; (e) consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Lender with respect to the payment or other provisions of this Note and to the release of any security at any time given for the payment of this Note, or any part of this Note, with or without substitution, and to the release of any person or entity liable for the payment of this Note; (f) consent to the addition of any and all other makers, endorsers, guarantors and other obligors for the payment of this Note and to the acceptance of any and all other security for the payment of this Note and agree that the addition of any such makers, endorsers, guarantors or other obligors, or security shall not affect the liability of

10360342v2

EXHIBIT B

Borrower, any guarantor or any other person now or at any time liable for all or any part of the obligations evidenced by this Note; and (g) agree that the Lender, in order to enforce payment of this Note, shall not be required first to institute any suit or to exhaust any of its remedies against Borrower or any other person to become liable hereunder.

11.   **Security**.

This Note is secured by, among other things, the Mortgage and the other Loan Documents. It is expressly agreed that all of the covenants, conditions and agreements of Borrower under the Mortgage and the other Loan Documents are made a part of this Note and shall be included in the interpretation of this Note.

12.   **Event of Default**.

The Lender has the right to declare the total unpaid principal balance and all accrued but unpaid interest payable under this Note to be immediately due and payable upon the occurrence of an Event of Default under the Loan Agreement. Exercise of this right shall be without notice to Borrower, notice of such exercise being hereby expressly waived, unless such notice is otherwise required in the Loan Agreement. In addition to the right to declare the total unpaid principal balance and all accrued but unpaid interest payable under this Note to be due and payable in full in advance of the Maturity Date, upon the occurrence of an Event of Default, the Lender has and may exercise all other rights and remedies available by law, statute, agreement or in equity.

13.   **Cumulative Remedies**.

The remedies of the Lender under this Note are cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of the Lender, and may be exercised as often as occasion therefor may arise. No act of omission or commission of the Lender, including specifically any failure to exercise any right, remedy or recourse, shall be deemed to be a waiver or release of the same, such waiver or release to be effected only through a written instrument executed by the Lender, and then only to the extent specifically recited therein. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to any subsequent event.

14.   **Attorney's Fees**.

Should it become necessary to collect this Note through an attorney, Borrower shall pay all costs incurred by or accruing to the Lender in making such collection, including a reasonable attorney's fee. Reasonable attorney's fees shall include, without limitation, all fees incurred in all matters of collection and enforcement, construction and interpretation, before, during and after trial proceedings and appeals, as well as appearances in, and connected with, any bankruptcy proceeding or creditors' reorganization or similar proceeding.

15.   **Other Provisions**.

10360342v2

**EXHIBIT B**

15.1     Set Off.  The Lender has the right to set off any indebtedness or obligations of Borrower to Lender under this Note in accordance with the terms of the Loan Agreement.

15.2     Banking Days.  If any payment of principal or interest is due or the Maturity Date falls on a Saturday, Sunday or on any other day on which banks in Tampa, Florida are not open for business, then such payment shall be made on the immediately following Business Day.

15.3     Successors and Assigns.  This Note shall bind Borrower and its, his or her heirs, personal representatives, successors and permitted assigns, and the benefits of this Note shall inure to the benefit of the Lender and its successors and assigns, including any holder of this Note.  Notwithstanding the foregoing, Borrower shall not assign Borrower's rights or obligations under this Note without the Lender's prior written consent. All references in this Note to Borrower or the Lender include their respective successors and assigns.

15.4     Severability. In the event any provision of this Note is prohibited or invalid under applicable law, that provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of this Note.

16.     **Submission to Jurisdiction; Venue.**

The validity, construction, enforcement and interpretation of this Note shall be governed by the substantive laws of the State of Florida, without application of its conflicts of law principles, and the United States of America. Any action, suit or proceeding arising out of this Note shall be brought in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, or in the United States District Court for the Middle District of Florida, Tampa Division, and the Lender and Borrower irrevocably consent to and submit to the exclusive jurisdiction of those courts, and irrevocably waive any objection which the Lender and Borrower, respectively, now or hereafter may have to the institution of any such suit, action or proceeding in those courts, and further irrevocably waive any defense or claim that such suit, action or proceeding in any such court has been brought in an inconvenient forum or improper venue.

17.     **Compliance Agreement.**

For and in consideration of the funding or renewal of this Loan by the Lender evidenced by this Note, Borrower hereby agrees to cooperate and re-execute any and all loan documentation deemed necessary or desirable in the Lender's discretion, in order to correct or to adjust for any clerical errors or omissions contained in any document executed in connection with the Loan evidenced by this Note. The failure of Borrower to comply with this paragraph within ten (10) days from the date of written demand by the Lender shall constitute a default under this Note.

18.     **WAIVER OF JURY TRIAL.**

**BORROWER AND THE LENDER, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY**

EXHIBIT B

JURY IN RESPECT OF ANY LITIGATION BASED ON THIS NOTE, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS NOTE, OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), OR ACTIONS OF EITHER BORROWER OR THE LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER'S AND BORROWER'S ENTERING INTO THE LOAN EVIDENCED BY THIS NOTE. THIS PROVISION IS BINDING UPON AND ALSO APPLIES TO ANY HOLDER OF THE NOTE.

*[Signature on Following Page]*

10360342v2

Page 6 of 7

EXHIBIT B

IN WITNESS WHEREOF, the undersigned has caused this Renewal, Amended and Restated Promissory Note to be duly executed and delivered as of the day and year first above written.

WITNESSES:                                    BORROWER:

                                              DAVID B. HUNT

_Kath Dowd_
Print Name: KATHY DOWD                        By: _David B. Hu_

_Valrie Butler_
Print Name: VALRIE Butler

WITNESSES:                                    BORROWER:

                                              MELISSA D. HUNT

_Kath Dowd_
Print Name: KATHY DOWD                        By: _Melissa D Hunt_

_Valrie Butler_
Print Name: VALRIE BuHer

STATE OF Tennessee
COUNTY OF Madison

     The foregoing instrument was acknowledged before me this 23 day of July, 2018, by David B. Hunt and Melissa D. Hunt, who (check one) ☒ is personally known to me OR ☐ produced _____ as identification.

(NOTARY SEAL)                                 _Denise Norwalk_
                                              Notary Signature
                                              _Denise Norwalk_
                                              (Type, Stamp or Print Name)

                                              NOTARY PUBLIC
                                              In and for the State of Tennessee
                                              My Commission Expires: 4-21-21

10360342v2

Page 7 of 7

EXHIBIT B

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 25 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)*]

COURT:     CIRCUIT COURT OF CRAIGHEAD COUNTY

        Docket/Case Number:  16JCV-19-_____

CASE NAME:
PLAINTIFF/
PETITIONER:              DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
                        FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:          DAVID B. HUNT AND MELISSA B. HUNT, ET AL.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):         EXHIBIT C

*Administrative Order No 2.
     (g) *File Mark.* (1) There shall be a two inch (2″) top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).
     (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

ELECTRONIC RECORDING
**2018R-012873**
CERTIFICATE OF RECORD
JONESBORO DISTRICT
CRAIGHEAD COUNTY, ARKANSAS
CANDACE EDWARDS, CLERK & RECORDER
06/29/2018 11:24:31 AM
RECORDING FEE: 130.00
PAGES: 24

Prepared by and return to:

Navin R. Pasem, Esq.
3630 W. Kennedy Blvd.
Tampa, Florida 33609
18-074713
Lenders Title Company
2207 Fowler Avenue
Jonesboro, AR 72401

## MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND FIXTURE FILING

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND FIXTURE FILING ("Mortgage") is executed as of this 28 day of June, 2018, by DAVID B. HUNT and MELISSA D. HUNT, d/b/a Hunt Properties, a Tennessee General Partnership ("Mortgagor"), whose address is 34 Finnwick CV, Jackson, TN 38305, and the heirs, personal representatives, successors and assigns of Mortgagor, including all subsequent grantees, either voluntarily by act of the parties or involuntarily by operation of law, in favor of KIRAN REIF, LLC, a Florida limited liability company, its successors and/or assigns, as their interests may appear, whose address is 5600 Mariner Street, Suite 200, Tampa, Florida 33609 ("Mortgagee").

## WITNESSETH:

THAT for good and valuable consideration and also in consideration of the aggregate sum of money named in the Note (as hereinafter defined) of even date herewith, and such additional sums of money as shall be borrowed by Mortgagor from Mortgagee or expended by Mortgagee for the account of Mortgagor, and any extensions, renewals, modifications or amendments of same, and any indebtedness, liabilities, or obligations, now existing or hereinafter arising, due or to become due, absolute or contingent, of the Mortgagor to the Mortgagee, Mortgagor does hereby grant, bargain, lien, encumber, sell, alien, mortgage, remise, release, convey and confirm unto Mortgagee, in fee simple, the real estate of which Mortgagor is now seized and possessed and in actual possession, situate in Craighead County, Arkansas, and more particularly described in attached **Exhibit "A"** (the "Premises").

TOGETHER with (i) all buildings, structures and improvements of every nature whatsoever now and hereafter on said Premises, (ii) all insurance policies, leases, subleases and other agreements affecting the use, enjoyment or occupancy of the Premises heretofore or hereafter entered into and all accounts, rents, revenues, issues, profits and all proceeds from the sale or other disposition of such agreements accruing and to accrue from said Premises, (iii) all gas, steam, electric, water and other heating, cooking, refrigerating, lighting, plumbing, ventilating, irrigating and power systems, machines, building materials, appliances, furniture, equipment, goods, inventory, supplies, fixtures and appurtenances and personal property of every nature whatsoever, which now or may hereafter pertain to or be used with, in or on said Premises, even though they may be detached or detachable, (iv) all easements, rights-of-way, licenses, privileges, gores of land, streets, ways, alleys, passages, sewer rights, waters, water rights, permits, development rights and powers and all estates, rights, titles and interests in any way belonging, relating or appertaining to the Premises, (v) all Accounts, Goods, Chattel Paper, Deposit Accounts, Farm Products, Instruments, Documents, General Intangibles, Inventory,

1

EXHIBIT C

Consumer Goods, Equipment, Fixtures and Investment Property, as the foregoing terms are defined in the Uniform Commercial Code, (vi) all contract rights, franchises, books, records, plans, specifications, approvals and actions which now hereafter relate to, are derived from or are used in connection with the Premises, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon, (vii) all the tenements, hereditaments, appurtenances, reversions and remainders belonging or pertaining to the Premises, (viii) any and all judgments, awards, settlements, claims, demands, payments, proceeds or other income arising in connection with the Premises, (ix) any items described in that certain UCC-1 Financing Statement of even date herewith between Mortgagor and Mortgagee and (x) any extensions, additions, increases, substitutions, replacements, parts, accessions, improvements, betterments, proceeds, products and renewals to any of the aforesaid property, whether now existing or hereafter arising, all of the foregoing being included in the term "Premises," it being the intention of Mortgagor and Mortgagee that this Mortgage (which is to be filed for record in the real estate records of the county mentioned above) shall also constitute a security agreement and financing statement as to the Premises herein mortgaged under the Uniform Commercial Code, and that Mortgagee have all rights and remedies of a secured party thereunder.

TO HAVE AND TO HOLD the same, together with the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

AND Mortgagor does hereby covenant with Mortgagee that it is indefeasibly seized of said Premises in fee simple and is the record owner thereof; that it has full power and lawful right to convey said Premises in fee simple as aforesaid; that it shall be lawful for Mortgagee at all times peaceably and quietly to enter upon, hold, occupy and enjoy said Premises; that said Premises are free from all encumbrances; that Mortgagor will make such further assurances to protect the fee simple title to said Premises in Mortgagee as may reasonably be required; and that Mortgagor does hereby warrant the title to said Premises and will defend the same against the lawful claims of all persons whomsoever.

PROVIDED, ALWAYS, that if Mortgagor shall pay unto Mortgagee all amounts due under that certain Promissory Note dated as of the date hereof (the "Note") from Mortgagor to Mortgagee in the original principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) (the "Loan") and shall promptly perform, comply with and abide by each and every stipulation, agreement, condition and covenant of said Note and of this Mortgage, then the estate hereby created shall cease and be null and void.

AND, Mortgagor does hereby covenant and agree as follows:

1.      <u>Payment of Indebtedness and Performance of Obligations</u>. Certain documents and instruments other than the Note and Mortgage have been executed or are to be executed from time to time evidencing, securing or otherwise relating to the Loan (collectively, the "<u>Other Loan Documents</u>"). The Note, Mortgage and Other Loan Documents are sometimes collectively referred to herein as the "<u>Loan Documents</u>." Mortgagor shall pay all and singular the principal and interest and other sums of money payable by virtue of the Note and this Mortgage, or either, promptly on the days the same come due and shall perform, comply with and abide by each and

2

EXHIBIT C

every stipulation, agreement, condition and covenant in the Note, this Mortgage and the Other Loan Documents and any extensions, renewals, modifications or amendments of the foregoing described documents given by Mortgagor in connection herewith, all of which are secured by this Mortgage, including, but not limited to, all costs and expenses paid by Mortgagee in connection with the Mortgage and under any of the other Loan Documents.

2.    Taxes.

(a)    Mortgagor shall pay all and singular the taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on the Premises when due and payable according to law before they become delinquent; and if the same shall not be promptly paid, then Mortgagee may, at any time, either before or after delinquency, pay, compromise, purchase, discharge or settle the same, or redeem the same from any tax or assessment, without waiving or affecting its rights hereunder.

(b)    Mortgagor shall deliver to Mortgagee, on or before March 15th of each year, tax receipts evidencing the payment of all taxes for the preceding calendar year, shall deliver to Mortgagee receipts evidencing the payment of all liens for public improvements within ninety (90) days after the same shall become due and payable, and shall pay or discharge within ninety (90) days after the due date any and all governmental levies that may be made on the Premises or this Mortgage or the Note, or in any other way resulting from the indebtedness secured by this Mortgage; and if this condition be not complied with and performed, then Mortgagee may, but need not, pay such sum or sums without waiving or affecting its rights hereunder.

3.    Insurance.

(a)    Mortgagor shall at its sole expense obtain for delivery to, and maintain for the benefit of, Mortgagor during the life of the Mortgage, in form and substance and from an insurer acceptable to Mortgagee in Mortgagee's sole discretion, public liability insurance, hazard, wind, flood, worker's compensation insurance and builder's risk insurance, as appropriate, in such amounts and for such periods as Mortgagee may require. Mortgagor shall pay promptly, when due, any premiums on the insurance policies and renewals and provide Mortgagee a receipt evidencing same. Mortgagor shall keep the buildings and all equipment and personal property now or hereafter on the Premises fully insured in an amount at least equal to the full cash value thereof, but in no event less than the unpaid balance of the Note secured by this Mortgage, including both fire and extended coverage insurance. Where appropriate, said policy or policies shall be held by Mortgagee and shall bear a Standard New York Mortgagee Clause without contribution, making the loss under said policy or policies payable to Mortgagee as its interest may appear and shall provide for thirty (30) days notice of cancellation and such other terms required by Mortgagee; and in the event any sum of money becomes payable under any such policy or policies, Mortgagee shall have the option to receive and apply the same on account of the indebtedness hereby secured, or to permit Mortgagor to receive and use said sum, or any part thereof, for other purposes without thereby waiving or impairing any equity, lien or right under and by virtue of this Mortgage; and in the event Mortgagor does not comply with this covenant,

3

EXHIBIT C

Mortgagee may place and pay for such insurance or any part thereof without waiving or affecting the option to foreclose, or any other right thereunder.

(b)    Provided that the same is available, Mortgagor, at its expense and if required by Mortgagee, shall carry flood insurance for the maximum amount available or the amount secured by this Mortgage, whichever is less, pursuant to the Flood Disaster Protection Act of 1973 or any subsequent legislation, and in the event that Mortgagee shall require flood insurance, the payment of premiums for such insurance and the application of any proceeds therefrom shall be governed by the provisions of paragraph 3(a) of this Mortgage and other applicable provisions hereof.

4.    Reserve for Taxes and Insurance. In order to provide for the payment of taxes, assessments, insurance premiums (including flood insurance) and other annual charges on the Premises, Mortgagor, upon the occurrence of an event of default under any of the Note, Mortgage or Other Loan Documents and upon Mortgagee's written request, will pay monthly to Mortgagee, in addition to the other payments provided herein, a sum estimated to be equivalent to one twelfth (1/12th) of such items, which payment may be held by Mortgagee and commingled with other funds or its own funds without interest for the payment of such items. If the amount estimated to be sufficient to pay said items is not sufficient, then Mortgagor will pay the difference upon demand. The provisions of this paragraph are solely for the added protection of Mortgagee and entail no responsibility on Mortgagee's part beyond the allowance of due credit, without interest, for sums actually received by it. Upon the occurrence of a default under this Mortgage, Mortgagee may apply all or any part of the accumulated funds then held upon any obligation secured hereby.

5.    Use, Preservation and Maintenance of Property.

(a) Mortgagor shall permit, commit or suffer no waste, impairment or deterioration of the Premises, or any part thereof, and upon the failure of Mortgagor to keep the Premises in good condition of repair, Mortgagee may demand the immediate repair of said Premises or increase in the amount of security. Mortgagor shall permit no exploration for, nor mining or other means of production of minerals or other natural resources from the Premises. Mortgagor shall promptly comply with all laws, regulations and requirements of all governmental bodies affecting the Premises, including, but not limited to, full compliance with the Americans With Disabilities Act of July 26, 1990, 42 U.S.C. Section 12191, et seq., as amended from time to time, and all regulations promulgated pursuant thereto. Mortgagor shall not construct or permit the construction of any improvements to the Premises without Mortgagee's prior written consent.

(b) Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Premises or any part thereof, nor shall Mortgagor initiate, join in, acquiesce in, or consent to any zoning change or zoning matter affecting the Premises. If under applicable zoning provisions, the use of all or any portion of the Premises are or shall become a nonconforming use, then Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of

4

EXHIBIT C

Mortgagee. Mortgagor shall not permit or suffer to occur any waste on or to the Premises or to any portion thereof and shall not take any steps whatsoever to convert the Premises, or any portion thereof, to a condominium or cooperative form of management. Mortgagor will not install or permit to be installed on the Premises any underground storage tank or above-ground storage tank without the written consent of Mortgagee.

6.    Transfer of Property or Beneficial Interest in Mortgagor.

(a)    Upon any sale or conveyance of all or any part of the Premises or any of its interest therein, all amounts due and payable in connection with the Note shall be immediately due and payable in full. A contract for deed or agreement for deed shall constitute a sale or conveyance pursuant to this paragraph. Mortgagor shall not further encumber the Premises or permit any other mortgages to be filed against the Premises. This Mortgage and the Note are not assumable.

(b)    Mortgagor shall not do or permit any of the following:

(i)    transfer, directly or indirectly, in the aggregate, any equity interest in Mortgagor, outstanding as of the date hereof, or

(ii)    issue or agree to issue any additional equity interest of Mortgagor, after the date hereof.

7.    Inspection.  Mortgagee or its agents shall have the right to enter upon and inspect the Premises. Mortgagee shall give Mortgagor notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

8.    Subrogation. To the extent of the indebtedness secured hereby, Mortgagee is hereby subrogated to the lien or liens, and to the rights of the owners and holders thereof, of each and every mortgage lien or other encumbrance on the Premises which is paid and/or satisfied in whole or in part out of the proceeds of the Loan secured hereby, and the respective liens of said mortgages, liens or other encumbrances shall be, and the same and each of them hereby is, preserved and shall pass to and be held by Mortgagee herein as security for the indebtedness hereby secured, to the same extent that it would have been preserved and would have been passed to and been held by Mortgagee had it been duly and regularly assigned, transferred, set over and delivered unto Mortgagee by separate deed of assignment.

9.    Condemnation.  In the event the Premises, or any part thereof, shall be condemned and taken for public use under the power of eminent domain, Mortgagee shall have the right to demand that all damages awarded for the taking of, or damages to, said Premises, shall be paid to Mortgagee, up to the amount then unpaid on this Mortgage, and, at the option of Mortgagee, the same may be applied upon the payments last payable thereon.

10.    Events of Default and Remedies.

5

Craighead County, AR          Document # 2018R-012873          Page 5 of 24

EXHIBIT C

(a)     Mortgagor acknowledges that (i) if it should fail to pay any sums of money under this Mortgage, the Note or the Other Loan Documents within ten (10) days of the date such amounts become due and payable, or (ii) if it should fail to perform or satisfy any stipulation, agreement or condition of this Mortgage, the Note or the Other Loan Documents to be performed or satisfied by it other than with regard to the payment of money and such failure is not cured within thirty (30) days after Mortgagee provides written notice of such failure to Mortgagor (provided, however, that in the event the failure is not capable of cure within such thirty (30) day period, Mortgagor is diligently pursuing said cure and cures such failure within sixty (60) days from the date of Mortgagee's written notice), or (iii) if any representation or warranty made in this Mortgage, the Note or the Other Loan Documents by or on behalf of Mortgagor or any guarantor (collectively, the "Guarantors," or each individually, a "Guarantor") is at any time false, misleading or breached, or (iv) if any mortgage or lien of any nature, superior or inferior to this Mortgage, should be filed and recorded against the Premises or should have been in default, whether or not foreclosure proceedings should be instituted, or (v) if the value of the Premises should be impaired or Mortgagor's ability to pay the indebtedness secured hereby should be so diminished that Mortgagee should deem itself insecure, or if the Mortgagee should determine that a material adverse change has occurred in the financial condition of Mortgagor or any Guarantor from the conditions set forth in the most recent financial statement of Mortgagor or any Guarantor, heretofore furnished to Mortgagee, or from the condition of Mortgagor or any Guarantor as heretofore most recently disclosed to Mortgagee, or (vi) if Mortgagor or any Guarantor of the indebtedness secured by this Mortgage shall take any action pursuant to the Federal Bankruptcy Code or any reorganization, arrangement, readjustment of debt, dissolution or liquidation law or any similar law, federal or state, or if an order for relief with respect to Mortgagor or any Guarantor shall be entered, or if Mortgagor or any Guarantor shall be adjudicated bankrupt, or be declared insolvent, or if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors, or shall petition or apply to any tribunal for the appointment of, or consent to the appointment of, a custodian, receiver, liquidator or trustee of Mortgagor or any Guarantor or of all or any part of the Premises, or if Mortgagor shall acquiesce in any petition filed against Mortgagor or any Guarantor under the Federal Bankruptcy Code, or if Mortgagor or any Guarantor shall take any action for the purpose of effecting any of the foregoing, or (vii) if any Guarantor, Mortgagor or any general partner of Mortgagor, if Mortgagor is a limited partnership, or any partner of Mortgagor, if Mortgagor is a general partnership, or any member of Mortgagor, if Mortgagor is a limited liability company, dies or is declared incompetent or any suspension or discontinuance of Mortgagor's or any Guarantor's business as a going concern (unless, with respect to any Guarantor, a substitute guarantor acceptable to Lender shall guaranty the Loan in a manner and form acceptable to Lender, in its sole and absolute discretion, within ninety (90) days of such death or incapacity), or (viii) if any of the creditors of Mortgagor or any Guarantor shall take any action against Mortgagor pursuant to the Federal Bankruptcy Code or any reorganization, arrangement, readjustment of debt, dissolution, or liquidation law or any similar law, federal or state, or if an order for relief with respect to Mortgagor or any Guarantor shall be entered in an involuntary case under the Federal Bankruptcy Code, or if any such creditor shall petition or apply to any tribunal for the appointment of a custodian, receiver, liquidator or trustee of Mortgagor or any Guarantor or of all or any part of the Premises, and if such action, petition or order shall not be discharged or dismissed within thirty (30) days after the date on which such action or petition was commenced or such order is entered, or (ix) if final judgment for the payment of money shall be rendered

6

EXHIBIT C

against Mortgagor or any Guarantor, and Mortgagor or any Guarantor shall not discharge the same or cause it to be discharged within sixty (60) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which such judgment was granted, based or entered, and secure a stay of execution pending such appeal, or (x) if an event of default shall occur under the Loan Agreement of even date between Mortgagor and Mortgagee, Mortgagor shall be in default and Mortgagee shall have the right, but not the obligation, to pursue all its rights and remedies under the laws of the State of Florida, including, without limitation, the right to declare all sums due and payable under the Note and this Mortgage to be immediately due and payable, anything in the Note or herein to the contrary notwithstanding.

(b)     Mortgagor shall pay all costs, charges and expenses, including attorneys' fees for pre-litigation, all litigation and any and all appeals therefrom, reasonably incurred or paid at any time by Mortgagee because of the failure of Mortgagor to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Note, this Mortgage or the Other Loan Documents, and every such payment shall bear interest from the date of payment at the highest legal rate assessable under the Note.

(c)     Should Mortgagor be in default hereunder, Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of all and singular the Premises, and all of the rents, incomes, profits, issues and revenues thereof, from whatsoever source derived; and thereupon it is hereby expressly covenanted and agreed that the court shall forthwith appoint a receiver of said mortgaged property, all and singular, and of such rents, incomes, profits, issues and revenues thereof, from whatsoever source derived, with the usual powers and duties of receivers in like cases, and such appointment shall be made by such court as a matter of strict right to Mortgagee, its successors, legal representatives or assigns, and without reference to the adequacy or inadequacy of the value of the Premises or to the solvency or insolvency of Mortgagor, and that such rents, profits, incomes, issues and revenues shall be applied by such receiver to the payment of the mortgage indebtedness, costs and charges, according to the order of such court.

(d)     Should Mortgagor be in default hereunder, Mortgagee shall have the right, without notice to Mortgagor, to collect and receive from any tenant of any portion of the Premises the rents, issues and profits of such demised premises and to give proper receipts and acquittances therefor, after paying all commissions of any rental agent collecting the same, and any reasonable attorneys' fees and other necessary expenses incurred in collecting same, and to apply the proceeds of such collection upon any indebtedness, obligation or liability of Mortgagor hereunder.

(e)     The rights, options, powers and remedies provided to Mortgagee shall be cumulative, and no one or more of them shall be exclusive of the other or others, or of any right or remedy now or hereafter given or allowed by law, including, without limitation, all rights under Chapter 697.07, Florida Statutes, regarding assignment of rents, and all rights under Chapter 702, Florida Statutes, regarding foreclosure actions.

7

EXHIBIT C

(f)    The proceeds of any sale of all or any portion of the Premises shall be applied by Mortgagee first, to the extent of receiver's fees and expenses, if any, and to the payment of all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Mortgagee, together with interest thereon at the default rate of interest prescribed under the Note, in connection with any entry, action or proceeding under this Mortgage, and second, in such order as Mortgagee may elect, to payment of other amounts secured by this Mortgage and the other Loan Documents. Mortgagor shall be and remain liable to Mortgagee for any difference between the net proceeds of the sale and the amount of the secured indebtedness until all such indebtedness has been paid in full.

(g)    If Mortgagee shall have proceeded to enforce any right under any Loan Documents and such proceedings shall have been discontinued or abandoned for any reason, then except as may be provided in any written agreement between Mortgagor and Mortgagee providing for the discontinuance or abandonment of such proceedings, Mortgagor and Mortgagee shall be restored to their former positions and the rights, remedies and powers of Mortgagee shall continue as if no such proceedings had been instituted.

11.    Further Assurances.   Mortgagor shall do, execute, acknowledge, and deliver, at the cost of Mortgagor and without expense to Mortgagee, all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto Mortgagee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention of facilitating the performance of the terms of this Mortgage or for the filing, registering, or recording this Mortgage and, on written demand, will execute and deliver to Mortgagee one or more financing statements or comparable security instruments, to evidence more effectively the lien hereof upon the mixed or personal property; and upon Mortgagor's failure, refusal or neglect to do so after written demand, Mortgagee shall have the right to execute any such documents in the name of Mortgagor.

12.    Indemnification.   Mortgagor shall protect, indemnify and save harmless Mortgagee from and against all liabilities, claims, judgments, damages, penalties, causes of action, costs and expenses (including, without limitation, attorneys' fees and expenses, including those incurred in connection with appellate, bankruptcy and post-judgment proceedings) imposed upon or incurred by or asserted against Mortgagee by reason of: (a) ownership of this Mortgage, the Premises or any interest therein or receipt of any rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas or streets; (c) any use, non-use or condition in, on or about the Premises or any part thereof or on ·the adjoining sidewalks, curbs, adjacent property, parking areas or streets; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; or (e) the performance of any labor or services or the furnishing of any materials or other property in respect of the Premises or any part thereof. Any amounts payable to Mortgagee by reason of the application of this paragraph shall become immediately due and payable upon demand by Mortgagee. The obligations of Mortgagor under this paragraph shall survive any termination or

8

EXHIBIT C

satisfaction of this Mortgage. The provisions of this paragraph shall not apply to any obligation, claim, judgment, damage, penalty or cause of action caused by the gross negligence or willful malfeasance of Mortgagee.

13.    Assignment of Additional Collateral.

(a)    Mortgagor hereby assigns to Mortgagee, the following items, which are sometimes hereinafter collectively referred to as the "Additional Collateral": All licenses, permits, approvals, certificates and agreements with or from all boards, agencies, departments, governmental or otherwise, relating directly or indirectly to the ownership, use, operation and maintenance of the Premises, or the construction of improvements on the Premises, whether heretofore or hereafter issued or executed (collectively, the "Licenses"), said boards, agencies, departments, governmental or otherwise, being hereinafter collectively referred to as the "Governmental Authorities"; all contracts and agreements (including, but not limited to, contracts or agreements with contractors, architects, engineers, surveyors, other design professionals and other consultants), subcontracts, agreements with utility companies (public or private), service agreements, franchise agreements, surveys, plats, site plans, soil reports, wetlands reports, environmental studies, architectural or land planner renderings, plans and specifications, shop drawings, floor plans, brochures, advertising materials, warranties, guaranties and purchase orders which have heretofore been or will hereafter be executed by or on behalf of Mortgagor, or which have been assigned to Mortgagor, in connection with the use, operation and maintenance of the Premises, or the construction of development improvements on the Premises (collectively, the "Contracts"), and the parties with whom or to whom such Contracts have been or are given are hereinafter collectively referred to as the "Contractors"; and all leases, contracts and agreements which have heretofore been or will hereafter be executed by or on behalf of Mortgagor in connection with the lease or sale of any portion of the Premises (collectively, the "Sales Agreement"), and the parties with whom or to whom the Sales Agreements have been or are given are hereinafter collectively referred to as the "Purchasers."

(b)    Mortgagor hereby assigns, transfers and sets over unto Mortgagee all of Mortgagor's right, title and interest in and to the Additional Collateral and all of the rights and benefits therefrom as security for the payment of the indebtedness secured hereby and any and all future indebtedness of Mortgagor to Mortgagee secured by this Mortgage and any and all future advance agreements made pursuant hereto. Until the occurrence of an event of default hereunder and/or any such future advance agreement(s), Mortgagor may retain, use and enjoy the benefits of the Additional Collateral. After the occurrence of an event of default, Mortgagee may enforce this assignment. The affidavit or written statement of an officer, agent or attorney of Mortgagee stating that there has been a default shall constitute conclusive evidence thereof, and any of the Governmental Authorities, Contractors or Purchasers or any other person is authorized and directed to rely thereon.

(c)    Mortgagor agrees to faithfully observe and perform all of the obligations and agreements imposed upon Mortgagor under the Additional Collateral. From and after the date hereof, the Sales Agreements, Contracts and Licenses may not be altered, amended or cancelled, and no new Contracts or Sales Agreements may be entered into except in accordance with the Loan Agreement of even date between Mortgagor and Mortgagee. Mortgagee shall not

9

EXHIBIT C

be deemed in any manner to have assumed any of the Additional Collateral, nor shall Mortgagee be liable to Purchasers, Governmental Authorities or Contractors by reason of any default by any party under the Sales Agreements, Licenses or Contracts.

(d)     Mortgagor agrees to indemnify and hold Mortgagee harmless of and from any liability, loss or damage which Mortgagee may incur by reason of any claims or demands against it, based on its alleged assumption of Mortgagor's duties and obligations to perform and discharge the terms, covenants and agreements in the Sales Agreements, Licenses and Contracts, unless Mortgagee has assumed such Sales Agreements, Licenses and Contracts in writing.

(e)     After the occurrence of an event of default, Mortgagee may, in its sole discretion, elect to exercise any and all of Mortgagor's rights and remedies under the Additional Collateral without any interference and objection from Mortgagor, and Mortgagor shall cooperate in causing the Contractors and Purchasers to comply with all the terms and conditions of the Contracts and Sales Agreements. In no event shall Mortgagee be obligated to exercise any or all of such rights and remedies of Mortgagor. If, and to the extent permitted by law and the terms of the Additional Collateral, Mortgagee may, with or without entry upon the Premises, at its option, take over and enjoy the benefits of the Licenses, exercise Mortgagor's rights under the Additional Collateral, and perform all acts in the same manner and to the same extent as Mortgagor may do. In connection with the foregoing powers, and without limiting the same, Mortgagee may effect new Sales Agreements, Contracts and Licenses, cancel or surrender existing Sales Agreements, Contracts or Licenses, alter or amend the terms of and renew existing Sales Agreements, Contracts and Licenses, and make concessions to Purchasers, Governmental Authorities and Contractors in accordance with Florida law. Mortgagor hereby releases any and all claims which it has or may have against Mortgagee arising out of such performance by Mortgagee.

(f)     All of the foregoing powers herein granted to Mortgagee shall be liberally construed. Mortgagee need not expend its own funds in the exercise of such powers, but if it does, such amounts shall be considered as advances for and on behalf of Mortgagor secured by this Mortgage and also evidenced and secured by the Note and the other Loan Documents given in connection herewith and also secured by any and all future advance agreement(s) made pursuant to this Mortgage and any and all note(s) executed and delivered in connection therewith. Any amounts so advanced shall bear interest at the then current rate prescribed in the Note or promissory note(s) executed and delivered in connection with any future advance agreement made hereto.

(g)     Mortgagor shall, upon request of Mortgagee, furnish Mortgagee a complete list of all Sales Agreements, Contracts and Licenses. Further, if requested, Mortgagor shall deliver to Mortgagee executed or certified copies of all Sales Agreements, Contracts, Licenses and other written agreements, correspondence and memoranda between Mortgagor (and its predecessors in title) and Purchasers, Contractors and Governmental Authorities, setting forth the contractual and other arrangements between them.

(h)     Nothing herein contained shall be construed as making Mortgagee a mortgagee in possession, or as constituting a waiver or suspension by Mortgagee of its rights to

10

EXHIBIT C

enforce payment of the debts under the terms hereof, the Note, or the Other Loan Documents. Mortgagee is not the agent, partner or joint venturer of Mortgagor or of any of the Purchasers, Contractors or Governmental Authorities.

14.   Assignment of Rents and Leases.

(a)   Mortgagor hereby irrevocably, absolutely and unconditionally transfers, sells, assigns and conveys to Mortgagee, its successors and assigns, all of the right, title and interest of Mortgagor in and to (i) any and all leases, licenses, rental agreements and occupancy agreements of whatever form now or hereafter affecting all or any part of the Premises and any and all guarantees, extensions, renewals, replacements and modifications thereof (collectively, the "Leases") and (ii) all issues, profits, security or other deposits, prepaid rent, revenues, royalties, accounts, proceeds and other benefits of the Premises, whether now due, past due or to become due (collectively, the "Rents"). This assignment of Leases and Rents is an absolute assignment and not an assignment for security only. Notwithstanding that this assignment is a present, absolute and executed assignment of the Leases and Rents in favor of Mortgagee, Mortgagor is hereby permitted, at the sufferance of Mortgagee and at its discretion, and is hereby granted a license by Mortgagee, to retain possession of the Leases and to collect and retain the Rents unless and until there shall be an event of default (as set forth in paragraph 10). Upon an event of default hereunder, the aforementioned license granted to Mortgagor shall automatically terminate, without notice to Mortgagor, and Mortgagee may thereafter, without taking possession of the Premises, take possession of the Leases and collect the Rents. Further, from and after such termination, Mortgagor shall be the agent of Mortgagee in collection of the Rents, and any Rents so collected by Mortgagor shall be held in trust by Mortgagor for the sole and exclusive benefit of Mortgagee and Mortgagor shall, within five (5) business days after receipt of any Rents, pay the same to Mortgagee to be applied by Mortgagee as provided for in this paragraph. Mortgagee may apply such Rents to the payment of (i) all expenses of managing the Premises, including, but not limited to, the salaries, fees and wages of a managing agent and such other employees as Mortgagee may deem necessary or desirable and all expenses of operating and maintaining the Premises, including, but not limited to, all taxes, charges, claims, assessments, water rents, sewer rents and any other liens and premiums for insurance which Mortgagee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Premises which Mortgagee may deem necessary or desirable, and (ii) the indebtedness evidenced by the Note and secured hereby together with all costs, attorneys' fees and paralegals' fees, in such order of priority as Mortgagee, in its sole discretion, may determine, notwithstanding any statute, law, custom or usage to the contrary.

(b)   This assignment shall not operate to place responsibility for the control, care, management or repair of the Premises upon Mortgagee, nor for the performance of any of the terms and conditions of any of the Leases, nor shall it operate to make Mortgagee responsible or liable for any waste committed on the Premises by any tenant or any other party or for any dangerous or defective condition of the Premises or for any negligence in the management, upkeep, repair or control of the Premises. Mortgagee shall not be liable for any loss sustained by Mortgagor resulting from Mortgagee's failure to let the Premises or from any other act or omission of Mortgagee in managing the Premises. Mortgagor shall and does hereby indemnify

11

EXHIBIT C

and hold Mortgagee harmless from and against any and all liability, loss, claim, demand or damage which may or might be incurred by reason of this assignment, including, without limitation, claims or demands for security deposits from tenants deposited with Mortgagor, and from and against any and all claims and demands whatsoever which may be asserted against Mortgagee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in any of the Leases. Should Mortgagee incur any liability by reason of this assignment or in defense of any claim or demand for loss or damage as provided above, the amount thereof, including, without limitation, costs, expenses and attorney's fees, together with interest thereof at the default rate prescribed under the Note from the date paid or incurred by Mortgagee until repaid by Mortgagor, shall be immediately due and payable to Mortgagee by Mortgagor upon demand and shall be secured by this Mortgage and any and all of the other Loan Documents.

(c)     This assignment shall not be construed as making Mortgagee a mortgagee in possession.

(d)     Mortgagee is obligated to account to Mortgagor only for such Rents as are actually collected or received by Mortgagee.

(e)     Mortgagor represents, warrants and covenants to and for the benefit of Mortgagee: (i) that Mortgagor now is (or with respect to any Leases not yet in existence, will be immediately upon the execution thereof) the absolute owner of the landlord's interest in the Leases, with full right and title to assign the same and the Rents due or to become due thereunder; (ii) that, other than this assignment, there are no other outstanding assignments of the Leases or Rents; (iii) that no Rents have been anticipated, discounted, released, waived, compromised or otherwise discharged except for prepayment of rent of not more than one (1) month prior to the accrual thereof; (iv) that there are no material defaults now existing under any of the Leases by the landlord or any tenant, and there exists no state of facts which, with the giving of notice or lapse of time or both, would constitute a default under any of the Leases by the landlord or any tenant; (v) that Mortgagor has and shall duly and punctually observe and perform all covenants and conditions and agreements in the Leases on the part of the landlord to be observed and performed thereunder; (vi) the Leases are in full force and effect and are the valid and binding obligations of Mortgagor, and, to the knowledge of Mortgagor, are the valid and binding obligation of each tenant thereto; and (vii) that Mortgagor shall furnish the Mortgagee, within ten (10) days after execution, a copy of all new Leases for the Premises.

(f)     Mortgagor covenants and agrees that Mortgagor shall, at its sole cost and expense, appear in and defend any action or proceeding arising under, growing out of, or in any manner connected with the Leases or the obligations, duties or liabilities of the landlord or any tenant thereunder, and shall pay on demand all costs and expenses, including, without limitation, attorney's fees, which Mortgagee may incur in connection with Mortgagee's appearance, voluntary or otherwise, in any such action or proceeding, together with interest thereon at the default rate prescribed under the Note from the date incurred by Mortgagee until repaid by Mortgagor.

12

EXHIBIT C

(g)     At any time, Mortgagee may, at its option, notify any tenant or other parties of the existence of this assignment. Mortgagor does hereby specifically authorize, instruct and direct each and every present and future tenant, lessee and licensee of the whole or any part of the Premises to pay all unpaid and future Rents to Mortgagee upon receipt of same from Mortgagee to so pay the same, and Mortgagor hereby agrees that each such present and future tenant lessee and licensee may rely upon such written demand from Mortgagee to so pay said Rents without any inquiry into whether there exists an event of default hereunder or under any of the other Loan Documents or whether Mortgagee is otherwise entitled to said Rents. Mortgagor hereby waives any right, claim or demand which Mortgagor may now or hereafter have against any present or future tenant, lessee or licensee by reason of such payment of Rents to Mortgagee, and any such payment shall discharge such tenant's, lessee's, or licensee's obligation to make such payment to Mortgagor.

(h)     Mortgagee is hereby vested with full power to use all measures, legal and equitable, and to take any action deemed by it necessary or proper to enforce this assignment and collect the Rents assigned hereunder, including the right (but not the obligation) to enter upon the Premises and take possession thereof forthwith to the extent necessary to effect the cure of any default on the part of the Mortgagor as lessor under the Leases.

(i)     Nothing contained herein shall impair or affect any right or remedy which Mortgagee might now or hereafter have, but the remedies provided herein shall be in addition to any others which the Mortgagee may have hereunder or under Florida law, including, without limitation, the right to seek sequestration of rents under Florida Statutes, Section 697.07. Exercise by the Mortgagee of the options granted by this assignment, and the collection of Rents and the application thereof as herein provided, shall not be considered a waiver of any default by the Mortgagor hereunder or under the Loan Documents.

15.     Bankruptcy. Mortgagor hereby agrees that in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mortgagor does agree that in the event Mortgagor or any partner or member of Mortgagor shall (a) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended; (b) be the subject of any order for relief issued under such Title 11 of the U.S. Code, as amended; (c) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or other relief for debtors; (d) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator or liquidator; or (e) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or relief for debtors, then and in any of such events Mortgagee shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or otherwise, on or against the exercise of the rights and remedies otherwise available to Mortgagee as provided in this Mortgage, any note evidencing the subject indebtedness, or any other documents or instruments executed in connection therewith, and as otherwise provided by law. Mortgagor

13

EXHIBIT C

hereby agrees not to object to Mortgagee immediately seeking relief from the automatic stay, to allow Mortgagee to proceed immediately to obtain a final judgment of foreclosure of this Mortgage, to complete a foreclosure sale and/or to proceed against and realize upon the collateral for the indebtedness secured hereby and to otherwise allow Mortgagee to take all such actions as Mortgagee may elect in its sole discretion in pursuance of the other rights and remedies available in the event of a default by Mortgagor under this Mortgage and all other Loan Documents. Mortgagor hereby waives any protection afforded under 11 U.S.C. Section 362(a).

16. Financial Information. Mortgagor shall provide to Mortgagee, and shall cause each Guarantor to provide to Mortgagee, all of the financial information required by the Loan Agreement of even date herewith by and between Mortgagor and Mortgagee.

17. Intentionally Deleted.

18. Environmental Matters. Mortgagor expressly represents, covenants and warrants to Mortgagee that there is not present on the Premises and the improvements thereof do not contain any pollutants, hazardous wastes or hazardous substances (including asbestos), other than as may have been disclosed to and approved in writing by the United States Environmental Protection Agency and any state regulatory body with jurisdiction thereover and that the Premises are not now being used and will not, in the future, be used for the handling, storage, treatment, transportation or disposal of pollutants, hazardous wastes or hazardous substances. Mortgagor agrees to indemnify, defend and hold Mortgagee harmless from and against any loss to Mortgagee, including, without limitation, attorneys' fees (including appellate), incurred by Mortgagee as a result of such presence or content or the present or future use, handling, storage, transportation, treatment or disposal of pollutants, hazardous wastes or hazardous substances, including asbestos. In the event of a violation of the covenant and warranty in this paragraph, Mortgagee may, at its sole discretion, either declare an event of default hereunder or require Mortgagor to take action, or expend monies on Mortgagor's behalf, to correct such violation and to rectify all adverse consequences of such violation. In the event Mortgagee elects to expend monies to correct any such violation, such monies shall be deemed proceeds of the Loan secured by this Mortgage, shall be so secured and shall be repaid and bear interest as provided in the Note. Any such action taken by Mortgagee shall not constitute a waiver of any claim that Mortgagee has under law for any loss incurred by Mortgagee as a result of such violation.

19. Notice. Any notice to Mortgagor provided for in this Mortgage shall be given by delivering it or by mailing it by first-class mail unless applicable law requires use of another method. The notice shall be directed to Mortgagor's address set forth on page one of this Mortgage or any other address Mortgagor designates by notice to Mortgagee. Any notice to Mortgagee shall be given by first-class mail to Mortgagee's address set forth on page one of this Mortgage, or any other address Mortgagee designates by notice to Mortgagor. Any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee when given as provided in this paragraph. Each party may change the address to which any such notice is to be delivered or mailed by furnishing written notice of such change to the other party, but no such notice of change shall be effective unless and until received by such other party.

14

EXHIBIT C

20.     Forbearance by Mortgagee Not a Waiver.  Any waiver of any payment under the Note or Mortgage at any time shall not, at any other time, constitute a waiver of the terms of the Note or Mortgage, and the acceptance of late payments under the Note shall not constitute a waiver of the option of Mortgagee to accelerate the indebtedness as provided for herein.

21.     Remedial Advances.  If Mortgagor defaults in the observance or performance of any of the provisions of this Mortgage, or the other Loan Documents, or both, then Mortgagee, without waiving or otherwise impairing any other right or remedy of Mortgagee, at its sole option and without obligation to do so, may make any such payment or take such action as Mortgagee deems necessary or appropriate to correct such default, or to protect the security of this Mortgage, or the other Loan Documents, or both. All payments made by Mortgagee pursuant to the terms of this Mortgage or the other Loan Documents so made, together with all costs and expenses so incurred, will be added to the principal amount due under the Note and thereafter will bear interest at the highest rate provided for in the Note and will be secured by the lien and security interest granted by this Mortgage and by the other Loan Documents. Such sum(s) shall be paid by Mortgagor immediately upon demand by Mortgagee.

22.     Other Lienholders.  Any person or entity taking a junior mortgage, or other lien upon the Premises or any part thereof or any interest therein, shall take said lien subject to the rights of Mortgagee to amend, modify, extend, renew or release the Note, this Mortgage or any other document or instrument evidencing, securing or guaranteeing the Note, in each and every case without obtaining the consent of the holder of such junior lien and without the lien of this Mortgage losing its priority over the rights of any such junior lien.

23.     Taxation.

(a)     If any law is amended, enacted or adopted after the date of this Mortgage which deducts the Note from the value of the Premises for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Note or Mortgagee's interest in the Premises, then Mortgagor will pay such tax, with interest and penalties thereon, if any. In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then, in any such event, Mortgagee shall have the option, by written notice of not less than forty-five (45) days, to declare the Note immediately due and payable.

(b)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, then Mortgagor will pay for the same, with interest and penalties thereon, if any. Mortgagor hereby agrees that, in the event that it is determined that additional documentary stamp tax or intangible tax is due hereon or on any mortgage or promissory note executed in connection herewith (including, without limitation, the Note), Mortgagor shall indemnify and hold harmless Mortgagee for all such documentary stamp tax and/or intangible tax, including all penalties and interest assessed or charged in connection therewith. Mortgagor shall pay the same within ten (10) days after demand of payment from

15

EXHIBIT C

Mortgagee, and the payment of such sums shall be secured by this Mortgage and such sums shall bear interest at the default rate (as defined in the Note) until paid in full.

24.  Rights of Mortgagee, Actions of Mortgagee and Waivers by Mortgagor.

(a)  Mortgagee may release, regardless of consideration, any part of the Premises without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests evidenced by this Mortgage or the other Loan Documents or affecting the obligations of Mortgagor or any other party to pay the Note. For payment of the Note, Mortgagee may resort to any collateral securing the payment of the Note in such order and manner as Mortgagee may elect. No collateral taken by Mortgagee shall in any manner impair or affect the lien or security interests given pursuant to the other Loan Documents, and all collateral shall be taken, considered and held as cumulative.

(b)  Mortgagor hereby irrevocably and unconditionally waives and releases: (i) all benefits that might accrue to Mortgagor by virtue of any present or future law exempting the Premises from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment; (ii) all notices of any event of default except as expressly provided herein or of Mortgagee's exercise of any right, remedy or recourse provided for under the Loan Documents; and (iii) any right to a marshalling of assets, a sale in inverse order of alienation or any other right to direct in any manner the order of sale of any of the Premises.

(c)  Mortgagor hereby expressly waives and releases, to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Note.

(d)  Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Premises and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its reasonable discretion, decides should be brought to protect the security of this Mortgage or the other Loan Documents, or both, or Mortgagee's rights or powers thereunder. Mortgagee is authorized to pay, purchase, contest or compromise any encumbrance, charge or lien that, in the reasonable judgment of Mortgagee, appears to affect adversely the title to the Premises or the Additional Collateral and to take whatever other action Mortgagee, in its discretion, deems necessary or appropriate in exercising any such powers. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Note, and any such subrogation rights shall constitute additional security for the payment of the Note.

(e)  All amounts due under this Mortgage, the Note and the Other Loan Documents shall be payable without setoff, counterclaim or any deduction whatsoever.

(f)  Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any

16

EXHIBIT C

matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

(g)    In the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law, or under the Note, this Mortgage or the Other Loan Documents, it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's remedies shall be limited to injunctive relief or declaratory judgment.

(h)    The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (i) the failure of Mortgagee to comply with any request of Mortgagor or Guarantor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or of the Other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Premises, or of any person liable for the Note or any portion thereof, or (iii) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or the Other Loan Documents, except to the extent set forth in such agreement or stipulation. Mortgagee may resort for the payment of the Note to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Note, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights and remedies of Mortgagee under this Mortgage shall be separate, distinct and cumulative, and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

(i)    Mortgagor hereby waives and renounces all homestead and exemption rights provided by the constitution and the laws of the United States and of any state, in and to the Premises as against the collection of the Note, or any part thereof. Mortgagor hereby represents and warrants to Mortgagee that no portion of the Premises constitutes the homestead of any person, that neither Mortgagor nor any of its principals or partners or their relatives reside on any portion of the Premises or claim any portion of the Premises as their homestead and that no individual residing on the Premises or any portion thereof has any claim to homestead rights on any portion of the Premises.

(j)    By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Mortgagee pursuant to the Loan Documents, including, but not limited to, any officer certificate, balance sheet, statement, survey or appraisal, Mortgagee shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation with respect thereto by Mortgagee.

17

EXHIBIT C

(k)     If Mortgagor shall fail to duly pay or perform any of the terms and provisions of this Mortgage or the other Loan Documents, then at any time thereafter, without notice to or demand upon Mortgagor, and without waiving or releasing any right, remedy or power of Mortgagee, Mortgagee may pay or perform same for the account of and at the expense of Mortgagor, and Mortgagee shall have the right and is authorized to enter, and to authorize others to enter, upon the Premises at all reasonable times for such purposes and to take all such action thereon and with respect to the Premises and the Additional Collateral as Mortgagee in its discretion deems necessary or appropriate.

25.     <u>Uniform Commercial Code Security Agreement; Fixture Filing</u>.  This Mortgage creates a lien on, and grants a security interest in, the personal property of Mortgagor located and to be located on the Premises. To the extent that any personal property of Mortgagor is located on the Premises, Mortgagor, as debtor, hereby grants Mortgagee, as secured party, a security interest in all such personal property to secure payment and performance of the Note and this Mortgage. This Mortgage constitutes a security agreement under the Uniform Commercial Code or other law applicable to the creation of liens on personal property described in the UCC-1 Financing Statement executed in connection herewith. Mortgagor hereby irrevocably authorizes Mortgagee to file one or more initial UCC-1 financing statements, amendments (including, but not limited to, amendments that add collateral, and/or amendments that add a debtor to a financing statement), assignments, terminations and other filings, in connection with any and all applicable Uniform Commercial Code provisions.  This irrevocable grant of authority shall extend to filing in any and all jurisdictions, to which filing therewith Mortgagee deems necessary or advisable to protect Mortgagee's interests.  Mortgagor hereby irrevocably authorizes Mortgagee to perform all acts necessary in connection with the filing and perfecting of security interests that Mortgagee deems necessary.  Furthermore, Mortgagor irrevocably covenants and agrees to provide any and all reasonable assistance, including, but not limited to, the execution of documents, amendments, assignments, filings or other instruments, which Mortgagee may request of Mortgagor for purposes of assisting Mortgagee in filing and perfecting its applicable security interests.  This Mortgage shall constitute a financing statement under the Uniform Commercial Code. If an event of default occurs, then Mortgagee shall have all rights and remedies of a secured party under the Uniform Commercial Code. This Mortgage constitutes a financing statement filed as a fixture filing under Article 9 of the Uniform Commercial Code, covering any personal property which now is or later may become fixtures attached to the Premises. For this purpose, the respective addresses of Mortgagor, as debtor, and Mortgagee, as secured party, are as set forth in the preamble of this Mortgage.

26.     <u>Covenants, Representations and Warranties</u>.  Mortgagor hereby covenants, represents and warrants to Mortgagee as follows:

(a)     Mortgagor has full power and authority to execute and deliver this Mortgage and the other Loan Documents and to incur and perform the obligations provided for therein, all of which have been duly authorized by all proper and necessary action of the appropriate governmental body of Mortgagor. No consent or approval of any public authority or other third party is required as a condition to the validity of any of the Loan Documents, and Mortgagor is in compliance with all laws and regulatory requirements to which it is subject.

18

EXHIBIT C

(b)     There is no litigation involving Mortgagor pending, or to the knowledge of Mortgagor threatened, before any court or governmental authority, agency or arbitration authority.

(c)     Mortgagor shall maintain its company in existence and in good standing and qualification to do business where required and comply with all laws, regulations and governmental requirements, including, without limitation, environmental laws applicable to it or to any of its property, business operations and transactions.

(d)     Mortgagor shall not change the general character of its business as conducted at the date hereof.

(e)     Neither Mortgagor nor any Guarantor has any defense to the payment in full of the Note that arises from applicable local, state or federal laws, regulations or other requirements. None of the Loan Documents are subject to any right of rescission, setoff, abatement, diminution, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of any such Loan Documents, or the exercise of any right thereunder, render any Loan Documents unenforceable, in whole or in part, or subject to any right of rescission, setoff, abatement, diminution, counterclaim or defense, including the defense of usury.

(f)     There are no proceedings pending or threatened for the partial or total condemnation of the Premises.

(g)     The Premises are properly zoned or will be zoned to permit the existing use and/or the intended use by Mortgagor.

(h)     All financial data, including, without limitation, statements of cash flow and income and operating expenses, delivered to Mortgagee by or on behalf of Mortgagor are (i) true and correct in all material respects; (ii) accurately represent the financial condition of Mortgagor or the Premises as of the date thereof in all material respects; and (iii) to the extent reviewed by an independent certified public accounting firm, have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered.

(i)     The Premises are located on a dedicated, all-weather road or have access to an irrevocable easement permitting ingress and egress which are adequate in relation to the Premises and location on which the Premises are located.

(j)     The Premises are served by public utilities and services in the surrounding community, including police and fire protection, public transportation, refuse removal, public education and enforcement of safety codes which are adequate in relation to the Premises and location on which the Premises are located.

(k)     The Premises are serviced by public water and sewer systems which are adequate in relation to the Premises and location on which the Premises are located.

19

EXHIBIT C

(l)      The Premises is a contiguous parcel. There are no delinquent taxes or other outstanding charges adversely affecting the Premises.

(m)      The Premises are not relied upon by and does not rely upon, any building or improvement not part of the Premises to fulfill any zoning, building code or other governmental or municipal requirement for structural support or the furnishing of any essential building systems or utilities, except to the extent of any valid and existing reciprocal easement agreements shown in the title insurance policy insuring the lien of this Mortgage.

(n)      No action, omission, misrepresentation, negligence, fraud or similar occurrence has taken place on the part of any person that would reasonably be expected to result in the failure or impairment of full and timely coverage under any insurance policies providing coverage for the Premises.

(o)      There are no defaults by Mortgagor beyond any applicable grace period under any contract or agreement (other than this Mortgage and the other Loan Documents) that binds Mortgagor and/or the Premises, including any management, service, supply, security, maintenance or similar contracts; and Mortgagor has no knowledge of any such default for which notice has not yet been given; and no such agreement is in effect with respect to the Premises that is not capable of being terminated by Mortgagor on less than thirty (30) days' notice except as previously disclosed to Mortgagee by a delivery of a copy of all such agreements.

All of the representations, covenants and warranties made under this Mortgage and the Loan Documents shall be deemed to be made at and as of the date hereof and at and as of the date of any future advance or additional funding under the Note. Mortgagor acknowledges that Mortgagee has relied upon Mortgagor's representations, has made no independent investigation of the truth thereof, and is not charged with any knowledge contrary thereto that may be received by an examination of the public records or that may have been received by any officer, director, agent, employee or shareholder of Mortgagee.

27.    Miscellaneous.

(a)      Time is of the essence of this Mortgage.

(b)      The covenants, provisions and conditions imposed on Mortgagor under this Mortgage shall be binding on and shall inure to the successors, heirs, executors, personal representatives and assigns of and all successors in title to Mortgagor.

(c)      Each and all of the covenants and obligations of Mortgagor (other than warranties and representations contained herein) shall survive the execution and delivery of the Loan Documents and shall continue in full force and effect until the Note shall have been paid in full; provided, however, that nothing contained in this paragraph shall limit the obligations of Mortgagor except as otherwise set forth herein. In addition, any and all warranties and representations of Mortgagor contained herein shall survive the execution and delivery of the Loan Documents and (i) shall continue for a period of one (1) year following any release of this

20

EXHIBIT C

Mortgage executed by Mortgagee and satisfaction of the Loan evidenced by the Loan Documents, and (ii) shall survive the transfer or assignment of this Mortgage, the entry of a judgment of foreclosure, sale of the Premises by foreclosure or deed in lieu of foreclosure (including, without limitation, any transfer of the Mortgage by Mortgagee of any of its rights, title and interest in and to the Premises to any party, whether or not affiliated with Mortgagee).

(d)    Mortgagor, within ten (10) days after written request from Mortgagee from time to time, shall furnish a written statement, duly acknowledged, setting forth the unpaid principal balance of, and interest on, the Note, and whether or not any offsets or defenses exist thereto.

(e)    Mortgagor shall, at Mortgagor's sole cost and expense, provide Mortgagee with any financial statements, financial reports, appraisals or other documentation with respect to Mortgagor or the Premises which may be required from time to time by any governmental authority having regulatory authority over Mortgagee. Such information shall be provided by Mortgagor within thirty (30) days after written request from Mortgagee.

(f)    If required by the applicable governmental authorities, Mortgagee may obtain at Mortgagor's expense an appraisal(s) of any part of the Premises prepared in accordance with written instructions from Mortgagee by a third party appraiser engaged directly by Mortgagee. Each such appraiser and appraisal shall be satisfactory to Mortgagee. The cost of such appraisal shall be due and payable by Mortgagor on demand and shall be secured by this Mortgage.

(g)    No agreement, unless in writing and signed by an authorized officer of Mortgagee, and no course of dealing between the parties hereto shall be effective to change, waive, terminate, modify, discharge or release in whole or in part any provision of this Mortgage.

(h)    Upon Mortgagee's receipt of evidence of the loss, theft, destruction or mutilation of the Note, or any amendment or modification thereto, or of any of the Loan Documents, Mortgagor will execute and deliver, in lieu thereof, a replacement note or document, as applicable, identical in form and substance to the replaced document.

(i)    The provisions of this Mortgage and the Loan Documents are for the benefit of Mortgagor and Mortgagee and shall not inure to the benefit of any third party (other than any successor or assignee of Mortgagee). This Mortgage and the Loan Documents shall not be construed as creating any rights, claims or causes of action against Mortgagee or any of its officers, directors, agents or employees in favor of any party other than Mortgagor.

(j)    The relationship of Mortgagee and Mortgagor is solely that of debtor and creditor, and Mortgagee has no fiduciary or other special relationship with Mortgagor, and no term or condition of any of the Loan Documents shall be construed to be other than that of debtor and creditor. Mortgagor represents and acknowledges that the Loan Documents do not provide for any shared appreciation rights or other equity participation interest.

21

EXHIBIT C

(k)     Mortgagee may institute and maintain any suits and proceedings as Mortgagee may deem advisable (i) to prevent any impairment of the Premises by any acts which may be unlawful or in violation of this Mortgage, (ii) to preserve or protect its interest in the Premises, and (iii) to restrain the enforcement of or compliance with any governmental requirement that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such governmental requirement might impair the security hereunder or be prejudicial to Mortgagee's interest.

(l)     MORTGAGOR AND MORTGAGEE, BY ACCEPTING THIS MORTGAGE, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY ACTION, PROCEEDING, LITIGATION OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, THE NOTE AND THE OTHER LOAN DOCUMENTS, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.

(m)     Mortgagor hereby agrees (i) that the occurrence of an event of default(s) under this Mortgage shall be deemed a default under all other loans and loan commitments between Mortgagor and Mortgagee or an affiliated entity of Mortgagee and (ii) that the security for the Note provided by this Mortgage shall serve as collateral and security for all other loans and loan commitments between Mortgagor and Mortgagee or an affiliated entity of Mortgagee.

*[Signature Follows on Next Page]*

22

EXHIBIT C

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage, Security Agreement, Assignment of Rents and Fixture Filing as of the date first above written.

WITNESSES:

Print Name: Valerie Butler

Print Name: Kathy Doug

MORTGAGOR:

DAVID B. HUNT

By: David B. Hunt

WITNESSES:

Print Name: Valerie Butler

Print Name: Kathy Doug

MORTGAGOR:

MELISSA D. HUNT

By: Melissa D. Hunt

STATE OF Tennessee
COUNTY OF Madison

The foregoing instrument was acknowledged before me this 28 day of June, 2018, by David B. Hunt and Melissa D. Hunt, who (check one) ☒ is personally known to me OR ☐ produced _____ as identification.

(NOTARY SEAL)



Notary Signature: Denise Norwall

Denise Norwalk
(Type, Stamp or Print Name)

NOTARY PUBLIC
In and for the State of _____
My Commission Expires: 4-21-21

23

EXHIBIT C

## EXHIBIT "A"

### Legal Description

Lot 1 of The Avenue at Craighead County to the City of Jonesboro, Craighead County, Arkansas, as shown by Plat recorded in Plat Cabinet "C" page 261 at Jonesboro, Arkansas, and subject to easements as shown on recorded Plat.

24

EXHIBIT C

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 8 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)★]

COURT:    CIRCUIT COURT OF CRAIGHEAD COUNTY

Docket/Case Number:  16JCV-19-_____

CASE NAME:
PLAINTIFF/
PETITIONER:        DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
                   FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:        DAVID B. HUNT AND MELISSA B. HUNT, ET AL.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):        EXHIBIT D

★Administrative Order No 2.
    (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).
    (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

Prepared by and return to: 18-074713

Navin R. Pasem, Esq. Lenders Title Company
3630 W. Kennedy Blvd. 2207 Fowler Avenue
Tampa, Florida 33609 Jonesboro, AR 72401

②

ELECTRONIC RECORDING
**2018R-012874**
CERTIFICATE OF RECORD
JONESBORO DISTRICT
CRAIGHEAD COUNTY, ARKANSAS
CANDACE EDWARDS, CLERK & RECORDER
06/29/2018 11:24:32 AM
RECORDING FEE: 45.00
PAGES: 7

## ASSIGNMENT OF RENTS, LEASES, CONTRACTS, ACCOUNTS AND DEPOSITS

THIS ASSIGNMENT OF RENTS, LEASES, CONTRACTS, ACCOUNTS AND DEPOSITS (the "Assignment"), granted this 28 day of June, 2018, KIRAN REIF, LLC, a Florida limited liability company, its successors and/or assigns, as their interests may appear, whose address is 5600 Mariner Street, Suite 200, Tampa, Florida 33609 ("Lender"), and DAVID B. HUNT and MELISSA D. HUNT, d/b/a Hunt Properties, a Tennessee General Partnership whose address is 34 Finnwick CV, Jackson, TN 38305 ("Borrower"), and is made in reference to the following facts:

### RECITALS

A. Contemporaneously with the execution and delivery of this Assignment, the Lender is making disbursement to or for the account of the Borrower of certain proceeds of a mortgage loan in the amount of $2,500,000.00, which is evidenced and secured by that certain Promissory Note (the "Note") and Mortgage, Security Agreement, Assignment of Rents and Fixture Filing (the "Mortgage") each of even date herewith, and which Mortgage encumbers that certain real property described in **Exhibit "A"** attached hereto and by this reference made a part hereof (the "Property").

B. The loan is further secured by certain other instruments and all of such instruments of security and the Note and Mortgage shall be referred to collectively herein as the "Loan Documents".

C. The Borrower has agreed to and does execute this Assignment as a part of the loan transaction.

NOW, THEREFORE, the Borrower covenants and agrees to and with the Lender as follows:

1. Recitals. The statements contained in the recitals of fact set forth above (the "Recitals") are true and correct and the Recitals by this reference are made a part of this Agreement.

2. Lender's Security. As additional collateral and security for the payment of the indebtedness under the Note and for the performance of each and every of the covenants and agreements contained in the Loan Documents and herein, the Borrower sells, assigns, transfers, sets over and delivers unto the Lender and agrees to and does hereby grant to the Lender a first security interest in and to the following: (a) all present and future right, title and interest of the Borrower under and by virtue of each and every franchise, license, permit, lease, contract for deed or purchase and sale agreement, or any other document or contractual right, written or

EXHIBIT D

verbal, covering any part or parcel of the Property, whether now or hereafter made, and any and all amendments to or modifications, extensions or renewals thereof and all proceeds thereof; (b) all present and future rents, issues, profits, income, accounts, accounts receivable and the proceeds thereof of any business activity conducted by Borrower on or through the use of the Property; (c) all Lender accounts and deposit accounts into which any of the proceeds of the foregoing are deposited; and (d) proceeds of all the foregoing. The security of this Assignment is and shall be primary and on parity with the real estate conveyed by the Mortgage. Borrower hereby warrants that there are no contracts for deed, purchase agreements, mortgages or leases affecting the Property as of the day and year first above written nor shall there be any in existence on the date of recordation of the Mortgage and other instruments of security except for those set forth in that certain Affidavit executed by Borrower on even date herewith. Borrower further warrants that it has not executed nor will it execute at any time during the term of the aforesaid loan any other assignments or instruments encumbering the items described above which might prevent Lender from operating under any of the terms and conditions of this Assignment.

3.    Application of Proceeds.  Borrower does hereby authorize and empower the Lender to collect and receive the rents, issues, profits and income from the Property, including all rents payable under any lease hereby assigned, for application toward the reduction of the indebtedness under the Note. Borrower hereby expressly authorizes and directs any and all persons or entities who now or who may in the future owe Borrower any rents, issues, profits and/or income from the Property, as well as those persons or entities who now or who may in the future hold such rents, issues, profits and/or income for or on behalf of Borrower, to pay over and deliver all of such funds to Lender upon receiving written demand from Lender. Pursuant to paragraph 12 of this Assignment, it is understood and agreed, however, that no such demand shall be made unless and until there has been either a default in the payment of the Note or a failure by Borrower to carry out the covenants, agreements, and obligations set out in the Loan Documents or this Assignment, but the tenants shall pay the rents to Lender upon such demand without further inquiry. The exercise by the Lender of its right to receive such rents, issues, profits and income, shall not prevent the Lender from exercising any of its rights under the Loan Documents, including its right to foreclose the Mortgage, nor any of its other rights under this Assignment, and in addition the Lender shall have and may exercise from time to time any and all rights and remedies of a secured party under the Uniform Commercial Code and any and all other rights and remedies available to it under any other applicable law, including but not limited to, the right to foreclose this Assignment, the Mortgage, and any other instrument of security for the Note in the same proceedings. Until such demand is made, Borrower is authorized to collect, or continue collecting, such rents, issues, profits, revenues, royalties, rights and benefits.

4.    Future Contracts, Advance Receipts and Deposits.  The Borrower will not in the future and during the continuance of the lien of the Mortgage and this Assignment, or while any of the indebtedness under the Note remains unpaid:  (a) enter into any agreement or contract or any amendment, modification, extension or renewal thereof for franchise, license, permit, lease, purchase agreement or any other document or contractual right covering any part or parcel of the Property, except in the ordinary course of business presently being conducted on the Property, or (b) accept security or guaranty payments or deposits from lessees or tenants or accept advance payments of rent from lessees or tenants without first obtaining the written consent of the

2

EXHIBIT D

Lender. Borrower may, however, accept rental payments or security deposits in advance for a period of up to but not more than one month in advance of the date prescribed in any such lease or leases for the payment thereof.

5.      Payment of Receipts. This Assignment is given as additional security for the performance of each and all of the obligations and covenants of the Loan Documents, and the amounts collected hereunder, less the expense of collection, including reasonable attorneys' fees, shall be applied on account of taxes and assessments on the Property, and all insurance premiums, payments of principal and interest, and any other sums due under the terms of the Loan Documents. Receipts collected in excess of the amounts required as provided in this paragraph shall be retained by Lender in an escrow account as security for future obligations on the Property for so long as a default continues under the Loan Documents or this Assignment, as provided in paragraph 12 of this Assignment.

6.      Covenants. Borrower agrees that at its sole expense it: (a) will duly and punctually perform and comply with any and all representations, warranties, covenants, terms and provisions to be performed or complied with by it in any of the aforesaid leases; (b) will not voluntarily terminate, cancel or waive its rights or the obligations of any other party under any of the leases without the express written consent of the Lender; (c) will maintain such leases in full force and effect; (d) will enforce the leases in accordance with their terms; (e) will appear in and defend any action or proceeding arising under or in any manner connected with any of the leases or the representations, warranties, covenants and agreements of it or the other party or parties thereof; (f) will furnish Lender upon demand with executed copies of all leases now or hereafter created on the Property; (g) if requested by Lender, at least 15 days prior to execution of any lease, will submit it to Lender for approval, which approval shall not be unreasonably withheld; (h) will not accept payment of rent for any lease more than one month in advance without Lender's express consent, except prepayments in the nature of security for the performance by the lessees thereunder; and (i) will take all additional action to these ends as from time to time may be requested in writing by the Lender. In no instance shall Lender be responsible to lessees for payment of interest upon, or return of, any lease security deposits.

7.      Future Documents. The Borrower agrees from time to time to execute and deliver all such instruments and to take all such action for the purpose of further effectuating this Assignment and the carrying out of the terms hereof, as may be requested in writing by the Lender.

8.      Indemnification. Neither the execution of this Assignment nor any action or inaction on the part of Lender under this Assignment shall release the Borrower from any of its obligations under any or all of the aforesaid leases, or constitute an assumption of any such obligations on the part of the Lender, and Borrower shall and does hereby agree to indemnify Lender for and to hold it harmless of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in said leases. Should Lender incur any such liability, loss or damage under said leases or under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured hereby and by the lien of the

3

EXHIBIT D

Mortgage, and Borrower shall reimburse Lender therefor immediately upon demand. Such attorneys' fees and costs shall include, but not be limited to, fees and costs incurred in any phase of litigation, including, but not limited to, all trials, proceedings and appeals, and all appearances in and connected with any bankruptcy proceedings or creditors' reorganization proceedings. No action or failure to act on the part of Borrower shall adversely affect or limit in any way the rights of Lender under this Assignment or, through this Assignment, under any and all of the aforesaid leases. Nothing herein contained shall be construed as making the Lender, or its successors and assigns, a mortgagee in possession, nor shall Lender, or its successors and assigns, be liable for laches, or failure to collect said rents, issues, profits, revenues, royalties, rights and benefits, and it is understood that Lender is to account only for such sums as are actually collected.

9.      Notice to Tenants. The Lender may notify any lessee or tenant of the Property, or any part thereof, of the terms and provisions of this Assignment by mailing a copy of this Assignment to such lessee or tenant, or otherwise. Recordation of this Assignment in the public records of the county in which the Property is located shall constitute notice to any lessee or tenant of the terms and provisions hereof.

10.     Default. In the event the Borrower breaches or fails to perform any one or more of the covenants and agreements contained in this Assignment, which is not cured within 30 days after receipt of written notice thereof from Lender to Borrower, then such shall constitute a default, under the Loan Documents.

IT IS UNDERSTOOD AND AGREED that neither the existence of this Assignment nor the exercise of its privilege to collect such rents, issues, profits, revenues, royalties, rights and benefits hereunder, shall be construed as a waiver by the Lender or its successors and assigns, of the right to enforce payment of the debt hereinabove mentioned, in strict accordance with the terms and provisions of the Note for which this Assignment is given as additional security.

11.     Attorney-in-Fact. Upon issuance of a deed or deeds pursuant to foreclosure of the Mortgage, all right, title and interest of the Borrower in and to said leases shall, by virtue of this instrument, thereupon vest in and become the absolute property of the grantee or grantees in such deed or deeds without any further act or assignment by the Borrower. Borrower hereby irrevocably appoints Lender and its successors and assigns, as its agent and attorney in fact, to execute all instruments of assignment or further assurance in favor of such grantee or grantees in such deed or deeds, as may be necessary or desirable for such purpose. But nothing contained herein shall prevent Lender from terminating any subordinate(d) lease through such foreclosure.

12.     Present Assignment. Although it is the intention of the parties that this instrument shall be a present assignment, it is expressly understood and agreed, anything herein contained to the contrary notwithstanding, that Lender shall not exercise any of the rights or powers herein conferred upon it until a default shall occur under the terms and provisions of this Assignment or of the Note or Mortgage, but upon the occurrence of any such default Lender shall be entitled, upon notice to the lessees, to all rents and other amounts then due under the leases and thereafter accruing, and this Assignment shall constitute a direction to and full authority to the lessees to pay all such amounts to Lender without proof of the default relied upon. The lessees are hereby

4

EXHIBIT D

irrevocably authorized to rely upon and comply with (and shall be fully protected in so doing) any notice or demand by Lender for the payment to Lender of any rental or other sums which may be or thereafter become due under the leases and shall have no right or duty to inquire as to whether any default under the Mortgage, Note or this Assignment has actually occurred or is then existing.

13.  Supplementary Assignment.  This Assignment is intended to be supplementary to and not in substitution for or in derogation of any assignment of rents contained in the Mortgage or in any other document.

14.  Termination.  This Assignment and all of its provisions shall end if and when the Lender shall execute and record a satisfaction of the Loan Documents in the public records of the county in which the Property is located; otherwise, the provisions hereof shall remain in full force and effect.

15.  Binding Effect.  All of the covenants and agreements herein shall bind, and the benefits and advantages shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, grantees, successors and assigns.

16.  Terms.  The term "leases" as used herein shall include any and all leases, subleases, licenses, franchises, concessions or other agreements (written or verbal, now or hereafter in effect), including any extensions and renewals thereof, which grant a possessory interest in and to the Property or any part thereof.  The term "tenant" shall include all of the parties thereto contracting with the Borrower.  The terms "Borrower" and "Lender" shall include the parties and their respective successors and assigns.

17.  Headings.  The headings of the paragraphs contained in this Assignment are for convenience of reference only and do not form a part hereof and in no way modify, interpret or construe the meaning of the parties hereto.

IN WITNESS WHEREOF, Borrower has executed this Assignment of Rents, Leases,

5

EXHIBIT D

Contracts, Accounts and Deposits as of the date first above written.

**WITNESSES:**                                    **BORROWER:**

                                                  DAVID B. HUNT

Print Name: Valerie Butler

Print Name: Kathy Dowd                            By: David B. Hunt

**WITNESSES:**                                    **MORTGAGOR:**

                                                  MELISSA D. HUNT

Print Name: Valerie Butler

Print Name: Kathy Dowd                            By: Melissa D. Hunt

STATE OF Tennessee
COUNTY OF Madison

The foregoing instrument was acknowledged before me this 28 day of June, 2018, by David B. Hunt and Melissa D. Hunt, who (check one) ☒ is personally known to me OR ☐ produced _____ as identification.

(NOTARY SEAL)



Denise Norwald
Notary Signature

Denise Norwalk
(Type, Stamp or Print Name)

NOTARY PUBLIC
In and for the State of ___4·21·21___
My Commission Expires:

6

**EXHIBIT D**

## EXHIBIT "A"

### Legal Description

Lot 1 of The Avenue at Craighead County to the City of Jonesboro, Craighead County, Arkansas, as shown by Plat recorded in Plat Cabinet "C" page 261 at Jonesboro, Arkansas, and subject to easements as shown on recorded Plat.

7

EXHIBIT D

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 4 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)★]

COURT:    CIRCUIT COURT OF CRAIGHEAD COUNTY

Docket/Case Number:  16JCV-19-_____

CASE NAME:
PLAINTIFF/
PETITIONER:            DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
                       FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:            DAVID B. HUNT AND MELISSA B. HUNT, ET AL.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):        EXHIBIT E

★Administrative Order No 2.

     (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for
filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or
for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part
number and number of parts (example, part 1 of 2).

     (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-
mark requirement, the document must include the uniform cover page developed by the Administrative Office of the
Courts and found under Forms and Publications at www.arcourts.gov.

18-074713
Lenders Title Company
2207 Fowler Avenue
Jonesboro, AR 72401

**Mark Martin**
**Arkansas Secretary of State**
Business and Commercial Services Division

Financing Statement - Initial

Date Filed:7/2/2018 10:00 AM          Page(s):3

Filing ID       :4000017119609
Document ID :10197769001

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Navin R. Pasem, Esq. 813-444-3017

B. E-MAIL CONTACT AT FILER (optional)
navin.pasem@pasemlaw.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Navin R Pasem, Esq
Law Office of Navin R. Pasem, P.L.
3630 W. Kennedy Blvd.
Tampa, FL 33609

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1 DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Hunt | David | B | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 34 Finnwick CV | Jackson | TN / 38305 | |

2. DEBTOR'S NAME  Provide only one Debtor name (2a or 2b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Hunt | Melissa | D | |
| 2c MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 34 Finnwick CV | Jackson | TN / 38305 | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
Kiran Reif, LLC, a Florida limited liability company

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |
| 3c MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 5600 Mariner Street, Suite 200 | Tampa | FL / 33609 | |

4. COLLATERAL: This financing statement covers the following collateral

See Exhibit "A" attached hereto.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility      6b. Check only if applicable and check only one box: ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
AR State

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)      International Association of Commercial Administrators (IACA)

**EXHIBIT E**

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME | |
|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| Hunt |
| FIRST PERSONAL NAME |
| David |

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|
| B | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☑ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest): | 16. Description of real estate: See Exhibit "A" attached hereto for Legal Description of Property. |

17. MISCELLANEOUS:

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

EXHIBIT E

## EXHIBIT "A"

All personal property, rights and interest listed below together with any other property, rights or interest listed in any mortgage from the Debtor to the Secured Party encumbering the hereinafter described real property (the "Property") including, but not limited to, the following:

1. All buildings and improvements of every kind and description now or hereafter erected or placed on the Property and all materials intended for construction, reconstruction, alteration and repair of such improvements now or hereafter erected thereon; all furniture, fixtures and equipment now or hereafter owned by Debtor and attached to or contained in and used in connection with the Property, including but not limited to all apparatus, machinery, motors, elevators, fittings, radiators, gas ranges, mechanical refrigerators, awnings, shades screens, Venetian blinds, all plumbing, heating, lighting, cooking, laundry, ventilating, refrigerating, incinerating, air-conditioning, hot water heating and sprinkler equipment and fixtures and appurtenances thereto; all built-in equipment and built-in furniture; and all renewals or replacements thereof or articles in substitution therefore, whether or not the same are or shall be attached to the Property or building or buildings in any manner.

2. All right, title and interest of Debtor in and to the minerals, soil, flowers, shrubs, crops, trees, timber and other emblements now or hereafter on the Property or under or above the same or any part or parcel thereof.

3. All contracts and contract rights and accounts of Debtor now or hereafter arising from contracts now or hereafter entered into in connection with the development, construction upon or operation of the Property (including, without limitation, all deposits held by or on behalf of the Debtor, and all management, franchise, and service agreements related to the business now or hereafter conducted by the Debtor on the Property).

4. All of Debtor's interest in all utility security deposits or bonds on the Property or any part or parcel thereof.

5. All property and hazard insurance covering the above Property and collateral, together with any and all extensions and replacements thereof, and any and all rights thereunder; and any and all rights of subrogation provided by any mortgage from the Debtor to Secured Party covering the Property.

6. Any monies in any escrow accounts established or accrued pursuant to any mortgage from the Debtor to the Secured Party.

7. Any damages awarded pursuant to condemnation or eminent domain proceedings with respect to the Property.

8. All of Debtor's right, title and interest as lessor in and to all leases or rental arrangements of the Property, or any part thereof, heretofore made and entered into, and in and to all leases or rental arrangements hereafter made and entered into by or on behalf of Debtor, together with all rents and payments in lieu of rents, together with any and all guarantees of such leases or rental arrangements and including all present and future security deposits and advance rentals.

All of Debtor's right, title and interest as seller in and to all agreements for the sale of the Property, or any part thereof, heretofore made and entered into, and in and to all sale agreements hereafter made and entered into, by or on behalf of Debtor, together with all deposits and payments in connection therewith.

The Property includes, but is not limited to, the following real property:

## LEGAL DESCRIPTION

Lot 1 of The Avenue at Craighead County to the City of Jonesboro, Craighead County, Arkansas, as shown by Plat recorded in Plat Cabinet "C" page 261 at Jonesboro, Arkansas, and subject to easements as shown on recorded Plat.

# EXHIBIT E

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 7 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)★]

COURT:    CIRCUIT COURT OF CRAIGHEAD COUNTY

Docket/Case Number:  16JCV-19-_____

CASE NAME:
PLAINTIFF/
PETITIONER:            DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
                       FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:            DAVID B. HUNT AND MELISSA B. HUNT, ET AL.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):          EXHIBIT F

★Administrative Order No 2.

(g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

(2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

ELECTRONIC RECORDING
**2018R-014792**
CERTIFICATE OF RECORD
JONESBORO DISTRICT
CRAIGHEAD COUNTY, ARKANSAS
CANDACE EDWARDS, CLERK & RECORDER
07/27/2018  3:44:19 PM
RECORDING FEE: 70.00
PAGES: 6

Prepared by and return to:

Navin R. Pasem, Esq.
3630 W. Kennedy Blvd.
Tampa, Florida 33609

18-074713A

Lenders Title Company
2207 Fowler Avenue
Jonesboro, AR 72401

## MORTGAGE MODIFICATION AGREEMENT

**DAVID B. HUNT** and **MELISSA D. HUNT**

d/b/a Hunt Properties, a Tennessee General Partnership

(Mortgagor)

and

**KIRAN REIF, LLC**, a Florida limited liability company

(Mortgagee)

Effective Date: July 26, 2018

NOTE TO RECORDING CLERK: This Agreement modifies a Mortgage, Security Agreement, Assignment of Rents and Fixture Filing (the "**Mortgage**") recorded in at Electronic Recording 2018R-012873, Public Records of Craighead, Arkansas (the "**Craighead Records**"). The Mortgage secures payment of a Promissory Note made by Mortgagor and payable to the order of Mortgagee in the original principal amount of $2,500,000.00 (the "**Note**"), which is being modified contemporaneously herewith pursuant to a Renewal, Amended and Restated Promissory Note, Renewal, Amended and Restated Loan Agreement, and other Loan Documents between Mortgagor and Mortgagee (the "**Loan Documents**").

The principal amount of the Note is increasing to $9,165,000.00.

EXHIBIT F

## MORTGAGE MODIFICATION AGREEMENT

THIS MORTGAGE MODFICATION AGREEMENT ("**Agreement**") is executed as of this __ day of July, 2018, by **DAVID B. HUNT** and **MELISSA D. HUNT**, d/b/a Hunt Properties, a Tennessee General Partnership (collectively "**Mortgagor**"), whose address is 34 Finnwick CV, Jackson, TN 38305, and the heirs, personal representatives, successors and assigns of Mortgagor, including all subsequent grantees, either voluntarily by act of the parties or involuntarily by operation of law, in favor of **KIRAN REIF, LLC,** a Florida limited liability company, its successors and/or assigns, as their interests may appear, whose address is 5600 Mariner Street, Suite 200, Tampa, Florida 33609 ("**Mortgagee**").

### WITNESSETH:

WHEREAS, Mortgagor executed and delivered to Mortgagee a certain Promissory Note dated effective as of June 28, 2018, payable to the order of Mortgagee in the original principal amount of $2,500,000.00 (the "Note") (the loan evidenced by the Note is hereinafter called the "**Loan**"), and,

WHEREAS, the Note is secured by, among other collateral, the following (collectively, the "**Security Instruments**"):

(a) Mortgage, Security Agreement, Assignment of Rents and Fixture Filing from Mortgagor to Mortgagee at Electronic Recording 2018R-012873 in the Public Records of Craighead County, Arkansas (the "**Mortgage**"); and

(b) an Assignment of Rents, Leases, Contracts, Accounts and Deposits from Mortgagor to Mortgagee at Electronic Recording 2018R-012874 of the Public Records of Craighead County, Arkansas (the "**Assignment**"); and

(c) UCC-1 Financing Statement recorded at Electronic Recording 2018R-012875 of the Public Records of Craighead County, Arkansas (the "County Financing Statement") and a UCC-1 Financing Statement filed with the Arkansas Secretary of State Document (collectively with the County Financing Statement, the "**Financing Statements**"); and

WHEREAS, Mortgagor has requested that Mortgagee increase the principal amount of the Loan to $9,165,000.00, and Mortgagee has agreed to accommodate such request upon the terms and conditions set forth herein and in a certain Renewal, Amended and Restated Promissory Note between Mortgagor and Mortgagee, which has been executed contemporaneously herewith (the "**Amended Note**");

WHEREAS, Mortgagor and Mortgagee desire to execute and record this Agreement for the purpose, among others, of giving record notice that:

(1) the Note, Mortgage, Assignment, Financing Statements and other Loan Documents are modified as set forth herein and in the Amended Note and in that certain Renewal, Amended and Restated Loan Agreement of even date; and

(2) the Note, as modified by the Amended Note, is secured by the Security Instruments.

NOW, THEREFORE, for and in consideration of the premises, the mutual covenants and agreements herein contained, and other good and valuable consideration, the sufficiency whereof are hereby acknowledged by Mortgagor and Mortgagee, the parties hereby covenant and agree as follows:

1.      Recitals: Defined Terms.   The above recitals are true and correct and are incorporated herein by reference. All capitalized terms that are used but not otherwise specifically defined herein shall have the meanings ascribed to them in the Mortgage.

EXHIBIT F

2.     Modification of Security Instruments. The Security Instruments are hereby modified as follows:

a.     The payment and performance of Mortgagor's obligations under the Note, as modified by the Amended Note, are and shall be secured by the liens as security interests created by the Security Instruments (each as herein modified).

b.     All references to the promissory note secured thereby shall be deemed and construed to refer to the Amended Note.

3.     No Setoffs of Defenses; Release.

a.     Mortgagor, for itself and its members, partners, shareholders, officers and directors, and for their respective heirs, personal representatives, successors and assigns (collectively, the "**Releasors**"), acknowledges, agrees and represents to Mortgagee that no Releasor has any right of setoff, defense, claim or counterclaims under or with respect to the Note (or any renewed or replaced thereby), the Security Instruments, the Amended Note or any other documents evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or Amended Note (collectively, "**Loan Documents**").

b.     Mortgagor, for itself and the other Releasors, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency which are hereby acknowledged, herein fully releases and discharges Mortgagee, its affiliates, subsidiaries and parent corporations, the respective partners, officers, directors, shareholders, agents and employees of each of the foregoing, and their successors and assigns (collectively, the "**Released Parties**"), of and from any and all claims, counterclaims, defenses, setoffs, demands, actions, causes of action ad damages that Mortgagor or any other Releasor may have had, may now have, or may hereafter have against any one or more of the Released Parties arising under, by reason of, or in connection with (i) any of the Loan Documents, (ii) any of the indebtedness or obligations secured thereby, or (iii) any conduct, course of dealing, statement, act or omission on the part of Mortgagor or any of the Released Parties that arose, occurred or accrued at any time of delivery of this Agreement.

4.     Documentary Stamp and Intangible Taxes. Mortgagor hereby agrees to defend, indemnify, and hold Mortgagee harmless from and against any and all documentary stamp taxes and intangibles taxes (together with all interest, penalties, costs, and attorney's fees incurred in connection therewith) that may be at any time levied, assessed, or imposed by any governmental entity or agency upon the Note (or any note renewed or replaced thereby), the Mortgage, the Amended Note, any of the other Loan Documents, this Agreement, or any amendment, extension, or renewal of any of the foregoing, or upon Mortgagee or any lender by virtue of owning or holding any of the foregoing instruments or documents, all of which shall be secured by the lien and security interests created by the Security Instruments.  The provisions of this Paragraph shall survive the repayment of the Amended Note and the satisfaction of the Security Instruments for so long as any claim may be asserted by any governmental entity or agency.

5.     No Novation.     It is the agreement of and intent of the parties hereto (i) that neither this Agreement nor any of the other documents whose execution is contemplated hereby shall constitute a novation or in any way impair the first priority of the liens and security interests created by the Security Instruments and (ii) that any and all sums advanced in connection with the Loan shall be secured by the Security Instruments with the same priority as the sums originally advanced under the Note.

6.     No Waiver.     The execution of this Agreement by Mortgagee shall not be deemed to be a waiver of any default under any of the  Loan Documents, as herein modified, that continues or arises after the Effective Date, nor shall this instrument be deemed to impair any right that Mortgagee may otherwise have to (i) accelerate the indebtedness evidenced by the Note on account of any such default by Mortgagor that arises or continues after the Effective Date, or (ii) exercise any other remedy provided by the Note, the Security

EXHIBIT F

Instruments, or any other document executed by Mortgagor and delivered to Mortgagee in connection therewith.

7.     Lien Priority.  Mortgagor warrants to and covenants with Mortgagee that as of the Effective Date:

      a.     the Security Instruments each constitute a valid first lien and security interest on all of the property described therein;

      b.     · Mortgagor is indefeasibly seized of fee simple absolute title to the real property described in the Security Instruments, free and clear of all encumbrances except as set forth in the Mortgage;

      c.     Mortgagor has full right and lawful authority to execute and deliver this Agreement; and

      d.     the Security Instruments (i) have not been modified an any way except as provided hereby or otherwise described herein, and (ii) are in full force and effect as of the

8.     Severability.  In case any one or more of the provisions of this Agreement shall be invalid, illegal or unenforceable in any respect, the validity and enforceability of the remaining provisions shall be in no way affected, prejudiced or disturbed thereby.

9.     Binding Effect.    This Agreement shall be binding upon and inure to the benefit of Mortgagor and Mortgagee, and their respective heirs, personal representatives, successors and assigns.

10.     Counterparts.     This Agreement may be executed in counterparts, all of which together shall constitute one and the same instrument. Signature and acknowledgment pages may be detached from the counterparts and attached to a single copy of this document to physically form one document.

*[Signature Follows on Next Page]*

EXHIBIT F

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage Modification Agreement as of the date first above written.

| WITNESSES: | MORTGAGOR: |
|---|---|
| *Valrie Butler* <br> Print Name: VALRIE BUTLER | *David B. Hunt* <br> David B. Hunt |
| *Kathy Dowd* <br> Print Name: KATHY DOWD | |
| *Valrie Butler* <br> Print Name: VALRIE Butler | *Melissa D. Hunt* <br> Melissa D. Hunt |
| *Kathy Dowd* <br> Print Name: KATHY DOWD | |

STATE OF _Tennessee_

COUNTY OF _Madison_

The foregoing instrument was acknowledged before me this 23 day of July, 2018, by David B. Hunt and Melissa D. Hunt, who (check one) X is personally known to me OR ... produced _____ as identification.

(NOTARY SEAL)

DENISE NORWALK
STATE OF TENNESSEE
NOTARY PUBLIC
COUNTY OF MADISON
MY COMMISSION EXPIRES

*Denise Norwalk*
Notary Signature
Denise Norwalk
(Type, Stamp or Print Name)
NOTARY PUBLIC
In and for the State of _Tennessee_
My Commission Expires: 4-21-21

EXHIBIT F

## EXHIBIT "A"

### Legal Description

Lot 1 of The Avenue at Craighead County to the City of Jonesboro, Craighead County, Arkansas, as shown by Plat recorded in Plat Cabinet "C" page 261 at Jonesboro, Arkansas, and subject to easements as shown on recorded Plat.

EXHIBIT F

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 10 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)★]

COURT:     CIRCUIT COURT OF CRAIGHEAD COUNTY

Docket/Case Number:  16JCV-19-_____

CASE NAME:
PLAINTIFF/
PETITIONER:          DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
                     FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:          DAVID B. HUNT AND MELISSA B. HUNT, ET AL.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):          EXHIBIT G

★Administrative Order No 2.

    (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

    (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

## RENEWAL, AMENDED AND RESTATED GUARANTY AGREEMENT

THIS RENEWAL, AMENDED AND RESTATED GUARANTY AGREEMENT (this "Guaranty"), made as of the ___ day of July, 2018, by **DAVID B. HUNT**, an individual ("Guarantor"), to and for the benefit of **KIRAN REIF, LLC**, a Florida limited liability company, and its successors and assigns ("Lender").

### WITNESSETH:

A.     On June 28, 2018, Guarantor and Lender entered into that certain Guaranty Agreement (the "Prior Guaranty Agreement") where Lender made a loan to DAVID B. HUNT and MELISSA D. HUNT ("Borrower") in the principal amount of $2,500,000.00 and Guarantor personally guaranteed such loan.

B.     Borrower has requested that Lender increase the principal amount of the loan to $9,165,000.00 (the "Loan"), and Lender has agreed to accommodate such request upon the terms and conditions set forth herein and in a certain Renewal, Amended and Restated Promissory Note (the "Amended Note") between Borrower and Lender, which has been executed contemporaneously herewith.

C.     The Prior Guaranty Agreement shall be renewed, amended, restated, replaced and superseded entirely by this Renewal, Amended and Restated Guaranty Agreement entered into by Guarantor and Lender.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

1.     The Prior Guaranty Agreement is renewed, amended, restated, replaced and superseded entirely by this Renewal, Amended and Restated Guaranty Agreement entered into by Guarantor and Lender.

2.     The Guarantor has examined the loan documents entered into by Borrower with respect to the Loan, including that certain Renewal, Amended and Restated Promissory Note in the amount of $9,165,000.00 (the "Amended Note"), the Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, as modified (the "Mortgage") and the Renewal, Amended and Restated Loan Agreement (the "Loan Agreement"). The Amended Note, the Mortgage, the Loan Agreement and the other loan documents are hereinafter sometimes referred to, collectively, as the "Loan Documents".

3.     The Guarantor does hereby unconditionally and absolutely guarantee to Lender, its endorsees, transferees, successors and assigns of either this Guaranty or of any of the obligations secured hereunder, due performance and prompt payment and discharge, in accordance with their terms, of all sums (principal, interest and such other costs and charges that may be incurred in connection therewith) owed to Lender under the Loan on any date when due and all other obligations, terms, covenants and conditions arising under the Loan Documents, including any amendments, renewals, modifications or extensions thereof, and does further agree

**EXHIBIT G**

that if the Note is not paid in accordance with its terms, or if any of the sums or obligations that may hereafter become due to Lender under the Loan Documents are not paid and performed in accordance with their terms, the Guarantor will immediately do so. Guarantor acknowledges that Lender has no obligation to enter into any subsequent agreements to extend the maturity date or otherwise modify, amend, renew or refinance the Note.

4.     This is a continuing and irrevocable Guaranty and in all events shall be unconditional and absolute. This Guaranty may not be assigned, revoked, modified, or amended by the Guarantor without Lender's written consent.

5.     This Guaranty shall be unaffected by any substitution of any obligors of Borrower on the Loan Documents. The Guarantor shall be liable for the repayment of the Loan and the payment and performance by Borrower of all of the other obligations of Borrower guaranteed hereunder.

6.     The obligations of this Guaranty include all of Borrower's warranties, representations, obligations, duties and responsibilities under the Loan Documents either now or hereafter existing, and any renewals or extensions, in whole or in part, together with all damages, losses, costs, charges, expenses, including attorneys' fees, paralegals' fees and liabilities of every kind, nature and description (including interest thereon at the default rate defined in the Loan Documents) suffered or incurred by Lender arising in any manner of, or in any way connected with or growing out of the Loan Documents.

7.     The Guarantor hereby consents and agrees that Lender may at any time, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf, or for its account, securing any indebtedness or liability covered by this Guaranty, or substitute for any collateral so held by it, other collateral of like kind, or of any kind, or modify the terms of the Loan Documents securing payment of the principal indebtedness without notice to or further consent from the Guarantor, and such surrender, substitution or modification shall not in any way affect the obligation of the Guarantor hereunder. The obligations of the Guarantor hereunder shall not be subject to any counterclaim, set-off, deduction or defense, and shall remain in full force and effect without regard to, and the obligations of the Guarantor hereunder shall not be released, discharged or terminated or in any way effected or impaired by any circumstances or condition, whether or not the Guarantor shall have notice or knowledge thereof, including without limitation (a) any amendment or modification of or addition or supplement to the Loan Documents; (b) any compromise, release, consent, extension, indulgence or other action or inaction with respect to the Loan Documents; (c) any default by Borrower under, or any invalidity or unenforceability of, or any irregularity or any defect in the Loan Documents; (d) any exercise or non-exercise of any right, remedy, power or privilege under or in respect of this Guaranty or the Loan Documents; (e) any assignment or transfer of the assets of Borrower to, or any consolidation or merger of Borrower with or into any other person, partnership or corporation, or any disposition by the Guarantor of any interest in Borrower; (f) any bankruptcy, insolvency, reorganization, arrangement, adjustments, composition, liquidation or similar proceeding involving or effecting Borrower or any Guarantor; (g) any assignment, sale, surrender, forfeiture or other transfer in respect of any or all of the properties or interests

2

EXHIBIT G

encumbered by the Mortgage; (h) a release, regardless of consideration, of the whole or any part of the property pledged pursuant to the Mortgage; (i) the release, regardless of consideration, of any obligation or any guarantor of the obligations evidenced by the Loan Documents; (j) any partial prepayment, assignment or transfer of the Note; (k) any limitation of Borrower's liability which may now or hereafter be imposed by any statute, regulation or rule of law, or any invalidity or unenforceability, in whole or in part of any of the terms of the Loan Documents; or (l) any other circumstances whatsoever.

8.      The Guarantor hereby consents and agrees that Lender may, at any time, either with or without consideration, release Borrower or any endorser or any guarantor of the Loan Documents without notice to or further consent from the Guarantor, and such release shall not in any way affect the obligation of the Guarantor hereunder.

9.      At the option of Lender, this Guaranty may be treated as a guaranty or as a suretyship. In any event, the Guarantor agrees that the obligations set forth in this Guaranty are independent of the obligations of Borrower, and Lender shall have the right to proceed against the Guarantor, without first proceeding against Borrower or any property securing payment of the Loan, or any other guarantor or endorser of the Loan Documents. The Guarantor unconditionally waives any rights it may have to (a) all notices which may have been required by statutes, rule or law or otherwise to preserve intact any rights of any holder of Loan Documents against the Guarantor, including, without limitation, notice to Borrower of default, presentment due and demand of payment from Borrower and protest for nonpayment or dishonor, (b) require Lender to exhaust any security granted by Borrower, or (c) require Lender to pursue any other remedy within the power of Lender.

10.      No delay, act or omission on the part of Lender with respect to any right, power or privilege under the Loan Documents shall operate as a waiver of such privilege, power or right or as a waiver of any rights under the terms of this Guaranty or in any way affect or impair this Guaranty.

11.      This Guaranty shall be construed as an absolute and unconditional guarantee of payment and performance, without regard to the validity, regularity or enforceability of any obligation or purported obligation of Borrower. Lender shall have its remedy under this Guaranty without being obliged to resort first to any security or to any other remedy or remedies to enforce payment or collection of the obligations hereby guaranteed, and may pursue all or any of its remedies at one or at different times.

12.      The obligations of the Guarantor hereunder are joint and several, if more than one.

13.      The Guarantor hereby waives and agrees not to assert or take advantage of (a) any right to require Lender to proceed against Borrower or any other person or entity or to proceed against or exhaust any security held by it at any time or to pursue any other remedy in its power before proceeding against the Guarantor; (b) the defense of the statute of limitations in any action hereunder or for the collection of any indebtedness or the performance of any obligation hereby guaranteed; (c) any defense that may arise by reason of the incapacity, lack of authority,

3

EXHIBIT G

death or disability of, or revocation hereof by, other persons or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of any other persons or entities; (d) presentment, demand, protest and notice of any kind including, without limitation, notice of acceptance of this Guaranty, dishonor, the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person or entity whomsoever, in connection with any obligation hereby guaranteed; (e) any defense based upon any election of remedies by Lender, including without limitation an election to proceed by non-judicial rather than judicial foreclosure, which destroys or otherwise impairs the subrogation rights of the undersigned or the right of the undersigned to proceed against Borrower for reimbursement, or both; (f) any duty on the part of Lender to disclose to the undersigned any facts it may now or hereafter know about Borrower; (g) any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower; (h) any right or claim of right to cause a marshaling of Borrower's assets or to require Lender to proceed against the guarantors in any particular order; and (i) Guarantor further consents to the issuance of a continuing writ of garnishment or attachment against Guarantor's disposable earnings, in accordance with section 222.11 Florida Statues, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

14.     The Guarantor hereby agrees that, until all indebtedness of Borrower to Lender under the Loan Documents shall have been paid in full, the Guarantor shall have no right of subrogation or reimbursement and waive any right to enforce any remedy which Lender now has or may hereafter have against Borrower, and waive any benefit of, and any right to participate in, any security now or hereafter held by Lender. The Guarantor hereby irrevocably waives any and all rights which it may have at any time (whether arising directly or indirectly, by operation of law, contract or otherwise) to assert any claim against Borrower on account of payments made under this Guaranty including, by way of example but not limitation, any and all rights of subrogation, reimbursement, exoneration, contribution or indemnity until all such indebtedness of Borrower to Lender has been paid in full.

15.     The Guarantor covenants to cause Borrower to maintain and preserve the enforceability of any instruments now or hereafter executed in favor of Lender, and to take no action of any kind which might be the basis for a claim that the Guarantor has any defense hereunder in connection with the Loan Documents other than payment in full of all indebtedness of Borrower to Lender under the Loan Documents.

16.     The Guarantor hereby indemnifies Lender against loss, cost or expense by reason of the assertion by Borrower of any defense to its obligations under any of the Loan Documents or resulting from the attempted assertion by the Guarantor of any defense hereunder based upon any such action or inaction of Borrower.

17.     This Guaranty and the Guarantor's payment obligations hereunder shall continue to be effective or shall be reinstated, as the case may be, if at any time the payment of any of the obligations secured hereunder and arising under this Guaranty and/or the Loan Documents is rescinded or must otherwise be restored or returned by Lender, all as though such payment had not been made. Lender's determination as to whether a payment must be restored or returned

4

shall be absolutely binding upon the Guarantor. If Lender is required to or agrees to repay any amount received by Lender on account of any payments, indebtedness, obligations and liabilities of Borrower to Lender as a result of a judgment, order or decree of a court of competent jurisdiction or as a result of a settlement or compromise concerning a claim for repayment by any party to such payments, indebtedness, obligations and liabilities, the undersigned shall remain liable to Lender for the amount repaid notwithstanding the revocation of this Guaranty or the cancellation of any instrument evidencing such indebtedness, obligations and liabilities.

18. Any indebtedness of Borrower now or hereafter held by the Guarantor is hereby subordinated to the indebtedness of Borrower to Lender. Any such indebtedness of Borrower to the Guarantor, if Lender so requests, shall be collected, enforced and received by the Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

19. Guarantor represents and warrants to Lender that any financial statements previously furnished to Lender with respect to the request for this Loan remain true and correct in all material respects. Guarantor shall provide to the Lender annually complete federal income tax returns including all schedules within 30 days of filing. If filing of the returns is extended, copies of the filing extensions shall be provided to Lender. In addition, Guarantor shall provide to the Lender on an annual basis, within 12 months from the date of the previous statement on file with Lender, a personal financial statement setting forth all of Guarantor's assets and liabilities, specifically including a listing of all contingent liabilities (and to the extent any person other than the applicable Guarantor has any interest in said assets or any person other than the applicable Guarantor is jointly liable for any of said obligations, said matter shall be set forth in their entirety in the financial statements).

20. In the event of a legal action or other proceeding arising under this Agreement or a dispute regarding any alleged breach, default, claim, or misrepresentation arising out of this Agreement, whether or not a lawsuit or other proceeding is filed, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party shall also be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs due to it. The reasonable costs that the prevailing party shall be entitled to recover shall include any costs that are taxable pursuant to any applicable statute, rule, or guideline (including, but not limited to, the Statewide Uniform Guidelines for Taxation of Costs), as well as costs not taxable thereunder. Such recoverable costs shall specifically include, but not be limited to, a) costs of investigation; b) costs of copying documents and other materials, whether for discovery, filing with the court, internal review, or any other purpose; c) costs for electronic discovery; d) Westlaw, Lexis Nexis, or other electronic research service charges; e) telephone charges; f) mailing, commercial delivery service, and courier charges; g) travel expenses, whether for investigation, depositions, hearings, trial, or any other purpose; h) information technology support charges; i) any and all consultant or expert witness fees, whether or not such fees are incurred in connection with a court-ordered report or testimony at a deposition, hearing, or trial; j) court reporter and transcript fees, whether for deposition, trial, or an evidentiary or non-evidentiary hearing; k) mediator fees; and l) any other reasonable cost incurred by the prevailing party in connection with the dispute.

5

EXHIBIT G

21.    Upon the default of Borrower with respect to any of its obligations or liabilities to Lender in connection with the Loan Documents, and provided said default is not cured within any applicable grace or curative period granted to Borrower by said documents, all or, at the option of Lender, any part of the obligation and liabilities of Borrower and/or the Guarantor to Lender, whether direct or contingent, in connection with the Loan Documents shall, without notice or demand, at the option of Lender, become immediately due and payable and/or performable and shall be paid and performed forthwith by the Guarantor.

22.    Notwithstanding any provision herein or in any instrument now or hereafter evidencing or securing the Loan, the total liability for payments in the nature of interest shall not exceed the limits imposed by any applicable usury laws governing the provisions of this Guaranty or in any instrument now or hereafter evidencing or securing the Loan.

23.    The Guarantor acknowledges that Lender has been induced by this Guaranty to make the Loan, and this Guaranty shall, without further reference or assignment, pass to, and be relied upon and enforced by, any successor or participant or assignee of Lender in and to any liabilities or obligations of Borrower.

24.    Nothing in this Guaranty is intended or shall be construed to prevent Lender, upon the occurrence of any event of default, in the exercise of its sole discretion, from foreclosing the lien of the Mortgage or the other Loan Documents and enforcing the provisions thereof or from enforcing any and all other rights and remedies afforded to Lender.  This Guaranty shall survive the foreclosure of the Mortgage and any transfer of the Property by deed in lieu of foreclosure of the Mortgage and shall automatically, without the requirements of notice, demand or other action, remain fully effective and enforceable by Lender.

25.    The Guarantor hereby agrees that until all of the terms, covenants and conditions of this Guaranty are fully performed, the Guarantor's obligations hereunder shall not be released, in whole or in part, by any act or thing which might, but for this provision, be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Lender or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted or circumstances which may or might vary the risk of or affect the rights or remedies of the Guarantor, or by reason of any further dealings between Borrower or Lender, relating to the Loan Documents, or otherwise; and the Guarantor hereby expressly waives and surrenders any defense to liability hereunder based upon any of the foregoing acts, omissions, things, agreements or waiver of any of them, it being the purpose and intent of the parties hereto that the obligations of the Guarantor hereunder are absolute and unconditional under all circumstances.

26.    All notices which are required or permitted hereunder must be in writing and shall be given in accordance with the provisions of the Loan Agreement.

27.    The liabilities of the Guarantor shall be separate and independent of the obligations of Borrower, and separate or joint actions may be instituted by Lender against any guarantor or Borrower, as Lender may choose.  Any action taken by Lender pursuant to the

6

EXHIBIT G

provisions herein contained or contained in the Loan Documents shall not release the party or parties to this Guaranty until all of the obligations of Borrower to Lender are paid and performed in full. Furthermore, the Guarantor acknowledges and affirms that any exculpation provisions contained in the Loan Documents shall not in any manner whatsoever limit, impair or affect this Guaranty and the obligations of the Guarantor hereunder.

28.     Whenever the text of this instrument so requires, the use of any gender shall be deemed to include all genders, and the use of the singular shall include the plural, and in such event, wherever the word "Guarantor" is used herein, then such word shall be deemed to be "Guarantor," or either or any of them. If any term of this Guaranty or any application thereof shall be invalid or unenforceable, the remainder of this Guaranty and any other application of such term shall not be affected thereby but shall remain in full force and effect.

29.     This Guaranty shall inure to the benefit of Lender, its successors and assigns, and shall bind the Guarantor, and the respective heirs, executors, administrators, legal representatives, successors and assigns of each Guarantor.

30.     The purpose of this Guaranty is to memorialize the parties' understanding that, if Borrower does not pay or otherwise fully perform its obligations in a timely manner as provided under the various Loan Documents, the Guarantor will promptly pay the amounts due and payable by Borrower to Lender upon the demand of Lender.

31.     The Guarantor acknowledges that the making of the Loan by Lender to Borrower confers a real and substantial benefit to the Guarantor and is fully supportive of, and valuable consideration for, the execution of this Guaranty by the Guarantor. The Guarantor further acknowledges that it has a direct or indirect financial interest in Borrower and is thoroughly familiar with the business affairs, books and records, financial condition and operations of Borrower. Lender shall have no duty to the Guarantor to observe the actions or financial conditions of Borrower or to monitor the performance of Borrower under the Loan Documents. It is the intention of the parties that Lender may rely completely on this Guaranty for its repayment of Borrower's indebtedness and obligations whether or not Borrower is creditworthy and whether or not it would be prudent to make loans and advances to Borrower or to permit the same to remain outstanding. Lender and its representatives shall have no duty to exercise diligence or care in and about the enforcement of the remedies or in respect to any other security for Borrower's obligations.

32.     This Guaranty shall be governed and controlled as to its validity, enforcement, interpretation, construction, effect, and in all other respects by the statutes, laws and decisions of the State of Florida except to the extent that Lender elects the benefit of any applicable Federal pre-emption laws. The Guarantor, in order to induce the Lender to accept this Guaranty, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty, or any of the Loan Documents shall be litigated, in Lender's sole discretion and at Lender's sole election, only in courts having a situs within or whose jurisdiction includes Hillsborough County, Florida. For the purpose of the foregoing, the Guarantor hereby consents and submits to the jurisdiction of any local, state or

7

EXHIBIT G

federal court located within or whose jurisdiction includes Pasco County, Florida.  The Guarantor, for itself and any parties claiming under them, hereby waive any rights that the Guarantor may have to transfer or change the venue of any litigation brought against the Guarantor in accordance with this paragraph.  Furthermore, neither the Guarantor, nor any successor, heir or personal representative of the Guarantor, nor any parties claiming under them, or any such other person or entity shall seek a jury trial in any lawsuit, proceeding, counterclaim or any other litigation procedure based upon or arising out of this Guaranty or any of the Loan Documents, any related instrument or agreement, any collateral for the payment hereof or the dealings or the relationship between or among such persons or entities, or any of them.  Neither the Guarantor nor any such person or entity will seek to consolidate any such action, in which a jury trial has been waived, with any other action in which a jury trial cannot or has not been waived.  The Guarantor acknowledges that the provisions of this paragraph have been fully discussed by the Guarantor and Lender, that the Guarantor was ably represented by licensed attorneys at law in the negotiation of this paragraph, that it bargained at arm's length and in good faith and without duress of any kind for the terms and conditions of this paragraph and that the provisions hereof shall be subject to no exceptions.  No party has in any way agreed with or represented to any other party that the provisions of this paragraph will not be fully enforced in all instances.

33.    This Guaranty may be executed in any number of counterparts, each of which shall be deemed an original instrument, but all such counterparts together shall constitute one and the same instrument.

34.    **JURY TRIAL WAIVER. GUARANTOR IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY ON ANY ISSUE, CLAIM, DEFENSE, COUNTERCLAIM, CAUSE OF ACTION, DEMAND, DAMAGE OR LOSS OF ANY TYPE, INCLUDING AT LAW OR IN EQUITY, IN ANY WAY BASED UPON OR ARISING OUT OF THIS GUARANTY, OR RELATED AGREEMENTS OR INSTRUMENTS EVIDENCING THE OBLIGATIONS OR AFFECTING GUARANTOR, INCLUDING WITHOUT LIMITATION ANY CLAIM, COUNTERCLAIM, CAUSE OF ACTION OR DEMAND AGAINST ANY EMPLOYEE, OFFICER, DIRECTOR OR ASSIGNEE OF LENDER.   NEITHER GUARANTOR NOR ITS ASSIGNEES, SUCCESSORS, HEIRS OR PERSONAL REPRESENTATIVES SHALL SEEK TO CONSOLIDATE ANY SUIT, ACTION OR PROCEEDING, IN WHICH THE RIGHT TO TRIAL BY JURY HAS BEEN WAIVED, WITH ANY OTHER SUIT, ACTION OR PROCEEDING IN WHICH THE RIGHT TO TRIAL BY JURY HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCLOSED TO GUARANTOR AND SHALL BE SUBJECT TO NO EXCEPTIONS.**

[*Signature on Following Page*]

8

EXHIBIT G

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty Agreement to be duly executed effective as of the date first above written.

WITNESSES:                                      GUARANTOR:

_Kathy Dowd_ (signature)

Print Name: _KATHY DOWD_                         _David B. Hunt_ (signature)

_Valerie Butler_ (signature)                     DAVID B. HUNT

Print Name: _VALERIE Butler_


STATE OF _Tennessee_
COUNTY OF _Madison_

The foregoing instrument was acknowledged before me this 23 day of June, 2018, by DAVID B. HUNT, who (check one) ☒ is personally known to me OR ☐ produced _____ as identification.

(NOTARY SEAL)

_Denise Norwald_ (signature)
Notary Signature

_Denise Norwalk_
(Type, Stamp or Print Name)

NOTARY PUBLIC
In and for the State of _Tennessee_
My Commission Expires: _4·21·21_

9

EXHIBIT G

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 10 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)★]

COURT:    CIRCUIT COURT OF CRAIGHEAD COUNTY

Docket/Case Number:  16JCV-19-_____


CASE NAME:
PLAINTIFF/
PETITIONER:                DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
                           FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:                DAVID B. HUNT AND MELISSA B. HUNT, ET AL.


TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):         EXHIBIT H


★Administrative Order No 2.
    (g) *File Mark*. (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).
    (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

## RENEWAL, AMENDED AND RESTATED GUARANTY AGREEMENT

THIS RENEWAL, AMENDED AND RESTATED GUARANTY AGREEMENT (this "Guaranty"), made as of the ___ day of July, 2018, by **MELISSA D. HUNT**, an individual ("Guarantor"), to and for the benefit of **KIRAN REIF, LLC**, a Florida limited liability company, and its successors and assigns ("Lender").

### WITNESSETH:

A.      On June 28, 2018, Guarantor and Lender entered into that certain Guaranty Agreement (the "Prior Guaranty Agreement") where Lender made a loan to DAVID B. HUNT and MELISSA D. HUNT ("Borrower") in the principal amount of $2,500,000.00 and Guarantor personally guaranteed such loan.

B.      Borrower has requested that Lender increase the principal amount of the loan to $9,165,000.00 (the "Loan"), and Lender has agreed to accommodate such request upon the terms and conditions set forth herein and in a certain Renewal, Amended and Restated Promissory Note (the "Amended Note") between Borrower and Lender, which has been executed contemporaneously herewith.

C.      The Prior Guaranty Agreement shall be renewed, amended, restated, replaced and superseded entirely by this Renewal, Amended and Restated Guaranty Agreement entered into by Guarantor and Lender.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

1.      The Prior Guaranty Agreement is renewed, amended, restated, replaced and superseded entirely by this Renewal, Amended and Restated Guaranty Agreement entered into by Guarantor and Lender.

2.      The Guarantor has examined the loan documents entered into by Borrower with respect to the Loan, including that certain Renewal, Amended and Restated Promissory Note in the amount of $9,165,000.00 (the "Amended Note"), the Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, as modified (the "Mortgage") and the Renewal, Amended and Restated Loan Agreement (the "Loan Agreement").  The Amended Note, the Mortgage, the Loan Agreement and the other loan documents are hereinafter sometimes referred to, collectively, as the "Loan Documents".

3.      The Guarantor does hereby unconditionally and absolutely guarantee to Lender, its endorsees, transferees, successors and assigns of either this Guaranty or of any of the obligations secured hereunder, due performance and prompt payment and discharge, in accordance with their terms, of all sums (principal, interest and such other costs and charges that may be incurred in connection therewith) owed to Lender under the Loan on any date when due and all other obligations, terms, covenants and conditions arising under the Loan Documents, including any amendments, renewals, modifications or extensions thereof, and does further agree

**EXHIBIT H**

that if the Note is not paid in accordance with its terms, or if any of the sums or obligations that may hereafter become due to Lender under the Loan Documents are not paid and performed in accordance with their terms, the Guarantor will immediately do so. Guarantor acknowledges that Lender has no obligation to enter into any subsequent agreements to extend the maturity date or otherwise modify, amend, renew or refinance the Note.

4.     This is a continuing and irrevocable Guaranty and in all events shall be unconditional and absolute. This Guaranty may not be assigned, revoked, modified, or amended by the Guarantor without Lender's written consent.

5.     This Guaranty shall be unaffected by any substitution of any obligors of Borrower on the Loan Documents. The Guarantor shall be liable for the repayment of the Loan and the payment and performance by Borrower of all of the other obligations of Borrower guaranteed hereunder.

6.     The obligations of this Guaranty include all of Borrower's warranties, representations, obligations, duties and responsibilities under the Loan Documents either now or hereafter existing, and any renewals or extensions, in whole or in part, together with all damages, losses, costs, charges, expenses, including attorneys' fees, paralegals' fees and liabilities of every kind, nature and description (including interest thereon at the default rate defined in the Loan Documents) suffered or incurred by Lender arising in any manner of, or in any way connected with or growing out of the Loan Documents.

7.     The Guarantor hereby consents and agrees that Lender may at any time, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf, or for its account, securing any indebtedness or liability covered by this Guaranty, or substitute for any collateral so held by it, other collateral of like kind, or of any kind, or modify the terms of the Loan Documents securing payment of the principal indebtedness without notice to or further consent from the Guarantor, and such surrender, substitution or modification shall not in any way affect the obligation of the Guarantor hereunder. The obligations of the Guarantor hereunder shall not be subject to any counterclaim, set-off, deduction or defense, and shall remain in full force and effect without regard to, and the obligations of the Guarantor hereunder shall not be released, discharged or terminated or in any way effected or impaired by any circumstances or condition, whether or not the Guarantor shall have notice or knowledge thereof, including without limitation (a) any amendment or modification of or addition or supplement to the Loan Documents; (b) any compromise, release, consent, extension, indulgence or other action or inaction with respect to the Loan Documents; (c) any default by Borrower under, or any invalidity or unenforceability of, or any irregularity or any defect in the Loan Documents; (d) any exercise or non-exercise of any right, remedy, power or privilege under or in respect of this Guaranty or the Loan Documents; (e) any assignment or transfer of the assets of Borrower to, or any consolidation or merger of Borrower with or into any other person, partnership or corporation, or any disposition by the Guarantor of any interest in Borrower; (f) any bankruptcy, insolvency, reorganization, arrangement, adjustments, composition, liquidation or similar proceeding involving or effecting Borrower or any Guarantor; (g) any assignment, sale, surrender, forfeiture or other transfer in respect of any or all of the properties or interests

2

EXHIBIT H

encumbered by the Mortgage; (h) a release, regardless of consideration, of the whole or any part of the property pledged pursuant to the Mortgage; (i) the release, regardless of consideration, of any obligation or any guarantor of the obligations evidenced by the Loan Documents; (j) any partial prepayment, assignment or transfer of the Note; (k) any limitation of Borrower's liability which may now or hereafter be imposed by any statute, regulation or rule of law, or any invalidity or unenforceability, in whole or in part of any of the terms of the Loan Documents; or (l) any other circumstances whatsoever.

8.      The Guarantor hereby consents and agrees that Lender may, at any time, either with or without consideration, release Borrower or any endorser or any guarantor of the Loan Documents without notice to or further consent from the Guarantor, and such release shall not in any way affect the obligation of the Guarantor hereunder.

9.      At the option of Lender, this Guaranty may be treated as a guaranty or as a suretyship. In any event, the Guarantor agrees that the obligations set forth in this Guaranty are independent of the obligations of Borrower, and Lender shall have the right to proceed against the Guarantor, without first proceeding against Borrower or any property securing payment of the Loan, or any other guarantor or endorser of the Loan Documents.    The Guarantor unconditionally waives any rights it may have to (a) all notices which may have been required by statutes, rule or law or otherwise to preserve intact any rights of any holder of Loan Documents against the Guarantor, including, without limitation, notice to Borrower of default, presentment due and demand of payment from Borrower and protest for nonpayment or dishonor, (b) require Lender to exhaust any security granted by Borrower, or (c) require Lender to pursue any other remedy within the power of Lender.

10.      No delay, act or omission on the part of Lender with respect to any right, power or privilege under the Loan Documents shall operate as a waiver of such privilege, power or right or as a waiver of any rights under the terms of this Guaranty or in any way affect or impair this Guaranty.

11.      This Guaranty shall be construed as an absolute and unconditional guarantee of payment and performance, without regard to the validity, regularity or enforceability of any obligation or purported obligation of Borrower.   Lender shall have its remedy under this Guaranty without being obliged to resort first to any security or to any other remedy or remedies to enforce payment or collection of the obligations hereby guaranteed, and may pursue all or any of its remedies at one or at different times.

12.      The obligations of the Guarantor hereunder are joint and several, if more than one.

13.      The Guarantor hereby waives and agrees not to assert or take advantage of (a) any right to require Lender to proceed against Borrower or any other person or entity or to proceed against or exhaust any security held by it at any time or to pursue any other remedy in its power before proceeding against the Guarantor; (b) the defense of the statute of limitations in any action hereunder or for the collection of any indebtedness or the performance of any obligation hereby guaranteed; (c) any defense that may arise by reason of the incapacity, lack of authority,

3

**EXHIBIT H**

death or disability of, or revocation hereof by, other persons or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of any other persons or entities; (d) presentment, demand, protest and notice of any kind including, without limitation, notice of acceptance of this Guaranty, dishonor, the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person or entity whomsoever, in connection with any obligation hereby guaranteed; (e) any defense based upon any election of remedies by Lender, including without limitation an election to proceed by non-judicial rather than judicial foreclosure, which destroys or otherwise impairs the subrogation rights of the undersigned or the right of the undersigned to proceed against Borrower for reimbursement, or both; (f) any duty on the part of Lender to disclose to the undersigned any facts it may now or hereafter know about Borrower; (g) any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower; (h) any right or claim of right to cause a marshaling of Borrower's assets or to require Lender to proceed against the guarantors in any particular order; and (i) Guarantor further consents to the issuance of a continuing writ of garnishment or attachment against Guarantor's disposable earnings, in accordance with section 222.11 Florida Statues, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

14. The Guarantor hereby agrees that, until all indebtedness of Borrower to Lender under the Loan Documents shall have been paid in full, the Guarantor shall have no right of subrogation or reimbursement and waive any right to enforce any remedy which Lender now has or may hereafter have against Borrower, and waive any benefit of, and any right to participate in, any security now or hereafter held by Lender. The Guarantor hereby irrevocably waives any and all rights which it may have at any time (whether arising directly or indirectly, by operation of law, contract or otherwise) to assert any claim against Borrower on account of payments made under this Guaranty including, by way of example but not limitation, any and all rights of subrogation, reimbursement, exoneration, contribution or indemnity until all such indebtedness of Borrower to Lender has been paid in full.

15. The Guarantor covenants to cause Borrower to maintain and preserve the enforceability of any instruments now or hereafter executed in favor of Lender, and to take no action of any kind which might be the basis for a claim that the Guarantor has any defense hereunder in connection with the Loan Documents other than payment in full of all indebtedness of Borrower to Lender under the Loan Documents.

16. The Guarantor hereby indemnifies Lender against loss, cost or expense by reason of the assertion by Borrower of any defense to its obligations under any of the Loan Documents or resulting from the attempted assertion by the Guarantor of any defense hereunder based upon any such action or inaction of Borrower.

17. This Guaranty and the Guarantor's payment obligations hereunder shall continue to be effective or shall be reinstated, as the case may be, if at any time the payment of any of the obligations secured hereunder and arising under this Guaranty and/or the Loan Documents is rescinded or must otherwise be restored or returned by Lender, all as though such payment had not been made. Lender's determination as to whether a payment must be restored or returned

4

shall be absolutely binding upon the Guarantor. If Lender is required to or agrees to repay any amount received by Lender on account of any payments, indebtedness, obligations and liabilities of Borrower to Lender as a result of a judgment, order or decree of a court of competent jurisdiction or as a result of a settlement or compromise concerning a claim for repayment by any party to such payments, indebtedness, obligations and liabilities, the undersigned shall remain liable to Lender for the amount repaid notwithstanding the revocation of this Guaranty or the cancellation of any instrument evidencing such indebtedness, obligations and liabilities.

18.     Any indebtedness of Borrower now or hereafter held by the Guarantor is hereby subordinated to the indebtedness of Borrower to Lender. Any such indebtedness of Borrower to the Guarantor, if Lender so requests, shall be collected, enforced and received by the Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

19.     Guarantor represents and warrants to Lender that any financial statements previously furnished to Lender with respect to the request for this Loan remain true and correct in all material respects. Guarantor shall provide to the Lender annually complete federal income tax returns including all schedules within 30 days of filing. If filing of the returns is extended, copies of the filing extensions shall be provided to Lender. In addition, Guarantor shall provide to the Lender on an annual basis, within 12 months from the date of the previous statement on file with Lender, a personal financial statement setting forth all of Guarantor's assets and liabilities, specifically including a listing of all contingent liabilities (and to the extent any person other than the applicable Guarantor has any interest in said assets or any person other than the applicable Guarantor is jointly liable for any of said obligations, said matter shall be set forth in their entirety in the financial statements).

20.     In the event of a legal action or other proceeding arising under this Agreement or a dispute regarding any alleged breach, default, claim, or misrepresentation arising out of this Agreement, whether or not a lawsuit or other proceeding is filed, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party shall also be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs due to it. The reasonable costs that the prevailing party shall be entitled to recover shall include any costs that are taxable pursuant to any applicable statute, rule, or guideline (including, but not limited to, the Statewide Uniform Guidelines for Taxation of Costs), as well as costs not taxable thereunder. Such recoverable costs shall specifically include, but not be limited to, a) costs of investigation; b) costs of copying documents and other materials, whether for discovery, filing with the court, internal review, or any other purpose; c) costs for electronic discovery; d) Westlaw, Lexis Nexis, or other electronic research service charges; e) telephone charges; f) mailing, commercial delivery service, and courier charges; g) travel expenses, whether for investigation, depositions, hearings, trial, or any other purpose; h) information technology support charges; i) any and all consultant or expert witness fees, whether or not such fees are incurred in connection with a court-ordered report or testimony at a deposition, hearing, or trial; j) court reporter and transcript fees, whether for deposition, trial, or an evidentiary or non-evidentiary hearing; k) mediator fees; and l) any other reasonable cost incurred by the prevailing party in connection with the dispute.

5

**EXHIBIT H**

21.     Upon the default of Borrower with respect to any of its obligations or liabilities to Lender in connection with the Loan Documents, and provided said default is not cured within any applicable grace or curative period granted to Borrower by said documents, all or, at the option of Lender, any part of the obligation and liabilities of Borrower and/or the Guarantor to Lender, whether direct or contingent, in connection with the Loan Documents shall, without notice or demand, at the option of Lender, become immediately due and payable and/or performable and shall be paid and performed forthwith by the Guarantor.

22.     Notwithstanding any provision herein or in any instrument now or hereafter evidencing or securing the Loan, the total liability for payments in the nature of interest shall not exceed the limits imposed by any applicable usury laws governing the provisions of this Guaranty or in any instrument now or hereafter evidencing or securing the Loan.

23.     The Guarantor acknowledges that Lender has been induced by this Guaranty to make the Loan, and this Guaranty shall, without further reference or assignment, pass to, and be relied upon and enforced by, any successor or participant or assignee of Lender in and to any liabilities or obligations of Borrower.

24.     Nothing in this Guaranty is intended or shall be construed to prevent Lender, upon the occurrence of any event of default, in the exercise of its sole discretion, from foreclosing the lien of the Mortgage or the other Loan Documents and enforcing the provisions thereof or from enforcing any and all other rights and remedies afforded to Lender.  This Guaranty shall survive the foreclosure of the Mortgage and any transfer of the Property by deed in lieu of foreclosure of the Mortgage and shall automatically, without the requirements of notice, demand or other action, remain fully effective and enforceable by Lender.

25.     The Guarantor hereby agrees that until all of the terms, covenants and conditions of this Guaranty are fully performed, the Guarantor's obligations hereunder shall not be released, in whole or in part, by any act or thing which might, but for this provision, be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Lender or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted or circumstances which may or might vary the risk of or affect the rights or remedies of the Guarantor, or by reason of any further dealings between Borrower or Lender, relating to the Loan Documents, or otherwise; and the Guarantor hereby expressly waives and surrenders any defense to liability hereunder based upon any of the foregoing acts, omissions, things, agreements or waiver of any of them, it being the purpose and intent of the parties hereto that the obligations of the Guarantor hereunder are absolute and unconditional under all circumstances.

26.     All notices which are required or permitted hereunder must be in writing and shall be given in accordance with the provisions of the Loan Agreement.

27.     The liabilities of the Guarantor shall be separate and independent of the obligations of Borrower, and separate or joint actions may be instituted by Lender against any guarantor or Borrower, as Lender may choose.  Any action taken by Lender pursuant to the

6

**EXHIBIT H**

provisions herein contained or contained in the Loan Documents shall not release the party or parties to this Guaranty until all of the obligations of Borrower to Lender are paid and performed in full.  Furthermore, the Guarantor acknowledges and affirms that any exculpation provisions contained in the Loan Documents shall not in any manner whatsoever limit, impair or affect this Guaranty and the obligations of the Guarantor hereunder.

28.    Whenever the text of this instrument so requires, the use of any gender shall be deemed to include all genders, and the use of the singular shall include the plural, and in such event, wherever the word "Guarantor" is used herein, then such word shall be deemed to be "Guarantor," or either or any of them.  If any term of this Guaranty or any application thereof shall be invalid or unenforceable, the remainder of this Guaranty and any other application of such term shall not be affected thereby but shall remain in full force and effect.

29.    This Guaranty shall inure to the benefit of Lender, its successors and assigns, and shall bind the Guarantor, and the respective heirs, executors, administrators, legal representatives, successors and assigns of each Guarantor.

30.    The purpose of this Guaranty is to memorialize the parties' understanding that, if Borrower does not pay or otherwise fully perform its obligations in a timely manner as provided under the various Loan Documents, the Guarantor will promptly pay the amounts due and payable by Borrower to Lender upon the demand of Lender.

31.    The Guarantor acknowledges that the making of the Loan by Lender to Borrower confers a real and substantial benefit to the Guarantor and is fully supportive of, and valuable consideration for, the execution of this Guaranty by the Guarantor.  The Guarantor further acknowledges that it has a direct or indirect financial interest in Borrower and is thoroughly familiar with the business affairs, books and records, financial condition and operations of Borrower.  Lender shall have no duty to the Guarantor to observe the actions or financial conditions of Borrower or to monitor the performance of Borrower under the Loan Documents. It is the intention of the parties that Lender may rely completely on this Guaranty for its repayment of Borrower's indebtedness and obligations whether or not Borrower is creditworthy and whether or not it would be prudent to make loans and advances to Borrower or to permit the same to remain outstanding.  Lender and its representatives shall have no duty to exercise diligence or care in and about the enforcement of the remedies or in respect to any other security for Borrower's obligations.

32.    This Guaranty shall be governed and controlled as to its validity, enforcement, interpretation, construction, effect, and in all other respects by the statutes, laws and decisions of the State of Florida except to the extent that Lender elects the benefit of any applicable Federal pre-emption laws. The Guarantor, in order to induce the  Lender to accept this Guaranty, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty, or any of the Loan Documents shall be litigated, in Lender's sole discretion and at Lender's sole election, only in courts having a situs within or whose jurisdiction includes Hillsborough County, Florida.  For the purpose of the foregoing, the Guarantor hereby consents and submits to the jurisdiction of any local, state or

7

EXHIBIT H

federal court located within or whose jurisdiction includes Pasco County, Florida. The Guarantor, for itself and any parties claiming under them, hereby waive any rights that the Guarantor may have to transfer or change the venue of any litigation brought against the Guarantor in accordance with this paragraph. Furthermore, neither the Guarantor, nor any successor, heir or personal representative of the Guarantor, nor any parties claiming under them, or any such other person or entity shall seek a jury trial in any lawsuit, proceeding, counterclaim or any other litigation procedure based upon or arising out of this Guaranty or any of the Loan Documents, any related instrument or agreement, any collateral for the payment hereof or the dealings or the relationship between or among such persons or entities, or any of them. Neither the Guarantor nor any such person or entity will seek to consolidate any such action, in which a jury trial has been waived, with any other action in which a jury trial cannot or has not been waived. The Guarantor acknowledges that the provisions of this paragraph have been fully discussed by the Guarantor and Lender, that the Guarantor was ably represented by licensed attorneys at law in the negotiation of this paragraph, that it bargained at arm's length and in good faith and without duress of any kind for the terms and conditions of this paragraph and that the provisions hereof shall be subject to no exceptions. No party has in any way agreed with or represented to any other party that the provisions of this paragraph will not be fully enforced in all instances.

33.      This Guaranty may be executed in any number of counterparts, each of which shall be deemed an original instrument, but all such counterparts together shall constitute one and the same instrument.

34.      **JURY TRIAL WAIVER. GUARANTOR IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY ON ANY ISSUE, CLAIM, DEFENSE, COUNTERCLAIM, CAUSE OF ACTION, DEMAND, DAMAGE OR LOSS OF ANY TYPE, INCLUDING AT LAW OR IN EQUITY, IN ANY WAY BASED UPON OR ARISING OUT OF THIS GUARANTY, OR RELATED AGREEMENTS OR INSTRUMENTS EVIDENCING THE OBLIGATIONS OR AFFECTING GUARANTOR, INCLUDING WITHOUT LIMITATION ANY CLAIM, COUNTERCLAIM, CAUSE OF ACTION OR DEMAND AGAINST ANY EMPLOYEE, OFFICER, DIRECTOR OR ASSIGNEE OF LENDER. NEITHER GUARANTOR NOR ITS ASSIGNEES, SUCCESSORS, HEIRS OR PERSONAL REPRESENTATIVES SHALL SEEK TO CONSOLIDATE ANY SUIT, ACTION OR PROCEEDING, IN WHICH THE RIGHT TO TRIAL BY JURY HAS BEEN WAIVED, WITH ANY OTHER SUIT, ACTION OR PROCEEDING IN WHICH THE RIGHT TO TRIAL BY JURY HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCLOSED TO GUARANTOR AND SHALL BE SUBJECT TO NO EXCEPTIONS.**

*[Signature on Following Page]*

8

EXHIBIT H

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty Agreement to be duly executed effective as of the date first above written.

WITNESSES:                                          GUARANTOR:

_____                   _____
Print Name: KATHY DOWD                              MELISSA D. HUNT

_____
Print Name: VALRI'E Butler


STATE OF Tennessee
COUNTY OF Madison

The foregoing instrument was acknowledged before me this 23 day of June, 2018, by MELISSA D. HUNT, who (check one) ☒ is personally known to me OR ☐ produced _____ as identification.

(NOTARY SEAL)                                       _____
                                                    Notary Signature

                                                    _____
                                                    (Type, Stamp or Print Name)

                                                    NOTARY PUBLIC
                                                    In and for the State of Tennessee
                                                    My Commission Expires:  4-21-21

9

EXHIBIT H

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 7 Pages

# UNIFORM COVER PAGE
[To be used when required by Administrative Order No. 2 (g)★]

COURT:    CIRCUIT COURT OF CRAIGHEAD COUNTY

Docket/Case Number:  16JCV-19-_____

CASE NAME:
PLAINTIFF/
PETITIONER:              DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
                                  FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:          DAVID B. HUNT AND MELISSA B. HUNT, ET AL.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):              EXHIBIT I

★Administrative Order No 2.
    (g) *File Mark.* (1) There shall be a two inch (2″) top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).
    (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

## Transfer and Assignment of Documents

THIS TRANSFER AND ASSIGNMENT OF MISCELLANEOUS DOCUMENTS (this "Assignment") is made the __ day of April, 2019, by **KIRAN REIF, LLC,** a Florida limited liability company ("*Assignor*") to and for the benefit of **DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION FOR GLOBAL UNDERSTANDING, INC.,** a Florida not-for-profit corporation ("*Assignee*");

### BACKGROUND

Assignor has assigned the Note, Mortgage Modification Agreement, Original Mortgage, Assignment and UCC-1 to Assignee by virtue of separate instruments of even date herewith. The purpose of this Assignment is to transfer and assign to Assignee all of Assignor's right, title and interest in and to the balance of the Loan Documents.

### AGREEMENT

FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged by Assignor, Assignor does hereby grant, bargain, convey, transfer, and assign to Assignee all of Assignor's right, title and interest in, to and under all of the of the Loan Documents not separately assigned to Assignee by Assignor of even date herewith. This Assignment includes, without limitation, those items as set forth in **EXHIBIT "A"** attached hereto and incorporated herein (the "*Miscellaneous Documents*").

TO HAVE AND TO HOLD the same, together with all of the rights, members and appurtenances thereof to the same being, belonging or otherwise appertaining to the only proper use, benefit and behoof of Assignee.

The foregoing Assignment is made without recourse and without representation or warranty, express or implied, without limitation, any representation or warranty relating to the assignability or enforceability of any or all of the Miscellaneous Documents.

Error! Unknown document property name.

**EXHIBIT I**

IN WITNESS WHEREOF. Assignor has executed this instrument under seal as of the date first above written.

SIGNED, SEALED AND DELIVERED

IN THE PRESENCE OF:

Witness: _Stuart Beshear_

Print Name _Stewart Beshears_

Witness: _Ever Bryant_

Print Name _Ever Bryant_

KIRAN REIF, LLC, a Florida limited liability company

By: _____

Print Name: _Kiran . C . Patel_

Title: _Manager_

(Corporate Seal)

ACKNOWLEDGMENT

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

On this 3rd day of April, 2019, before me, the undersigned, a Notary Public, (or before any officer within this State or without the State now qualified under existing law to take acknowledgments), duly commissioned. qualified and acting, within and for said County and State, appeared in person the within named Kiran C. Patel, as Manager of Kiran Reif, LLC, a Florida limited liability company (being the person or persons authorized by said corporation to execute such instrument, stating their respective capacities in that behalf), to me personally well known (or satisfactorily proven to be such person), who stated that he is the Manager of the company and is duly authorized in his respective capacity to execute the foregoing instrument(s) for and in the name and behalf of said company and further stated and acknowledged that he so signed, executed, and delivered said foregoing instrument for the consideration, uses, and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 3rd day of April, 2019.

_Ever D Bryant_

Notary Public

My Commission Expires:

EVER D. BRYANT
State of Florida-Notary Public
Commission # GG 199045
My Commission Expires
March 21, 2022

Error! Unknown document property name.

EXHIBIT I

**EXHIBIT "A"**

**Documents Relating to Note:**

Error! Unknown document property name.

EXHIBIT I

After recording. return to:                                Cross References:
Navin R. Pasem, Esq.
4830 W. Kennedy Blvd. Suite 600                            Recording Number 2018R-014792
Tampa. Florida 33609                                       Recording Number 2018R-012873
                                                           Recording Number 2018R-012874
                                                           Recording Number 2018R-012875

### ASSIGNMENT OF MORTGAGE MODIFICATION AGREEMENT, ORIGINAL MORTGAGE AND OTHER DOCUMENTS

THIS ASSIGNMENT of Mortgage Modification Agreement, Original Mortgage and Other Documents (hereinafter referred to as "*Assignment*"). dated and effective as of April ____, 2019, is made by the undersigned **KIRAN REIF, LLC,** a Florida limited liability company ("*Assignor*") to and for the benefit of **DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION FOR GLOBAL UNDERSTANDING, INC.,** a Florida not-for-profit corporation ("*Assignee*"):

### WITNESSETH:

WHEREAS. Assignor is the holder of that certain Renewal, Amended and Restated Promissory Note dated July 26, 2018 from DAVID B. HUNT and MELISSA D. HUNT, d/b/a Hunt Properties, a Tennessee General Partnership whose address is 34 Finnwick CV, Jackson, TN 38305 ("*Borrower*") to KIRAN REIF, LLC, a Florida limited liability company in the original principal amount of **$9,165,000.00** having an original maturity date of January 26, 2019 (the "*Note*"):

WHEREAS. Assignor is the holder of  that certain (a) Mortgage Modification Agreement, dated July 26, 2018, executed by Borrower in favor of Assignor recorded at Recording Number 2018R-014792 in the Official Records of Craighead County, Arkansas, encumbering that certain Property (as defined in the Mortgage Modification Agreement) located in the Craighead County, Arkansas (the "*Modification Agreement*"); (b) Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, dated June 28, 2018, executed by Borrower in favor of Assignor, recorded at Recording Number 2018R-012873 in the Official Records of Craighead County, Arkansas (the "*Original Mortgage*"), (c) Assignment of Rents, Leases, Contracts, Accounts and Deposits, dated June 28, 2018, executed by Borrower in favor of Assignor, recorded at Recording Number 2018R-012874 in the Official Records of Craighead County, Arkansas (the "*Assignment*") whereby Borrower assigned to Assignor, and granted security interest in, all rents pertaining to the Property; and (d) that certain UCC-1 Financing Statement recorded at Recording Number 2018R-012875 in the Official Records of Craighead County, Arkansas (the "*UCC-1*").

WHEREAS. Assignor has endorsed the Note so as to make the same payable to Assignee;

WHEREAS. Assignor desires to transfer and assign the Modification Agreement, Original Mortgage, Assignment and UCC-1 to Assignee,

Error! Unknown document property name.

**EXHIBIT I**

NOW, THEREFORE, for and in consideration of the sum of TEN DOLLARS ($10.00) in hand paid by Assignee to Assignor, and other good and valuable considerations, the receipt and sufficiency whereof are hereby acknowledged, Assignor does hereby transfer, set over, and assign unto Assignee all right, title and interest of Assignor in, to and under the Mortgage Modification Agreement, Original Mortgage. Assignment and UCC-1 together with all right, title and interest of Assignor in and to all real and personal property described therein, the indebtedness secured thereby, and all rights, powers and privileges conferred thereby.

This Assignment shall inure to the benefit of and be binding upon Assignor and Assignee and their respective legal representatives, successors, successors-in-title, and assigns.

Error! Unknown document property name.

EXHIBIT I

FOR VALUE RECEIVED, BUT WITHOUT ANY RECOURSE AND WITHOUT ANY WARRANTY OR REPRESENTATION WHATSOEVER, PAY TO THE ORDER OF

**DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION FOR GLOBAL UNDERSTANDING, INC.,** a Florida not-for-profit corporation

SIGNED, SEALED AND DELIVERED          KIRAN REIF, LLC, a Florida limited liability
                                       company
IN THE PRESENCE OF:

Witness:

Print Name Ever Bryant                 By: _____
                                       Kiran C. Patel, Manager

Witness:

Print Name  Nehal Patel                (Corporate Seal)

ACKNOWLEDGMENT

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

On this April 3, 2019, before me, the undersigned, a Notary Public, (or before any officer within this State or without the State now qualified under existing law to take acknowledgments), duly commissioned, qualified and acting, within and for said County and State, appeared in person the within named Kiran C. Patel, as Manager of Kiran Reif, LLC, a Florida limited liability company (being the person or persons authorized by said corporation to execute such instrument, stating their respective capacities in that behalf), to me personally well known (or satisfactorily proven to be such person), who stated that he is the Manager of the company and is duly authorized in his respective capacity to execute the foregoing instrument(s) for and in the name and behalf of said company and further stated and acknowledged that he so signed, executed, and delivered said foregoing instrument for the consideration, uses, and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 3rd day of April, 2019

_____
Notary Public

My Commission Expires:

EVER D. BRYANT
State of Florida-Notary Public
Commission # GG 199045
My Commission Expires
March 21, 2022

1

Error! Unknown document property name.

**EXHIBIT I**

ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
Candace Edwards, Craighead Circuit Clerk
2019-Apr-11  16:40:04
16JCV-19-345
C02D02 : 2 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)★]

COURT:   CIRCUIT COURT OF CRAIGHEAD COUNTY

Docket/Case Number:  16JCV-19-_____

CASE NAME:
PLAINTIFF/
PETITIONER:        DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION
                   FOR GLOBAL UNDERSTANDING, INC.

DEFENDANT/
RESPONDENT:        DAVID B. HUNT AND MELISSA B. HUNT, ET AL.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):        EXHIBIT J

★Administrative Order No 2.

   (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

   (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

**ALLONGE**

This Allonge to Promissory Note dated July 26, 2018 in the original principal amount of **$9,165,000.00** made by **DAVID B. HUNT and MELISSA D. HUNT**, d/b/a Hunt Properties, a Tennessee General Partnership to **KIRAN REIF, LLC,** a Florida limited liability company, should be attached thereto and made a part thereof.

The above-described Note is hereby endorsed as follows:

Pay to the **DRS. KIRAN & PALLAVI PATEL 2017 FOUNDATION FOR GLOBAL UNDERSTANDING, INC.,** a Florida not-for-profit corporation without recourse or warranty, dated as of April 3, 2019.

KIRAN REIF, LLC, a Florida limited liability company

By:_____
Kiran C. Patel, Manager

**EXHIBIT J**